FILED

2010 Nov-12  AM 10:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN  DIVISION

| | |
|---|---|
| **SHERRYL SNODGRASS CAFFEY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **CIVIL ACTION NO.:_____** |
| } | |
| **ALABAMA SUPREME COURT (ASC)** } | |
| **and its Justices, individually, and in their** } | |
| **official capacities, to wit:** } | |
| **SUSAN BELL COBB,** } | |
| **CHAMP LYONS, JR.,** } | |
| **THOMAS A. WOODALL,** } | |
| **LYN STUART,** } | |
| **PATRICIA M. SMITH,** } | |
| **MICHAEL F. BOLIN,** } | |
| **TOM PARKER,** } | |
| **GLENN MURDOCK, and** } | |
| **GREG SHAW,** } | |
| **ROBERT G. ESDALE, SR., individually,** } | |
| **and in his official capacity as ASC Clerk** } | |
| **and Agent/Employee,** } | |
| **ANN WILSON, individually, and in her** } | |
| **official capacity as ASC Staff Attorney** } | |
| **and Agent/Employee,** } | |
| } | |
| **ALABAMA STATE BAR (ASB),** } | |
| **F. MICHAEL HANEY, individually, and** } | |
| **in his official capacities as former** } | |
| **member of the ASB Hearing Panel, and** } | |
| **in his subsequent role of Chairman, ASB** } | |
| **Disciplinary  Commission, and as Agent/** } | |
| **Employee of ASB in both positions,** } | |
| **ROBERT LUSK, individually, and in his** } | |
| **official capacity as ASB Agent/Employee,** } | |

**CHERYL RANKIN, individually, and in** }
**her official capacity as ASB Paralegal,** }
**Agent/Employee & complaining witness,** }
**BONNIE MAINOR, individually, and in** }
**her official capacity as ASB Disciplinary** }
**Clerk, and Agent/Employee,** }
**PANEL III of the DISCIPLINARY** }
**BOARD OF THE ALABAMA STATE** }
**BAR, to wit:** }
    **JAMES WARD, individually, and in** }
    **his official capacity as ASB Hearing** }
    **Panel Officer & Agent/Employee,** }
    **ROBERT L. DAVIS, individually,** }
    **and in his official capacity as ASB** }
    **Hearing Panel Member and Agent/** }
    **Employee,** }
    **RICHARD J. R. RALEIGH, JR.,** }
    **individually, and in his official** }
    **capacity as ASB Hearing Panel** }
    **Member and Agent/Employee,** }
    **ROBERT MOORER ,individually,** }
    **and in his official capacity as ASB** }
    **Hearing Panel  Member and Agent/** }
    **Employee,** }
    **JOSEPH FAWAL, individually, and** }
    **in  his  official capacity as ASB** }
    **Hearing Panel Member, Agent/Empl.**}
     }
**JAMES WOODROF, individually, and** }
**in his official capacity as a complaining** }
**witness for ASB,** }
**BRIAN JONES,   individually, and in his** }
**official capacity as a complaining witness** }
**for ASB,** }
     }
     }
    **Defendants.** }
**All Defendants are sued joint & severally.** }

## **COMPLAINT FOR DAMAGES**

## **I.  JURISDICTION**

1.      Jurisdiction of this Honorable Court is invoked pursuant to: 28 U.S.C.: § 1331, § 1332, § 1337, § 1343, and § 1367; 42 U.S.C.: § 1981, § 1983,§ 1985(3), § 1986, and § 1988;  the FIRST, FIFTH, SIXTH, and FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; and Local Rule 83.1(3)© ( *See ¶ 6 D hereinbelow*).

2.      Jurisdiction over Federal and State criminal charges alleged herein is invoked pursuant to Code of Alabama § 6-5-370.

3.      Plaintiff is a resident of Huntsville, Alabama; and prior to the acts complained of herein, her law office was located in Huntsville, Alabama, and the majority of her law practice work was performed in the Northern Judicial District.

4.      At the time of the complained of actions, all Defendants resided in this State, and operated and conducted business in the Northern Judicial District, and/or in the Middle Judicial District of Alabama.

## **II.  VENUE**

5.      Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, and all previous averments in paragraphs 1-4, as if fully stated herein, and further states:

6.      Venue is proper in this Honorable Court based upon the following:

A.      A substantial part of the events giving rise to the complained of actions, including the initiating event, occurred in this Judicial District; accordingly, pursuant to 28 U.S.C. § 1391, venue is proper in this Judicial District.

B.      The Southern Division of the Northern Judicial Court located in Birmingham, Alabama, which is approximately an equal travel distance from Montgomery and from  Madison County/Limestone Counties, constitutes the most **convenient forum** for the parties and the witnesses.

C.      The co-location of the Middle Judicial Court to the Alabama Supreme Court and the Alabama State Bar have most likely produced social, religious and/or business relationships which constitute conflicts of interest that would be severely prejudicial to Plaintiff.

D.      On November 1, 2010, Plaintiff phoned this Honorable Court to ascertain her attorney status and electronic filing capability, and learned for the first time that this Court had suspended and disbarred her based upon Alabama's identical disciplinary actions.  Plaintiff has not received notice of said disciplinary actions, nor a Show Cause Order.  Accordingly, she also hereby invokes the venue of this Honorable Court pursuant to Local Rule 83.1(3)©, so that she can "Show Cause" as to why this Court's disciplinary actions are manifestly unjust.

### III.  PARTIES

7.      Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, and all previous averments in paragraphs 1-6, as if fully stated herein, and further states:

8.      Plaintiff is an <u>African American</u> <u>female</u> Attorney and <u>sole practitioner</u>, who was admitted to the Bars of, the State of Alabama, the United States District Court for the Northern District of Alabama, the Eleventh Circuit Court of Appeals, and the United States Supreme Court.

9.      Plaintiff further asserts that as the proximate consequence of the Defendants' joint and several concerted and federated actions complained of herein, she has been  purportedly, effectively, and illegally suspended and disbarred since August 20, 2009 and August 21, 2009, respectively.

10.      The names of currently known Defendants, their agents/employees and job positions/titles at the time of the acts  complained of herein are identified in the caption of the case; and any other parties discovered to be responsible for, or to have contributed to, Plaintiff's complained of damages, will be added immediately upon ascertainment of the same; and/or upon supplementation of causes of action.

11.      All individually named parties are sued individually, in their official capacities, and as agents and employees of ASB or the Alabama Supreme Court.

## IV.   STATEMENT OF THE FACTS

### A.  BACKGROUND

12.     Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-11, and all subsequent averments, as if fully stated herein, and further states:

13.     During a criminal Jury trial in which Plaintiff was counsel for the Defendant, and Brian Jones was the prosecutor, Plaintiff asked Judge Woodrof, the trial Judge,  for permission to make a statement on the record out of the presence of the jury.

14.     At the appropriate time, and while the jury was on a break, Judge Woodrof  told Plaintiff she could make her statement on the record.

15.     Plaintiff then made the statement on the record, wherein she stated, inter alia, that Jones had tried to make her stipulate to illegal evidence (crack cocaine) being admitted against her client, which he had conceded was not admissible; and when she refused and told him that she was going to file a complaint against him with the Bar and the Attorney General's office, the District Attorney, Kristi Valls, ran up to her in a threatening manner, invaded her space, stuck her finger in Plaintiff's  face, and told her that she hereby "revoked her right to practice law in Limestone County."

16.     Plaintiff further stated to Judge Woodrof that based upon the aforesaid actions of Jones and Valls that she felt threatened and intimidated and too emotionally distraught to continue; and she requested a continuance of the trial because she needed to seek guidance from the Alabama State Bar and/or the Alabama Supreme Court concerning whether she had to go forward with a trial in which her client was being denied his Constitutional rights to due process, a fair and impartial hearing, and equal protection.

17.     Although Judge Woodrof had previously approved her making said statement, and had, in fact, solicited said statement, he found her in contempt of court for making it immediately after she made it.

18.     Judge Woodrof then granted Jones' request to speak directly to her client with an offer of imprisonment.

19.     Plaintiff objected to the Court permitting Jones to speak directly to her client with an offer of imprisonment; and Judge Woodrof ordered her to make the offer to her client; whereupon, Plaintiff responded that she would communicate the offer to her client, but, she would not advise him to accept it.

20.     Plaintiff communicated the offer to her client; he  refused to accept it.

21.     Judge Woodrof then found her in contempt of court for the second time, and ordered her immediately to jail.

22.     Accordingly, Plaintiff was handcuffed behind her back, removed from the court; and incarcerated  in the Limestone County jail, where she was jailed in an area being used to jail male inmates; and in a cell which had a window on the door and a camera manned "24-7" by male jailers- - thereby permitting male inmates, male jailers and male visitors "round-the-clock" viewing and harassment and sexual harassment of her.

23.     Further, she was forced to watch the male "work release" inmates, who were returning from work, strip down to their underwear in her presence.

24.     After Plaintiff had been removed from the courtroom and jailed, the trial court, in her absence, declared a mistrial and sentenced her to serve 5 days in jail.

25.     Plaintiff was not notified of the aforesaid sentence until she was given a copy of the Contempt Order at **EXHIBIT 1**, after it was entered by Judge Woodrof the day following her arrest and imprisonment.

26.     Judge Woodrof stated no specific grounds in support of his Contempt Order (**EXHIBIT 1**), as required by state law; and he sentenced her to jail without a hearing after she had been removed from the courtroom and jailed, in violation of state and Federal laws, and her Constitutional rights to due process, a fair and impartial hearing, and equal protection.

27.     As part of his explanation to the Jury for his aforesaid actions, Judge Woodrof told them that he and the District Attorney had discussed a mistrial the day before, therefore admitting to an illegal *ex parte* conversation, wherein he and the District Attorney planned the mistrial, which Plaintiff was thereafter jailed and prosecuted by the Bar for causing.

28.     Judge Woodrof also told the Jury that:  "Caffey's emotions had overridden everything." R 445  "I know sometimes we get emotionally worked up about a case." R 446   However, he made callous, false, defamatory and retaliatory statements to the contrary at the Hearing, to wit:  "I think it was both a lack of skill and premeditated.  Maybe she got a nice fee and wanted to put on a circus for her clients." R 191, C 314

29.     Thereafter, Plaintiff filed an appeal in which she identified the entire record for review by the appellate courts; however, Judge Woodrof knowingly and intentionally suppressed the following critical and exculpatory evidence:  the trial exhibits; all documents filed by Plaintiff before and during the trial; and the  reverse sides of three purported indictments, which showed no signatures thereon by the Grand Jury Foreperson, and no court return signatures, as required by Alabama law.

30.      During the trial, Plaintiff moved to dismiss the purported Indictments against her client because they did not contain the statutorily required signatures by

the Grand Jury Foreperson, nor return signatures by the Court.  Jones responded, and

Judge Woodrof ruled, that the signatures on the Indictment for Court Four (Improper

Tag) constituted the signatures for all of the purported Indictments.  However, in

addition to said ruling violating Alabama statutory law, which mandates individual

indictment signatures, **EXHIBIT 2, P. 1** shows that Plaintiff's client was not indicted

on the aforesaid Improper Tag offense.  Accordingly, Plaintiff's client was not legally

indicted on any of the charges against him; thus, his prosecution was illegal.

31.    Additionally, the  audio tapes of the trial were sabotaged by persons who

committed the criminal offense of tampering with evidence, and, as of this date,

Plaintiff has never been provided an audible copy thereof.

32.    In fact, Jones suspiciously "offered-up" an explanation for the

inaudible critical portion of the Trial Audio Tapes leading up to the contempt finding

in his Bar Complaint, to wit:   "Page 426-435: Problem with the sound on the tape**"**

which he subsequently attributed to the acoustical conditions in the courtroom;

however, the courtroom acoustics remained the same throughout the trial; and his cited

inaudible pages curiously contained the critical court proceedings immediately

preceding and during the finding of Contempt against Plaintiff.

33.    Additionally, the trial transcript was altered by deleting and adding

statements in an attempt to cast Judge Woodrof, Jones and Valls in a more favorable

light, and to vilify Plaintiff.

34.    In fact, the record shows two (2) different dates for the Court Reporter's Certifications on page 450 of the Trial Transcript and Record, one for **May 10, 2000** and one for **May 19, 2000.**  Said documents also contain different signatures for the Court Reporter, and different spellings of her name.  **EXHIBIT 3-A through 3-D** Moreover, according to the record, Jones, versus the Court Reporter, or the Clerk of the Court, forwarded the edited Transcript to ASB.  **EXHIBIT 3-E**

35.    Plaintiff was given a copy of the edited Trial Transcript; and this edited version was reviewed by the Appellate Courts in confirming the Contempt Order, and by ASB and the Hearing Panel to prosecute and convict her on ethical violations.

36.    Despite Plaintiff producing court certified and stamped-in copies of the missing court documents she filed in court, copies of the Exhibits admitted by her during the trial, and copies of the Court Reporter's record identifying and certifying the admitted exhibits; and despite  her many requests for the complete unaltered record, the flawed appellate record was never corrected.

37.    Said missing documents were prejudicial to her defense, as they would have rationalized and justified her numerous objections and argument, which were assigned sinister motives by Jones, Judge Woodrof, Lusk and the Hearing Panel in their testimony, findings and/or rulings.

38.     In fact, in an effort to correct the appellate records, Plaintiff first filed a Motion to Correct and Supplement the Record and a Petition for Writ of Mandamus (**Exhibits 4-A & 4-B**) in the Alabama Court of Criminal Appeals, with the latter containing certified and/or court-stamped copies of the missing documents and Exhibits (**EXHIBIT 4-B**); however, said motion and petition were denied based upon Judge Woodrof's false certification that the record was complete.  **EXHIBIT 4-A**

39.     Plaintiff next filed a Petition for Writ of Mandamus and Petition for Writ of Certiorari in the Alabama Supreme Court, both of which also contained copies of the aforesaid missing documents and exhibits; however, the Alabama Supreme Court phoned Plaintiff and instructed her to dismiss her Petition for Writ of Mandamus, and it would then consider her issues therein on appeal.  However, after she dismissed said Petition, the Alabama Supreme Court  denied her Petition for Writ of Certiorari.  **EXHIBITS 4-C & 4-D**

40.     Consequently, Plaintiff was forced to exhaust the Alabama appellate system and the Bar prosecutorial system with an edited, sabotaged, suppressed and partially destroyed record, which was severely prejudicial to her defense.

41.     Plaintiff was also severely prejudiced by the aforesaid knowing, intentional, wilful, malicious and criminal suppression, destruction, and tampering

with exculpatory evidence, which was critical to her defense in the Alabama State Bar prosecutorial proceedings, in that the appellate affirmation of Judge Woodrof's finding of Contempt, the Bar's charges, and the Bar's findings and recommendations are all based upon the edited and sabotaged Transcript and the missing court record, which contained critical exculpatory evidence.

42.    Additionally, ASB suppressed the foregoing, and the following from the November 2009 Hearing Panel:  Jones' Bar Complaint, Plaintiff's Response to ASB's Motion for Summary Judgment, which contained Plaintiff's Affidavit, the Bar Investigator's Affidavit and Report Recommending Dismissal of the Complaint against her, the Affidavit of a witness; Plaintiff's Response Briefs (**EXHIBIT 10-B-F),** and ASB's voluminous record prior to the 2006 Alabama Supreme Court Remand Order, with the exception of the Formal Charges and Plaintiff's Response thereto, as readily apparent in a comparison of the 2004 & 2009 Record Indexes at **EXHIBITS 14 & 15**. Moreover, the Alabama Supreme Court's 2006 Reverse and Remand Order was suppressed from the 2008 ASB Hearing Panel, although ASB misrepresented otherwise by including it in the Appellate Record subsequent to the Hearing.

43.    Such prejudice is readily apparent in the fact that ASB's charges and findings against her included allegations that she was yelling and screaming at the Judge and witnesses, and that she was disrespectful, insolent and hostile to witnesses

and to the Judge, which could have been rebutted by the trial audio tapes and by the Huntsville-Madison County Bar Investigative Report.

44.     Moreover, such prejudice is readily apparent in the fact that on November 18, **2008**, Plaintiff was tried on two (2) charges which had previously been dismissed by the Hearing Panel in **2003**, in response to Lusk's Motion for Dismissal; and she was convicted on one of the previously dismissed charges.  Moreover, the previously dismissed charges were used to argue for, and to obtain a Hearing Panel ruling for Disbarment.

45.     Moreover, the Hearing Panel once again considered and used Judge Woodrof's Contempt Order to find Plaintiff guilty of ethical violations although the Alabama Supreme Court had previously reversed the Hearing Panel's Summary Judgement based upon the contempt order, and remanded the case for a Hearing.

## B.  PROSECUTION BY ALABAMA STATE BAR

46.     Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-45, and all subsequent averments, as if fully stated herein, and further states:

47.     ASB's case against Plaintiff arose on or about April 7, 2000 when the trial prosecutor, Brian Jones, in his quest to beat Plaintiff filing a Bar Complaint

against him, telephonically filed a complaint against Plaintiff with his admitted friend and Alabama State Bar prosecutor, Robert Lusk**;** and this telephonic complaint was accepted by ASB, which opened a file thereon and assigned it file number: ASB 00-73(A), although ASB policies and procedures provide an opportunity for Respondent Attorneys to receive a copy of any complaint filed against them, and an opportunity to respond thereto prior to a case file being opened.  Moreover, Plaintiff's subsequent written complaint against Jones was never processed by ASB.

48.     Accordingly, Plaintiff was treated differently than other Attorneys insofar as the processing of Jones' complaint against her, and in the non-processing of her complaint against Jones.

49.     In fact, the assigned Investigator of Jones' complaint noted in her Affidavit and Investigative Report that the complaint against Plaintiff was being treated differently; and that Plaintiff was being denied equal protection.  **EXHIBITS 10-C-1 & 10-C-2**

50.     ASB thereafter solicited a written complaint against Plaintiff from Jones; and, pursuant to ASB rules, policies and procedures, said complaint was forwarded to the Huntsville-Madison County Bar Association for investigation.

51.     The local Bar grievance/complaint committee chairperson told Plaintiff that ASB's main concern was whether she had called Judge Woodrof a racist.

52.    The Huntsville-Madison County Investigator of Jones' Complaint found that Plaintiff was **not guilty** of the charges against her; that Jones was just angry because she was winning the trial; that Jones had admitted that he and Lusk were friends, which created a conflict of interest for the Bar; that Plaintiff's case was being treated differently from other cases, and she was, thus, being denied equal protection; and that the complaint against her was due to be dismissed.  **EXHIBITS 10-C-1 & 10-C-2**

53.    The Alabama State Bar retrieved the complaint against Plaintiff from the Huntsville-Madison County Bar; suppressed the Investigator's findings**;** and on May 1, 2003, filed formal charges against Plaintiff (**Exhibit 7**) - -  all of which were premised upon Plaintiff being found in contempt of court during the aforesaid April 2000 criminal jury trial before Circuit Judge James Woodrof, in which Jones was the prosecutor, and Plaintiff was counsel for the defendant, and the affirmation thereof by the Alabama Court of Criminal Appeals.

54.    Plaintiff answered said Complaint, wherein she denied the charges against her, and asserted numerous affirmative defenses to include various violations of her and her client's civil rights.  **Exhibit 8**

55.    Thereafter, the Bar filed a Motion for Summary Judgment, wherein it contended that Plaintiff was guilty of the charged offenses because of her contempt

finding.  **EXHIBIT 9**

56.     As part of her response to the Bar's aforesaid motion, Plaintiff filed a copy of the Huntsville-Madison County Bar Investigator's report, which contained the findings stated in para. 52 hereinabove.

57.     Lusk's response thereto included the Bar Investigator's complete disciplinary history.  This action was clearly retaliatory against the Investigator, and severely prejudicial to Plaintiff's defense; further, it constituted an invasion of the Investigator's  privacy, and a failure to protect her privacy as required by ASB rules, policies and procedures.

58.     Thereafter, the Alabama State Bar Disciplinary Board Hearing Panel consisting of the within named members and F. Michael Haney, issued an Order granting summary judgment on [1]six of the eight charges based upon the contempt finding; and ordering the following disciplinary actions (**EXHIBITS 11-A & 11-B, respectively):**

> 1.     **Respondent shall be suspended from the practice of law for a period of Forty-five (45) days, which said suspension shall revert to probation for a period of two (2) years after Respondent serves seven (7) days of the referenced suspension period, the probation being subject to compliance with the following terms and conditions:**

_____

[1] ASB had dismissed two of the charges, to wit: 4.4 and 8.2, prior to said ruling.

    **A.**      **Respondent shall submit to Judge James W. Woodrof, Jr. an unconditional written apology pertaining to her conduct and actions during the trial of the case of State of Alabama v. Brandon Lee Hughes, CC 99-226, in the Circuit Court of Limestone County, Alabama.**

    **B.**      **Respondent shall take a course on professionalism approved by the Alabama State Bar within six (6) months of the date of this Order or six (6) months from the date of the completion of any appellate review.**

**2.**    **The suspension referenced in paragraph 1 above shall not become effective until the completion of any appellate review.**

**3.**    **In addition, the Respondent attorney shall be assessed for all cost, including, but necessarily limited to, costs of publication of public notices incidental to these proceedings and this hearing. Respondent shall also be assessed an administrative fee in the amount of Seven Hundred fifty dollars ($750.00) in accordance with Rule 33(d)(9) of the Alabama Rules of Disciplinary Procedure. C 924-925**

59.    Plaintiff filed a Motion to Vacate Summary Judgment, which was denied.

**EXHIBITS 12-A & 12-B**   Accordingly, Plaintiff appealed the ASB's Orders to the Alabama State Bar Board of Appeals.   In retaliation against Plaintiff for the issues she raised in her Motion to Vacate and in her Appeal of ASB's summary judgment against her, Lusk asked the Alabama Supreme Court to authorize an increase in her punishment in his appellant brief; however, said request was rendered  moot when he lost his appeal.

60.    Moreover, inasmuch as ASB sought an increase of <u>its</u> aforesaid ordered punishment for the first time while its appeal of the Bar Commissioners' reversal of ASB's summary Judgment was pending before the Alabama Supreme Court, pursuant to Alabama law, said issue was not preserved for appellate review.

61.    Although the Alabama Supreme Court's ruling affirming the Bar Commissioner's reversal and remand of ASB's summary judgment against Plaintiff rendered ASB's aforesaid sought punitive relief against Plaintiff MOOT; and although ASB never obtained the permission of the Alabama Supreme Court to raise its punishment of Plaintiff, on  remand, ASB raised the aforesaid suspension to the highest level of punishment possible, to wit:  DISBARMENT.

62.    Plaintiff's aforesaid appeal was based, in part, on her claim that she had been denied equal protection because she was the only Attorney in the State of Alabama to ever be prosecuted by the Bar because of a contempt finding.

63.    In fact,  during the Hearing before the Disciplinary Board of Appeals consisting of Bar Commissioners, and in response to a question from a member thereof,   **<u>Lusk admitted that Plaintiff was the only attorney in the State of Alabama  to ever be prosecuted by the Bar  because of a CONTEMPT finding,</u>** thereby admitting to ASB's deprivation of Plaintiff's Constitutional right to equal protection, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

64.     On March 10, 2006, the Alabama Supreme Court issued its

MEMORANDUM  OPINION, ruling in favor of Plaintiff, affirming the ruling of the

Disciplinary Appeals Board of Commissioners, reversing ASB's summary judgment,

and remanding the case for a  Hearing.  *Alabama State Bar  v. Sherryl Snodgrass

Caffey* (Ala. Sup. Ct. 2006), Case No. 1040527.  **EXHIBIT 13**

65.     Further, in its 2006 Opinion, the Alabama Supreme Court acknowledged

that it had <u>not</u> addressed Plaintiff's claims concerning the trial court and the Bar

suppressing and otherwise tampering with the record, which contained exculpatory

evidence, due to its remand on other grounds. **EXHIBIT 13, Footnote 8, pp. 9-10**

66.     As of this date, the aforesaid issues concerning the suppression, alteration,

partial destruction of and criminal tampering with the trial court record and transcript

have <u>not</u> been addressed; accordingly, said issues are "ripe" for review.

67     The aforesaid Alabama Supreme Court Opinion  acknowledged that two

of the eight charges against Plaintiff had been dismissed by ASB, to wit: alleged

violations of Rule 4.4 and 8.2.  **EXHIBIT 13**, **Footnote 3, p. 5**

68.     The Alabama Supreme Court further noted in its aforesaid Remand Order

that: **"'Rule 22(a), Ala. R. Disc. P.  provides, in relevant part:**

> **"(a) The Disciplinary Commission shall disbar or suspend a lawyer:**
> **"....**
> **"(2) If the lawyer's conviction for a 'serious crime,' as defined**

**in Rule 8 of these Rules, has become final ....**

69.    The aforesaid Alabama Supreme Court Opinion also ruled, *inter alia*:

> **Pursuant to the Alabama Rules of Disciplinary Procedure, prior adjudications establish a lawyer's misconduct for purposes of a disciplinary proceeding when a lawyer commits a serious crime. Caffey, however, was found guilty of contempt of court, which is not a crime.... Thus, we do not find support for the [2]State Bar's argument that a trial court's judgment of criminal contempt is conclusive evidence that establishes a per se violation of the Alabama Rules of Professional Conduct....**
>
> **We hold that the Board of Appeals applied the correct standard of review and that the Board of Appeals correctly determined that a conviction for contempt does not constitute a per se violation of the Alabama Rules of Professional Conduct.**
> **EXHIBIT 13, pp. 17-18**

70.     Plaintiff's appeal of the trial court's Contempt Order was filed in the Alabama Court of Civil Appeals and/or the Alabama Supreme Court (**EXHIBIT 2, p.2**); however said appeal, without the consent of Plaintiff was subsequently transferred to the Alabama Court of Criminal Appeals, thereby unlawfully "criminalizing her."

71.    Moreover, pursuant to the Alabama Supreme Court's 2006 ruling at **EXHIBIT 13**, and particularly, the above quoted sections therefrom, the trial court, ASB and the Alabama Court of Criminal Appeals rulings and actions based upon their

---

[2] Neither the Contempt Order, nor the record, state that Plaintiff was found guilty of <u>criminal</u> contempt; thus, the Bar's argument in support thereof is false, and severely prejudicial.

processing of the non-criminal contempt order as a criminal offense are due to be reversed;  and moreover, the Court of Criminal Appeals's ruling is void *ab initio*, or voidable, due to lack of jurisdiction over Plaintiff's appeal, as it only has jurisdiction over criminal cases.

72.    The Bar never amended its complaint after the  remand; accordingly, all of the allegations against Plaintiff remained premised on the Contempt Order, and are due to be dismissed.

73.    Pursuant to Rule 31 of the Alabama Rules of Disciplinary Procedure, "formal disciplinary proceedings before the disciplinary board must be instituted by the filing of formal charges within six (6) years from <u>the accrual of the  offense</u>....;" accordingly, ASB's complaint against Plaintiff, which is based upon a trial and Contempt Order dated <u>March 23, 2000</u>, could not be amended after <u>March 23 of 2006.</u>

74.    Inasmuch as the pending charges against Plaintiff were premised on the Contempt Order and they were <u>never</u> amended,  pursuant to the Alabama Supreme Court's March 10, 2006 ruling, said charges could not be re-litigated.

75.    Further, pursuant to Rule 31, ARDP, Plaintiff could not be prosecuted on new charges after the March 2006 six year statute of limitation expired.

76.    Accordingly, the  November 2008 Hearing was held on charges which could not be re-litigated, and on charges which were made for the first time at said

Hearing; as the statute of limitation for the filing of new charges had expired more than two years prior thereto.

77.    In fact, the Alabama Supreme Court in Hayes, 710 So. 2d 787, 791 found that the delay in hearing charges filed in May of 1996 until July 29, 1997, without an explanation therefor, was excessive, and dismissed said charges.

78.    On the date of the November 18, 2008 Hearing, Plaintiff was medically diagnosed by a physician and by a medical laboratory with Flu, Pleurisy and Strep Throat, which she contracted the day before at Huntsville Hospital under the following circumstances:   While she was transporting her client to a Court ordered Deposition, he suffered serious complications from recent major surgery, and his Doctor's staff instructed her to take him immediately to Huntsville Hospital ER, from which he had been discharged four (4) days earlier.  Plaintiff stayed at the hospital from 9:00 a.m. until 3:26 p.m. trying to contact his relatives, and assisting her client; and by the time she realized she had contracted the aforesaid illnesses, the Bar office had closed.

79.    Accordingly, she phoned the Bar Office the next morning at 8:00 a.m. and left a  message that she thought she had the Flu and that she was going to the Doctor; and she requested a continuance of the Hearing.  **EXHIBIT 16-A**

80.    The Hearing was being held in Montgomery, Alabama which is approximately 200 miles from Huntsville, Alabama, her place of residence, thus, 400

miles round-trip.

81.    In order to get the Hearing Panel to deny Plaintiff's request for a continuance,  Lusk falsely told the panel that her Hearing should <u>not</u> be continued because she had engaged in a pattern and practice of avoiding the Hearing by filing motions for continuance in order to avoid the Hearing.  **EXHIBIT 16-B**

82.    In support of his aforesaid false contention, Lusk presented the documents which he admitted, and which appear in the record  at C 39-81, which, to the contrary, show that while Plaintiff obtained only one (1) continuance, Lusk and the Hearing Panel continued and reset the Hearing ten (10) times.  Said record documents, which are attached as **EXHIBIT 16-C**, clearly show that ASB engaged in the pattern and practice of continuing and/or re-setting the Hearing, and RE-SET most of the Hearings *ex parte*.

83.    Accordingly, ASB used its own transgressions to deny Plaintiff a continuance of the Hearing.

84.    Additionally, Lusk falsely told the Hearing Panel that he had spoken to Plaintiff on numerous occasions, and that he could tell by her voice that she was not ill (**EXHIBIT 16-B**); however, his "voice diagnosis" is flatly contradicted by Plaintiff's [3]medical records, and her husband's medical records, which show that they both were

---

[3] Plaintiff's medical records are not provided herewith to protect her right to privacy. However, a portion thereof is included in ASB's records; and a complete copy is available for inspection and review by the Defendants and this Honorable Court.

medically diagnosed that day by a physician and by an independent Medical Laboratory with Flu; and she was additionally medically diagnosed with Strep Throat and Pleurisy. In fact, Plaintiff transmitted the FLU to her [4]husband.

85.    Additionally, Lusk falsely told the Hearing Panel that Plaintiff had not made additional contact with the Bar on the Hearing date, when he knew she had phoned him after returning from the doctor and lab offices, and the pharmacy;  and he had refused to take her call.

86.    Lusk's aforesaid knowing, intentional, wilful, and malicious false assertions against Plaintiff  proximately caused the Hearing Panel to hold her Hearing *ex parte*, thereby depriving her of her Constitutionally protected rights to due process; to a fair and impartial hearing; and to equal protection, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and thereby causing the damages complained of herein.

87.    During the Hearing, Lusk submitted the Exhibits identified on p. iv of the RECORD ON APPEAL INDEX, and attached as **EXHIBIT 15.**  Said Exhibits include his craftily designed extracted excerpts from the trial transcript, which grossly distort context, and which omitted ultimate favorable rulings on Plaintiff's motions and

---

[4] His redacted medical records will be made available upon request.

objections; one copy of the [5] trial transcript, which according to the ruling by the Hearing

Panel was not considered; the Contempt Order, which by Order of the Supreme Court

could not be re-litigated, the purported VHS Taped TV interview of Plaintiff, which has

never been provided to Plaintiff,  which was never admitted as an Exhibit, and which

is part of the 8.2 charge dismissed in 2003; one copy of  the tainted trial transcript;

Plaintiff's purported Message requesting a continuance due to illness (**EXHIBIT 16-A**);

and a July 18, 2008 Order Resetting Date and Place for Hearing.

88.    In fact, the record shows that the Hearing Panel merely considered and

adopted Lusk's illegal extracts from the record, which were admitted as Exhibit 2; and

that they did not read the 450 page trial transcript.

89.    The Hearing Panel also considered two (2) charges which had

previously been dismissed by the Bar and found Plaintiff guilty of one of them, thereby

violating her Fifth Amendment Constitutional protection against double jeopardy, and

the well-settled law concerning *res judicata*, and issue preclusion.

90.    During the November 18, *ex parte* Hearing, Jones and Woodrof, both of

whom had previously been sued by Plaintiff in the United States District Court for the

Northern Division, gave biased, false and perjured testimony against Plaintiff.

---

[5] The Trial Transcript consisted of 450 pages.  Accordingly, it would have been
impossible for even one of the Panel Members to read the one copy of the Transcript provided at
the Hearing during the Hearing, and while participating in the Hearing.

91.   Additionally, Lusk suborned perjury; and he repeatedly gave unsworn false testimony against Plaintiff through his statements to the Hearing Panel, and through his leading questions to his friend, Brian Jones, without objection, for example:

```
Lusk:     How could you determine she was
          hostile, acrimonious?  From the tone of her
          voice?
JONES:    Yes.
LUSK:     Was it from her body language?
JONES:    Yes, sir.
```

92.   Jones falsely testified that Plaintiff was screaming and yelling at witnesses and at the trial Judge.  Lusk asked Jones if he could scream like Caffey; Jones replied that he could; Lusk directed him to "scream like Caffey for the Panel; and **Jones screamed**..  This ludicrous "scream testimony" by Jones clearly violated the Best Evidence Rule, which would have been the suppressed Trial audio tapes.

93.   During Plaintiff's *ex parte* Hearing on November 18, 2008,  Jones raised for the first time in his testimony, a claim that Plaintiff brought NAACP protesters into the courtroom and attempted to incite them to riot; and he also  testified that Plaintiff had previously participated in a protest at the Morgan County Circuit Court.

94.   Plaintiff hereby states that no protests by anyone occurred inside of the Limestone County courthouse, nor inside the Morgan County Courthouse; and she further states that she did not instigate, nor participate in any protests in either Limestone or Morgan Counties,  and that Jones' testimony concerning the foregoing,

and his allegations that the NAACP sponsored or participated in any protests, or were brought into the courtroom by Plaintiff for such purpose, are false and constitute perjury.

95.    However, following and during Plaintiff's incarceration in the Limestone County Jail, peaceful protesters led by Rev. Doris Baker, founder and President of "2000 Freedom Fighters," carried signs and marched in the vicinity of the Limestone County courthouse and the jail in protest of Plaintiff's illegal arrest and incarceration; and while Plaintiff was in the courtroom trying her case in Morgan County, peaceful protests were held by 2000 Freedom Fighters outside the Courthouse.   **EXHIBIT 24**

96.     Plaintiff further asserts that the missing trial tapes contain exculpatory evidence which clearly shows that Jones' testimony was false and constituted perjury and that Lusk suborned perjury.

97.    In fact, the Huntsville-Madison County Bar Investigator listen to the tapes and specifically noted in her Report and Affidavit, which were previously filed as part of Plaintiff's Response In Opposition to Summary Judgment, that Plaintiff was not screaming and yelling; however, Lusk also suppressed this report and Affidavit, which are attached hereto at **EXHIBITS 10-C-1 &10-C-2,** as evident in the listing of documents admitted or presented during the 2008 Hearing.  **EXHIBIT 15**

98.   Additionally, Lusk suppressed the Affidavit of Zeletta Wright, which was previously filed as part of Plaintiff's Response In Opposition to Summary Judgment, and which also stated that Plaintiff was not screaming and yelling, nor being rude or hostile.  **EXHIBIT 10-D**

99 .   Also, Lusk suppressed the Affidavit of Plaintiff, which was previously filed as part of Plaintiff's Response In Opposition to Summary Judgment, and which stated that she was not screaming, nor yelling, nor being rude, hostile, abusive to the prosecutor, the judge and witnesses, or unnecessarily confrontational; nor being disruptive, disrespectful, or contemptuous to the court.  **EXHIBIT 10-B**

100.   Jones also falsely testified that Plaintiff was jumping up and down as she screamed; that she was wearing red shoes, and that her feet left the ground; however, Judge Woodrof subsequently rebutted most of this testimony.

101.   Additionally, Jones falsely claimed that Plaintiff had accused him and Judge WOODROF of "racially conspiring to get [her] client" and that she had filed complaints against Judge WOODROF with the NAACP, wherein she accused him of misconduct.

102.   Additionally, Jones blamed Plaintiff, because, according to him, there were eight (8) newspapers present, thereby blaming Caffey for Freedom of the Press; and the Hearing Panel considered and used such testimony in its rulings against her.

103.   Jones also claimed that Plaintiff had told another attorney that she was going to file a complaint against him with the NAACP and the Department of Justice; and this hearsay alleged association with the NAACP and the Justice Department was considered and used by the Hearing Panel in its rulings against her.

104.   Jones also falsely testified  that "In another county  [Plaintiff] stood out in front of the courthouse screaming racism;" and Lusk suppressed the record evidence, to wit: the Affidavit of Rev. Doris Baker, president, 2000 FREEDOM FIGHTERS (**EXHIBIT  24**), which  was  previously  filed  as  part  of  Plaintiff's Response  In Opposition  to  Summary  Judgment,  and  which  showed  that  such  claim  constituted perjury.  This testimony was considered and used by the Hearing Panel in its rulings against Plaintiff.

105.   During the Hearing, Lusk attempted to admit a video recording of a Channel 48 television interview of Plaintiff, which occurred after the trial; however, Ward, the Hearing Officer, denied the admission thereof, stating that Plaintiff  had not been given notice of the videotape in the charges against her; the statements occurred after the mistrial; and the record is silent as to what statements are considered violations, and the reasons therefor**.  EXHIBIT 17**

106.   However, Plaintiff had no prior history of any disciplinary action against her; accordingly, during the sentencing phase, Lusk requested to use the TV interview

as aggravating circumstances to argue for disbarment.  **EXHIBIT 18**

107.   Ward permitted such use, although he had previously denied the admission

of the video tape into evidence; and although it was never admitted into evidence.

**EXHIBIT 17**   Moreover, Lusk, Ward and the Hearing Panel used the TV VHS Tape

although it concerned the aforesaid dismissed 8.2 charge, which was discussed during

the *ex parte* Hearing, to wit:

> **THE HEARING OFFICER:   Let me ask you this:**
> **Which of your factual allegations which is what**
> **We have to - - that we're here on pertains to the video**
> **of her in her jail outfit?**
>
> **MR. LUSK:  There's an allegation of a violation of 8.2.**
> **There's probably not any specific factual allegation but**
> **just an allegation that she violated that.  And I believe - -**
> **I apologize.  I believe that's Count V.  C 276-277**

108.   Accordingly, Defendants' use of the TV VHS Tape as aggravating

circumstances, while knowing that any allegations regarding said tape were imbedded

in the 8.2 Count V charge, which they had previously dismissed, additionally constitutes

malice, wantonness, and a reckless disregard for Plaintiff's Constitutional protection

against double jeopardy.

109.   Further, Plaintiff was never provided a copy of the aforesaid interview

despite her numerous  requests therefor, and her payment for the complete appellant

record twice which ostensibly included fees for the video inasmuch as she included it

in her designated appellate record.  **Exhibit 4-G**

110.   The Hearing Panel found that Plaintiff was defiant and disrespectful because during the TV interview **"she [purportedly] claimed that there was an intolerance by white judges to show  respect to black attorneys and that the judge [6][Woodrof] was embarrassed by all the lies the State (Jones) told during the trial."** However, no evidence was admitted during the Hearing which rebutted either of the aforesaid statements.

111.   Plaintiff remembers giving the interview 10 years ago, and making a statement based upon the findings of a survey of minority attorneys, in which she participated, and which was commissioned by ASB and published by ASB in its November 1999 issue of THE ALABAMA LAWYER; however, she does not remember her exact words, but she does remember making a statement which paraphrased or mirrored the aforesaid survey findings.

112.   A copy of ASB's aforesaid published survey findings is attached as **EXHIBIT 20,** as evidence that Plaintiff is purportedly and effectively disbarred because she repeated, or paraphrased, ASB's commissioned survey findings previously documented and published by ASB in its November 1999 edition of The Alabama

---

[6] It should be noted that Judge Woodrof did not rebut either purported statement by Plaintiff.

Lawyer, to wit:   **58% of the minority attorneys surveyed reported that they had experienced "condescending treatment by non-minority attorneys or judges because of their race; and 26% reported that they had experienced "verbal abuse or harassment" because of their race.   EXHIBIT 20**

113.    Additionally, the Hearing Panel's Report and Order (**EXHIBIT 21**) clearly shows that Plaintiff was tried on two previously dismissed charges, to wit; 4.4 and 8.2**, p. 1;** that the Hearing Panel **"had the benefit of a significant portion of the transcript of the trial transcript, which was admitted as Exhibit "2",** which is Lusk's extracted excerpts (**Exhibit 15, p. iv**); that the Contempt Order was re-litigated, **p. 96;**  that Plaintiff was convicted of the previously dismissed 8.2 charge **p. 97**; that the Hearing Panel used the false and perjured testimony of Jones and Woodrof to reach its decision; that the Hearing Panel's consideration of mitigating and aggravating circumstances is contrary to the evidence and the Rules, and even Lusk's assertion that he needed the TV VHS Tape to show aggravating circumstances in the absence thereof; and said Report and Order confirms that ASB used her exercise of freedom of speech during a TV interview  to make its finding and ruling, to wit:

> **During the penalty phase of this proceeding, the Panel viewed a videotape from a local Athens television station of comments made by Ms. Caffey after the trial.   In the video, rather than being**

> **remorseful or at all having awareness of
> her actions, Ms. Caffey was defiant and
> disrespectful.   Among other things, she
> claimed that there was an intolerance by
> white judges to show respect to black
> attorneys and that the judge was
> embarrassed by all the lies the State told
> during the trial.**
>
> **EXHIBIT 21, p. 18**

114.   Plaintiff timely filed a Motion to Vacate the Bar's aforesaid actions; and attached thereto copies of her medical records, which showed that she not only was too physically disabled to participate in a Hearing and to drive the 400 miles round trip distance; but she also  was diagnosed by a physician and a Lab with two contagious illnesses, to wit: Flu and Strep Throat, in addition to Pleurisy, which she had a moral obligation, if not legal, not to spread.  **EXHIBIT 23-A**

115.   Ward denied said Motion (**EXHIBIT 23-C**), although he previously noted Plaintiff's lack of follow-up and the absence of independent documentation of Plaintiff's illness as grounds for the Hearing Panel's ex parte ruling **(EXHIBIT 21**); and her Motion to vacate clearly contradicted and eliminated said grounds.

116.   On August 19, 2009, Lusk  received notice that Plaintiff had re-filed her brief in the Alabama Supreme Court, which Lusk had previously succeeded in obtaining the dismissal thereof.  **EXHIBIT 26**

117.   Said Brief re-activated Plaintiff's allegations of misconduct and criminal conduct by Lusk.

118.   Accordingly, on the following day, August 20, 2009, Lusk went on a "retaliatory binge" against Plaintiff, thereby establishing a [7]pattern and practice of retaliation against persons who noted, or complained of his illegal conduct and actions, to wit: the local bar investigator, and Plaintiff.

119.   Lusk's "Retaliatory Binge" included Lusk filing an ex parte Petition for Plaintiff to be summarily suspended from the Bar because she failed to respond to a bar complaint filed by the  father of one of her adult clients on the initial due date of July 10, 2009, although Plaintiff had notified ASB that she had sustained serious injuries in an automobile accident that day, in which another driver ran a red light and struck the vehicle she was driving in the driver's door with such impact that it totaled her vehicle; and although he knew that she had previously requested and obtained a 14-day extension of time from his office to respond; and although he did not know whether she had recovered sufficiently to respond thereto upon the expiration of the 14 days.

---

[7]  Lusk previously attached 144 pages of disciplinary history on the Investigator of Jones Complaint to his 177 page response Plaintiff's response in opposition to his motion for summary judgment, which included said Investigator's findings that he and Jones were friends and therefore, he had a conflict of interest; and Plaintiff was being denied equal protection.

120.   In fact, Plaintiff's  medical condition had deteriorated due to a
concussion so severe that it caused continued swelling of her brain and the continued
amassing of fluids therein, which thereby caused her to suffer seizures, black-outs
and loss of memory.

121.   During the [8]ex parte Suspension Hearing, Lusk submitted an Affidavit
from Rankin, which falsely claimed that Plaintiff had engaged in a pattern and
practice of not answering complaints; when in fact, all of the complaints listed in the
Affidavit (with the exception of the one response due on July 10, 2009)  had been
timely answered within the initial timeframe, or within ASB approved extended
timeframes several months prior to the August 20, 2009 date of the Affidavit.

122.   Additionally, ASB submitted its  interpretative and biased ex parte
summaries of the Bar Complaints against Plaintiff to the Commissioners, which
contained false information, and which were severely prejudicial, manifestly unjust,
and illegal.  Moreover,  ASB failed to provide notice to Plaintiff of its Petition prior
to ruling thereon, thereby depriving Plaintiff of her statutory and Constitutional
rights to due process, a fair and impartial hearing and equal protection.

---

[8] Plaintiff received no notice of his Petition, nor of the Hearing thereon.  Accordingly, she
was provided no opportunity to respond to his allegations.

123.   Lusk's and Rankin's aforesaid actions resulted in Haney, who was now acting in his role as Chairman, ASB Disciplinary Commission, entering an *ex parte* and fraudulently procured Order  suspending Plaintiff from the practice of law effective August 20, 2009.  **EXHIBIT 29**

124.   Further, although said Order constituted an interim suspension, which pursuant to Rule 20© (3) of the Alabama Rules of Disciplinary Procedure, dissolved twenty-eight (28) days thereafter in that no formal charges were brought against Plaintiff, said interim suspension was falsely advertised as a more serious summary suspension in the newspaper and in Bar publications, which falsely stated that Plaintiff "was  <u>summarily</u> suspended from the practice of law in Alabama.... based on a petition filed by the office of general counsel evidencing that Caffey had failed to respond to **<u>requests</u>** for information versus the one (1) complaint she could not answer because of her injuries.  **EXHIBIT 31**

125.   Accordingly, by the time the aforesaid notices were published in the Huntsville Times on September 23, 2009 (**EXHIBIT 31**), and in the Alabama Lawyer in its November 2009 edition (**EXHIBIT 31**), and otherwise, Plaintiff had responded to the one outstanding complaint; and her interim suspension had automatically dissolved.

126.   ASB also forwarded said fraudulent notices to various state and Federal courts,  to include the Middle Judicial District, which resulted in several Judges terminating Plaintiff as counsel of record for parties in pending cases, as evident in the two examples provided at **EXHIBIT 34.**

127.   Accordingly,  ASB perpetrated fraud upon the state and Federal courts; upon Plaintiff's clients; upon the general public, to include  potential clients; and upon Plaintiff, thereby proximately causing damages to her, her clients, and the Justice System.

128   Further, the next day, August 21, 2009, the Alabama State Bar sent Plaintiff what is purported to be an Order from the Alabama Supreme Court striking her name from its rolls and disbarring her from the practice of law in this State.

**EXHIBIT  30**

129   Thereafter, the Alabama State Bar published its notice of the aforesaid purported disbarment order in the Huntsville Times newspaper, on its website, in its Publications, to include The Alabama Lawyer, and otherwise.  **EXHIBIT 32**

130.   Further, said disbarment notice was provided to the State and Federal Courts, to clients, to potential clients, and to the general public.

131.   In committing the aforesaid acts, ASB once again perpetrated fraud upon the Courts, Plaintiff's clients, potential clients, the general public and Plaintiff,

thereby proximately causing damages to her, to her clients, and to the Justice System.

132.   ASB even told LEXIS-NEXIS that Plaintiff was no longer an attorney and had her LEXIS NEXIS Research contract cancelled, thereby interfering with a contractual relationship between Plaintiff and LEXIS NEXIS, although the Bar knew that she was additionally licensed in the Northern and Middle District Federal Courts, the Eleventh Circuit Court of Appeals, and the United States Supreme Court.
 **EXHIBIT 33**

133.   The notice of disbarment specifically and falsely stated that Plaintiff had been disbarred by the Alabama Supreme Court effective that date, to wit: August 21, 2009.  **EXHIBIT 32**

134.   However, on August 21, 2009 and thereafter, Plaintiff's appeal was still pending in the Alabama Supreme Court, and no disbarment Order had been entered by the Alabama Supreme Court, nor by ASB.  **EXHIBIT 35.**

135.   Further, pursuant to *Rule* 26 (g) or the Rules of Disciplinary Procedure, any disbarment action is <u>STAYED</u> pending the final disposition of any appeal.

136.   The last Order on Plaintiff's appeal, thus far, is the April 26, 2010 United States Supreme Court denial of her Petition for Writ of Certiorari, due to the lack of a final appealable order from the Alabama Supreme Court, as evident in the Alabama Supreme Court's final Docket Sheet served on Plaintiff at  **EXHIBIT 40.**

It should be noted that the aforesaid April 2010 Docket Sheet, constitutes evidence that as of that date, the Alabama Supreme Court had not entered an Order disbarring Plaintiff, nor a final appealable Order.  Said Docket Sheet also shows that the Alabama State Bar had not filed an Order of Disbarment as of that date.

137.   In reliance upon the aforesaid fraudulent and forged disbarment order, State and Federal Courts, Judges, her clients, potential clients, her friends & family, the general public, all believed that she had been disbarred, and acted accordingly.

138.   Moreover, Plaintiff, in reliance upon the aforesaid fraudulent and forged disbarment order, also  believed that she had been disbarred, and, accordingly, closed her law office and terminated her representation of clients.  Also, she filed a Request for Reconsideration and a Brief in Support of a previously filed motion in which she sought to overturn what she believed at the time to be a disbarment. However, both  documents were purportedly denied and/or stricken from the record.

**EXHIBITS 36 & 37**

139.   Upon information and belief, agents and employees of ASB told some of Plaintiff's clients that she had been disbarred and would never practice law in the State of Alabama again; and said agents and employees of ASB solicited complaints against Plaintiff from her clients and offered some of them money to file such

complaints.  Further, said agents and employees of ASB "went on a witch hunt"and contacted Judges in an attempt to "dredge -up" negative information about Plaintiff.

140.  Additionally, in response to Plaintiff filing an appeal to the U.S. Supreme Court, wherein she detailed Lusk's illegal acts, Lusk retaliated against Plaintiff by processing two Bar Complaints against her, which contained only case numbers, and no allegations, nor complainants.  One, however, contained a copy of a document that she had filed *pro se* in a case in which she has been a named party since 2007.  In response to Plaintiff's request for her due process notice of allegations and identity of complainants, Lusk responded that the complaints were for the unauthorized practice of law.  Lusk's actions violated Bar Disciplinary Rules, and Alabama law and the U.S. Constitution, which permit *pro se* representation.

141.   Additionally, upon information and belief, the Alabama State Bar has engaged in a pattern and practice of discriminating against minority and female attorneys, and against sole practitioners **in the complaint process**, **in disciplinary actions**, in **referrals, in award recognitions**; **and otherwise**; and further evidence of ASB's disparate treatment of Plaintiff, a minority and female attorney, and sole practitioner is stated hereinbelow, and will be provided upon discovery completion.

142.  Plaintiff, who is a minority, female and sole practitioner, and who is known to be an avid and outspoken civil rights advocate inside and outside the

courtroom, was prosecuted by the Bar because of her race, and because of the racial stance she took when she made a statement to the media which acknowledged ASB's Survey findings that some white judges engage in condescending, harassing and abusive treatment of minority Attorneys because of their race, as evident in the fact ASB has raised "racial issues" throughout its proceedings against Plaintiff, to wit:

143.   The Chair of the local Bar Grievance Committee told her that the Bar's main concern was whether she had called Judge Woodrof a racist.  She did not.

144.   During the sentencing Hearing on the summary judgment ruling (which was subsequently overturned by the Alabama Supreme Court),  Lusk asked Plaintiff if she had called Judge Woodrof a racist.

145.   During the Hearing on Plaintiff's Appeal to the Bar Commissioners, one of the Commissioners asked Lusk if Plaintiff were the only attorney to be prosecuted by the Bar because of a contempt proceeding.  Lusk replied that she was.

146.   The Bar Commissioners thereafter reversed ASB's summary judgment against Plaintiff and remanded her case for a Hearing on the merits.

147.   During ASB's November 18, 2008 *ex parte* Hearing, Lusk and the Hearing Panel used a TV interview of Plaintiff, wherein she paraphrased ASB's survey results on  minority attorneys, as aggravating circumstances to argue for, and to enter a Hearing Panel determination that she should be disbarment.  **EXHIBITS**

**18 & 20**

148.   The Bar prosecuted Plaintiff, and the Hearing Panel considered and used Jones' hearsay and false testimony claiming that Plaintiff had filed complaints with the NAACP and Justice Department, in violation of her constitutional rights to equal protection, and to seek legal redress by governmental agencies.

149.   ASB and the Hearing Panel considered and used Jones' testimony finding fault with Plaintiff because she made a "Batson" objection to him striking a potential African American female juror (who incidentally was a Warrant Magistrate) because, according to Jones, **"she rolled her eyes"  at him** in their ruling against Plaintiff; Jones false and perjured testimony that Plaintiff had accused him and  Judge WOODROF of "racially conspiring to get [her] client" and that she had filed complaints against Judge WOODROF with the NAACP, wherein she accused him of misconduct; and Jones false and perjured testimony that **"In another county  [Plaintiff] stood out in front of the courthouse screaming racism"** in their findings and rulings against her.

150.   ASB and the Hearing Panel's racial and sexual bias against Plaintiff is readily discernible from the fact that they used her references to Demand for Discovery and Argument as evidence that she was being rude, hostile, argumentative, and contentious, when in fact, a <u>Request</u> for Discovery in a civil case

is properly captioned a <u>Demand</u> for Discovery in a criminal case; and argument is the proper term for the statements made by an attorney in support of a motion or a legal position.

151.   Additionally, Judge Woodrof classified her properly questioning the evidence as her "picking the evidence apart."

152.   In fact, although the record clearly shows that the Bar's Disbarment Order is based upon Plaintiff's purported statement; ASB chose to violate the March 2006 ruling by the Alabama Supreme Court and use the Contempt Order as the grounds for her purported disbarment in its various publications thereof, rather than to publicize its discriminatory animus and disparate treatment against her; and such avoidance and smokescreen clearly shows that ASB knowingly, intentionally and maliciously discriminated against Plaintiff.

153.   Plaintiff previously pursued an appeal of a summary judgment, which was supported  by ASB's finding of no misconduct by a white male attorney who left the following offensive  message on his African American female client's home telephone, which was first heard by her minor daughter:  "Fucking Nigger, can't trust a damn one of them." *Pearsall v. Self, 852 So. 2d 205 (Ala. 2002)*   While this attorney was not disciplined, and is now a Circuit Judge, Plaintiff was purportedly and effectively disbarred for repeating ASB's documented and published findings.

154.   During the same timeframe in which Plaintiff was being prosecuted by the Bar, a white female attorney whose last name is Crittenden, was found guilty of <u>wilful</u> contempt of court by the trial court and by the Alabama Supreme Court, which ruled that the evidence was sufficient to establish beyond a reasonable doubt that Attorney  Crittenden was given a specific order; that she violated that order; and that her violation of the order was wilful;  however, said Attorney was not prosecuted by the Alabama State Bar. *Ex  parte R. A. Ferguson, 819 So. 2d 626 (Ala. 2001)*

155.   To the contrary, there exists <u>no</u> finding that Plaintiff  was given a specific order which she violated, and there exists  no evidence, nor finding that her conduct was wilful; yet ASB has now prosecuted and persecuted her for ten (10) years!

156.   Further, two white male attorney candidates for Alabama Supreme Court Justice positions, who made campaign statements concerning the integrity, qualifications and/or laziness of their opponents, who are currently seated Alabama Supreme Court Justices, have not been prosecuted, nor disbarred.

157.   **There exists no policy, nor  procedure, which  protects minority attorneys, or their clients, from disparate treatment in the courtroom, or by the Alabama State Bar; and there exists no CLE to teach minority attorneys how to handle such disparate treatment by their colleagues and judges, emotionless and**

in silence; and in fact, as this case aptly demonstrates:   **JUST RAISING THE ISSUE OF A JUDGE'S DISPARATE TREATMENT CONSTITUTES AN UNWRITTEN DISBARMENT OFFENSE**.

## C.   APPEAL TO ALABAMA SUPREME COURT

158.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-157 and all subsequent averments, as if fully stated herein, and further states:

159.   Pursuant to Alabama Appellate rules/policies/procedures, Plaintiff timely filed her appeal to the Alabama Supreme Court by certified mail on June 15, 2009, three (3) days prior to its June 18, 2009 due date.

160.   On August 4, 2009,  Esdale, Clerk of the Alabama Supreme Court, entered an Order (**EXHIBIT 28**) dismissing Plaintiff's Appeal based upon "Failure to Prosecute" in violation of  Rule 2(a)(2) of Ala. Rules of App. Proc., which mandates:

> **When an appellate court, on motion of a party, or on its own motion, shall determine that a party is obviously failing to prosecute the appeal ©, or has substantially failed to comply with these rules (D), the appellate court shall cause notice to be sent to the party in default, notifying the party, in**

**general terms, of the deficiency. If the party in default fails to correct the deficiency prior to submission, or within such time as the appellate court shall direct, the appellate court may dismiss the appeal. The attorney for the party in default has the burden to correct promptly any deficiency or to see that the default is corrected by the appropriate official.**

161.   Plaintiff was <u>not</u> sent the aforesaid mandated notice of the Alabama Supreme Court's non-receipt of her brief; and when she responded to the notice of dismissal of her appeal by filing a Motion for Reinstatement and her June 15, 2009 Certified Mailing Receipt, which clearly showed that she timely filed her brief on June 15, 2009, three (3) days before the June 18, 2009 filing deadline, said motion was purportedly denied by the Alabama Supreme Court on August 25, 2010.

**EXHIBITS 35 & 36**

162.   Further, Plaintiff subsequently re-filed copies of her brief with a Motion to Accept the Out of Time Filing thereof; and a Motion for Reconsideration.

**EXHIBIT 35**

163.   However, the Alabama Supreme Court never ruled on her Motion to Accept the Out of Time Filing of her Brief; and denied her Request for Reconsideration by treated it as an Application for Rehearing and striking it and her response to ASB's Motions from the record on September 3, 2009, although Rule 27

of the Alabama Rules of Appellate Procedure authorizes such motions.  **Exhibit 35**

164.   Further, the Alabama Supreme Court never ruled upon Plaintiff's Motion  to Accept Out of Time Filing of Appellant's Brief, which remains pending to this date, but struck her brief in support thereof.  **EXHIBITS 35 & 37**

165.   On December 1, 2009, Plaintiff phoned the Alabama Supreme Court and requested a final appealable Order; and in response thereto, its staff attorney, Ann Wilson, told her that she had received all of the orders she was going to get.

166.   On January 27, 2010, Plaintiff and two Attorneys went to the Clerk's Office of the Alabama Supreme Court for the purpose of retrieving a certified copy of her appellate file, and copies of any other files on her related to ASB's case against her, and any rulings thereon; whereupon, they were given certified copies of all documents filed in her case, as evident in the certifications on the Docket Sheets at **EXHIBIT 35**, and told that no other files existed.

167.   Additionally, the certifying clerk, Anne Marie Gatson, placed her initials "AMG" on the Certification page and on both pages of the Docket Sheet, copies of which are attached at **EXHIBIT 35**.

168.   The aforesaid certified  documents and the Docket Sheets show that no Disbarment Order has been entered by the Alabama Supreme Court; and that no Disbarment Order exists in the appellate records, nor on the Docket Sheets**.**

**EXHIBITS 30 & 35.**

169.    Said certified records and Docket Sheet also show that no Order of Disbarment by the Disciplinary Board of the Alabama State Bar exists in the appellate records, nor on the Docket Sheets, although the purported August 21, 2009 Disbarment Order states that said document was filed in the Alabama Supreme Court on August 4, 2009, and that it forms the basis for the purported Disbarment Order.

**EXHIBITS 30 & 35**

170.    On April 16, 2010, Petitioner phoned the Alabama Supreme  Court, and spoke to another Staff Attorney, who searched the Supreme Court records on her and confirmed that the Alabama Supreme Court had not entered an Order disbarring her; that neither the August 21, 2009, nor the August 4, 2009 documents had been filed in the Alabama Supreme Court; and that only the Alabama Supreme Court could disbar her.

171.    Thereafter, the Alabama Supreme Court sent her the April 26, 2010 Supreme Court Docket Sheet attached as **EXHIBIT 40**, which shows that as of that date, no disbarment order had been entered by the Alabama Supreme Court.

172.     However, in response to her request for the Alabama Supreme Court to take corrective action by issuing its Order declaring that it had not disbarred her, the Staff Attorney told her that no procedure existed to issue such Order, and that her

appellate file was closed.

173.   As further evidence of the fraudulent August 21, 2009 disbarment order, Plaintiff has attached four (4)  comparative Alabama Supreme Court documents entered by the Alabama Supreme Court; and a Certificate of Judgment in a client's case which was entered, ironically, on the same date of the fraudulent Disbarment Order.  **EXHIBIT 38**

174.   As of this date, Plaintiff has not been provided any document, other than the August 21, 2010 purported disbarment order, which purports to disbar her, nor a final appealable Order, to wit: a Certificate of Judgment, from the Alabama Supreme Court.

175.   Moreover, after the purported August 21, 2009 Disbarment Order, the Alabama Supreme Court continued to process Plaintiff's appeal.  **EXHIBIT 35**

176.   Additionally, the legitimacy of the  purported 08/25/09 and 09/22/09 purported Alabama Supreme Court Orders is questionable, as readily apparent in a comparison between said documents (**EXHIBITS 36 and 37**, respectively) and the comparative Alabama Supreme Court Documents at **EXHIBIT 38**, and otherwise.

177.   Plaintiff's Complaint for Declaratory Judgment should be granted because the Alabama Supreme Court's acquiescence in the fraudulent document disbarring her, and its inaction thereupon, aids and abets several criminal and

otherwise illegal acts against her.

178.   Additionally, the Alabama Supreme Court's acquiescence in the fraudulent document deprives Plaintiff of her Constitutional Rights to:  freedom of speech, freedom of association, freedom to seek legal redress from a governmental agency; due process, a fair and impartial hearing, equal protection, her property and liberty rights in her professional bar license; and her Constitution protections against double jeopardy, as guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

179.   Additionally, the Alabama Supreme Court neglected to enforce its rulings in Alabama State Bar v. Sherryl Snodgrass Caffey (Ala. Sup. Ct. 2006), Case No. 1040527, wherein it affirmed the Bar Commissioners reversal of the Bar's summary judgment, which was erroneously based upon a finding that Petitioner was guilty of ethical violations solely because she was found in contempt of court; remanded the case for a Hearing; and  prohibited the re-litigation of the Contempt Order, in that the Bar re-litigated the Contempt Order and used it as grounds for her purported disbarment in its notices thereof.  **EXHIBIT 32**

180.   Further, the Alabama Supreme Court abdicated its statutory review and decision role in attorney disciplinary actions, and closed its file on Plaintiff's appeal without ever entering a final ruling on her Motion to Accept Appellant's Brief Out of

Time; without entering a Certificate of Judgment, and thus, without entering a final appealable Order, thereby severely prejudicing Plaintiff in her appeal to the United States Supreme Court, in that said court lacked jurisdiction to consider her Petition for Writ of Certiorari since there exists no final appealable Judgment from the highest state court, the Alabama Supreme Court, for it to review.

181.   Ann Wilson, the Alabama Supreme Court Staff Attorney, who was assigned Plaintiff's case, had a duty to ensure the proper processing of her appeal and the statutory review and final and effective ruling on the Bar's disciplinary actions against Plaintiff.  However, on May 27, 2010, Wilson confirmed that Plaintiff's appellant file was closed; and in response to Plaintiff's protests of her file being closed without a final and appealable ruling from the Alabama Supreme Court, Wilson warned Plaintiff against filing a complaint against her.

## D.  APPEAL TO THE UNITED STATE SUPREME COURT

182.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-181, and all subsequent averments, as if fully stated herein, and further states:

183.   Based upon the aforesaid actions by the Alabama Supreme Court, Plaintiff was forced to file an appeal to the United States Supreme Court without a

final appealable Order, and with no expectation of ever receiving a final appealable

order; and the lack thereof was one of her appealed issues, as evident in her Petition

for Writ of Certiorari enclosed as **EXHIBITS 39-A.**

184.    Additionally, Plaintiff filed a Supplemental Petition for Writ of

Certiorari in the United States Supreme Court, wherein she attached copies of

**EXHIBIT 35**, which clearly showed that there existed  no final appealable Order

disbarring Plaintiff in the Alabama Supreme Court.   **EXHIBIT 39-B**

185.    In her Supplemental Petition for Writ of Certiorari to the United States

Supreme Court, Plaintiff addressed the Alabama Supreme Court's acquiescence in

and/or ratification of the aforesaid illegal acts and violations of her Constitutional

rights  by raising the following issues:

> **Appellant hereby asserts that the Alabama Supreme Court's
> acquiescence in a fraudulent document containing the forged
> signatures of its Justices, under any circumstances, is patently
> unfair and manifestly unjust to anyone who is the recipient of any
> injustice as the result of such acquiescence and lack of corrective
> action.   She further asserts that the Alabama Supreme Court's
> position violates Alabama Rules of Disciplinary Procedure, as
> cited on pp. 5-6 of her initial Petition, which clearly show that the
> Alabama Supreme Court has a legal obligation to review, to rule
> upon, and to effectuate any disbarment order.**
>
> **Accordingly, Appellant's Petition for Writ of Certiorari should
> be granted because the Alabama Supreme Court's inaction,
> purportedly due to her state appellate file being closed, effectively
> constitutes its final action, and thus, its final unwritten
> appealable Order.  Otherwise, State courts will be able to
> abdicate their review role and their duty to correct injustices at
> will by simply closing the file, or by adhering to, and forcing**

others to adhere to  unwritten final Orders.  Further, state courts will be able to delete their Appellants' Constitutional rights and their Appellants'  procedural due process right to an appeal to this Honorable Court, by simply pushing the "delete button of apathy."  Further, the Alabama Supreme Court's acquiescence in such injustice violates any notion of fair play and decency.

Moreover, the aforesaid acquiescence of the Alabama Supreme Court in a fraudulent document bearing the  forged signatures of its Justices and its inaction thereon, begs the questions:  "WHO'S MINDING THE ALABAMA SUPREME COURT?"  Why is it not concerned about someone else's use of the forged stamped signatures of its Justices?  How many rulings have been made in this manner?  Is there someone on death role, or someone who has been executed, or imprisoned for life, or for a day; or is there someone who has lost a civil case in the State of Alabama, because of  Orders from the Alabama Supreme Court, which bear the forged stamped signatures of its Justices?

Accordingly, this Honorable Court's Writ of Certiorari must issue to correct the injustices and illegalities perpetrated against Petitioner, and possibly against other state Appellants, or other state foreclosed Petitioners to this Court; and to protect the stamped signatures of the Alabama Supreme Court Justices, since they refuse to protect their own.

Petitioner's Petition for Writ of Certiorari should be granted because the Alabama Supreme Court's acquiescence in the fraudulent document disbarring her, and its inaction thereupon, aids and abets a criminal act against her, and deprives her of the Constitutional Rights for which this Honorable Court is the final SAFEGUARD....

186.   However, notwithstanding the foregoing compelling issues and argument, the United State Supreme Court simply lacked jurisdiction to review Plaintiff's Petition and Supplemental Petition for Writ of Certiorari because of the Alabama Supreme Court's failure to review and to enter a final appealable order which could invoke the review jurisdiction of the United States Supreme Court.

187.   Moreover, even though the issues quoted hereinabove from Plaintiff's Petitions to the United States Supreme Court greatly exceed the personal interests of Plaintiff, and has the potential of reaching into an abyss of countless numbers of criminal defendants and civil litigants, who have been denied their fundamental constitutional rights by the Alabama State Bar and/or the Alabama Supreme Court due to the insurmountable  jurisdictional hurdle of a non-final appealable Order, the United States Supreme Court had no jurisdictional option other than to enter its Order denying Plaintiff's Petition for Writ of Certiorari.  **EXHIBIT 39-C**

## E.  STATEMENT OF FACTS COMMON TO ALL PARTIES and TO ALL CLAIMS

188.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments,  all previous averments in paragraphs 1-187, and all subsequent averments, as if fully stated herein, and further states:

189.   Plaintiff avers that the Defendants committed the acts complained of herein, while acting under color of state law, while violating state statutory and case law and the Alabama State Bar Code of Conduct and Disciplinary Rules and Procedures, and while violating Plaintiff's clearly established constitutional rights to: freedom of speech, freedom of association, freedom of press, freedom to seek legal redress from a governmental agency, as guaranteed by the **First Amendment** to the

United States Constitution, and by the Alabama Constitution of 1901, which Defendants knew, or should have known, and were charged with knowing by virtue of their jobs and positions.

190.   Plaintiff further avers that the Defendants committed the acts complained of herein, while acting under color of state law, while violating state law, the Alabama State Bar Code of Conduct and Disciplinary Rules and Procedures, and while violating Plaintiff's clearly established constitutional rights  to:   privileges and immunities and her liberty and property rights to her Bar License,  freedom from double jeopardy, and due process, as guaranteed by the **Fifth Amendment** to the United States Constitution, and by the Alabama Constitution of 1901, as amended, which Defendants knew, or should have known, and were charged with knowing by virtue of their jobs and positions.

191.   Plaintiff further avers that the Defendants committed the acts complained of herein, while acting under color of state law, while violating state law, the Alabama State Bar Code of Conduct and Disciplinary Rules and Procedures, and while violating Plaintiff's clearly established constitutional rights to:   a fair and impartial hearing, as guaranteed by the **Sixth Amendment** to the United States Constitution, and by the Alabama Constitution of 1901, as amended, (which Defendants knew, or should have known, and were charged with knowing by virtue

of their jobs and positions.

192.   Plaintiff further avers that the Defendants committed the acts complained of herein, while acting under color of state law, while violating state law, the Alabama State Bar Code of Conduct and Disciplinary Rules and Procedures, and while violating Plaintiff's clearly established constitutional rights to equal protection and to privileges and immunities, to include her property and liberty rights in her Bar License, as guaranteed by the **Fourteenth Amendment** to the United States Constitution, and by the Alabama Constitution of 1901, as amended., which Defendants knew, or should have known, and were charged with knowing by virtue of their jobs and positions.

193.   Plaintiff further avers that while committing the acts complained of herein, the Defendants acted illegally, fraudulently, in bad faith, beyond the scope of their employment and/or their discretionary authority; and/or they acted with gross negligence and under a mistaken interpretation of law.

194.   Plaintiff further avers that the Defendants' complained of actions were independent and/or combined and concurrent and/or in conspiracy with each other and/or with other defendants; and that said actions are continuing.

195.   Plaintiff hereby asserts that the defendants acts were motivated by evil intent and motive, or by reckless and callous indifference to, and violations of, her

constitutional rights, Alabama statutory and case law and Alabama State Bar Code of

Conduct and Disciplinary Rules and Procedures; and that the Defendants acted

knowingly, intentionally, purposefully, wantonly, maliciously and/or with

discriminatory and retaliatory animus against her in committing the acts complained

of herein; and that accordingly, she is entitled to recover compensatory ,

consequential and punitive damages.

196.   Plaintiff further avers that the Defendants are not entitled to sovereign

(absolute) immunity, nor to discretionary (qualified) immunity based  upon the facts

of this case, and the following additional reasons:

a.      In *Ex parte Alabama Dept. of Forensic Sciences, 1997 WL 707058*

*(Ala. 1997)*, the Alabama Supreme Court ruled that: "the immunity conferred by

Section 14 is not absolute; it does not apply where the state officers or employees are

alleged to have acted illegally, fraudulently, in bad faith, beyond their authority, or

under a mistaken interpretation of law, or where the lawsuit seeks to compel the

performance of a legal duty or a ministerial act or to enjoin the enforcement of an

unconstitutional law, or where the action is brought under the Declaratory Judgment

Act," as in the instant case.

b.      Additionally, pursuant to statutory and case law, the Defendants deemed

to be State Officers/Employees, [hereinafter "State Actors"], who are alleged to have

acted illegally, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of law, are not immune from monetary damages.

c.     The Defendants are not entitled to immunity protections against Plaintiff's allegations concerning their civil and criminal violations of clearly established statutory and Constitutional law, which a reasonable person would have known.  *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1983); see also, e.g., Thomas v. Roberts, 261 F. 3d 1160, 1170 (11th Cir. 2001).*

d.     The Defendants are not entitled to immunity protections based upon well-settled Alabama case law (which includes *Lightfoot v. Floyd, 667 So. 2d 56, 107 Ed. Law Rep. 378 (Ala. 1995)* a case wherein Plaintiff represented the appellant and obtained a reversal and remand; and wherein the Alabama Supreme Court reaffirmed its ruling dating back to 1930 in *Finell v. Pitts, 222Ala. 290, 293, 132 So. 2, 4, (1930)* to wit:  "An individual cannot justify a tort on a contention that it is for the state, if the state had no such right.  If the state had the right, then its officers, acting by its authority, were justified."   The state did not have the right to commit the acts complained of herein.

e.     The Defendants are not entitled to immunity protections because they acted outside of their traditional and statutory roles by abdicating their traditional

and statutory roles to other Defendants;  by serving as complaining witnesses; by

fabricating evidence; by making false sworn and unsworn statements; and by

committing other criminal and otherwise illegal acts, as alleged.


### F.   STATEMENT OF DAMAGES COMMON TO ALL CLAIMS

197.   Plaintiff hereby realleges, adopts and incorporates herein by reference

all of her general averments, all previous averments in paragraphs 1-196, as if fully

stated herein, and all subsequent averments, and further states:

198.   Plaintiff further asserts that the Defendants' aforesaid joint and several

actions have caused her to suffer grievous damages, to include:  the loss of her

professional career, the loss of her clients and their cases; the loss of access to the

State & Federal EFILE Systems; loss of income; the loss of the potential to earn

income; the loss of her law office and other properties; other financial losses and

threatened financial losses; and she has suffered egregious stress, humiliation,

mental anguish and emotional distress; loss of reputation; loss of enjoyment of life.

199.   Plaintiff further asserts that as compensation for the damages she

sustained as the result of Defendants' joint and several illegal acts against her, and

pursuant to 42 U.S.C. § 1988, she is entitled to recover compensatory, consequential

and punitive damages, plus attorney's fees and costs from said Defendants, and from

any other persons or entities subsequently determined to be culpable for Plaintiff's injuries and damages.

200.   Plaintiff further asserts that she is entitled to the Declarative Judgment relief requested hereinbelow:

A.   Retroactive reinstatement of her Bar Licenses in all Courts;

B.   Restoration of all of her Bar License privileges, to include access to her clients and their cases; the Courts, the State and Federal EFILE Systems, etc.;

C.   An Order voiding *ab initio* the Criminal Contempt Order and Alabama Court of Criminal Appeals Affirmation thereof, and which purges her file thereof;

D.   An Order requiring Defendants to pay all costs and attorneys fees for Court, Bar and Appellate Proceedings, and to reimburse Plaintiff for any costs and attorney's fees incurred by her, and/or paid for by her;

E.   An Order requiring Defendants to post and pay for notices of their illegal actions against Plaintiff, and the Court's corrective actions, in the media on their Website, in their publications, to her former clients, to Federal & State Courts, Clerks, Lawyers, Judges, and otherwise as deemed appropriate;

F.   An Order granting Injunctive relief, which restrains and enjoins the Defendants from continued, further and additional acts of retaliation against her, and from their continued, further and additional deprivations of her civil rights, and

violations of Federal and state laws;

G.     An Order removing all culpable  parties from their positions of "TRUST" with the State;

H.     An Order initiating criminal prosecution of any Defendants whose complained  of actions establish probable cause for criminal prosecution;

I.     An Order initiating judicial and/or Bar prosecutions against any Defendants found guilty of violating:  Judicial Canons, Alabama State Bar Rules, Federal and/or State statutory or case law; Plaintiff's Constitutional rights; and/or Alabama State Supreme Court or Alabama State Bar rules, policies, procedures.

J.     An Order which provides her former clients, who were unlawfully deprived of her representation, and who continue to need and to desire her representation, the following relief:   An Order reinstating Plaintiff as counsel of record, retroactive to the date of unlawful deprivation thereof; an Order which **stays and/or reverses** any state or Federal adverse rulings, upon a showing that said clients were prejudiced by the lack of her representation; an Order requiring the Defendants to pay costs and attorney's fees incurred by the aforesaid clients as the result of their unlawful deprivation of her representation.

K.     An Order granting such other and different relief deemed just and proper under the circumstances.

# VI.   STATEMENT OF FEDERAL CLAIMS
## for DEPRIVATION OF CIVIL RIGHTS and for
## DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW
### in violation of :
### 42 U.S.C. § 1343, 42 U.S.C. § 1981, 42 U.S.C. § 1983,
### 42 U.S.C. § 1985,  42 U.S.C. § 1986, 42 U.S.C. § 1988,
### 18 U.S.C. § 241, 18 U.S.C. § 242, 1 8 U.S.C. § 245,
### and 18 U.S.C. § 1001

201.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-200, and all subsequent averments, as if fully stated herein, and further states:

202.   Plaintiff hereby avers that Defendants' complained of actions, jointly and severally, deprived her of rights and privileges secured by the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as more fully stated hereinbelow:

# A.  FEDERAL CIVIL CLAIMS

## COUNT 1
## DEPRIVATION OF FREEDOM OF SPEECH
### in violation of the First Amendment to the Constitution of the United States

203.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-202, and all subsequent averments, as if fully stated herein, and further states:

204.   The record shows that Lusk, Jones, the Hearing panel members and ASB used Plaintiff's purported statements during a TV interview, which occurred after the trial, as aggravating circumstances to support their finding that she should be disbarred, albeit:  said VHS Tape was never admitted into evidence; there is no finding that any statement she purportedly made violated any law; her statement was based upon, and paraphrased  the documented and published results of an ASB commissioned survey of minority attorneys; and although the facts show that the Hearing Panel ruled at R 167 that she was not charged with an offense related to the VHS Tape, and therefore given no notice of any offense concerning the VHS Tape; Ward denied Lusk's attempt to admit the VHS Tape into evidence; and the 8.2 Formal Charge concerning the TV VHS Tape was dismissed 5 years prior to the Hearing.

205.   The record further shows that Plaintiff's motions, objections and legal arguments in support of her objections and motions made in the ordinary course of trying a criminal case, were considered and used by the Hearing Panel, and by ASB in its findings and rulings against her, although in making said objections, motions and arguments, she was fulfilling her legal obligations:   to protect and preserve her criminal defendant client's Constitutional rights to due process, equal protection and a fair and impartial trial; to preserve adverse rulings for appellate review;  to

competently and zealously represent her client; and to comply with the heightened standard of representation for criminal defendants mandated by the Alabama State Bar's Rules.

206.   Further, while the phrases "Demand for discoverable evidence" and "argument for or against motions/rulings" are legal jargon and accepted and published captions to motions, Lusk, Jones, the Hearing Panel and ASB considered and ruled that Plaintiff's use thereof was confrontational, disrespectful and arguing with the Judge.

207.   Plaintiff hereby asserts that her in-court statement, which was solicited and approved by Judge Woodrof, her statements during a TV interview, her use of published and routinely used captions of pleadings, and her oral objections and argument constitute legal and protective speech.

208.   Plaintiff further asserts that the record does not reflect any specific Bar Rule, nor state or statutory law, asserted by Jones, Woodrof, Lusk, the Hearing Panel, ASB, Wilson, the Alabama Supreme Court Justices, nor the Alabama Supreme Court, which supports the use of her TV interview to show aggravating circumstances to support a disbarment

209.   The record further reflects that the only charge against Plaintiff, which is remotely related to attorneys making statements about judges is：Charge

V, Violation of Rule 8.2, Judicial and legal officials, which prohibits attorneys from making statements known to be false concerning the qualifications and/or integrity of a judge, was <u>dismissed</u> by ASB pursuant to Lusk's motion for dismissal in

**2003**; and said dismissal is acknowledged by the Alabama Supreme Court in its

March 6, 2006 Remand Order, Footnote 3, p. 5 at **EXHIBIT 13**.

210.   Plaintiff further asserts that, in committing the aforesaid acts, the Defendants violated her Constitutional right to freedom of speech, as guaranteed by the First Amendment to the United States Constitution, and by the Constitution of Alabama of 1901.

211.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages complained of herein.

212.   Plaintiff further asserts that the Defendants' joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

# COUNT 2
# DEPRIVATION OF FREEDOM OF ASSOCIATION
*in violation of the First Amendment to the Constitution of the United States*
### and
# COUNT 3
# DEPRIVATION OF RIGHT TO SEEK LEGAL REDRESS
*in violation of the First Amendment to the Constitution of the United States*

213.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-212, and all subsequent averments, as if fully stated herein, and further states:

214.   During the *ex parte* Hearing, Lusk presented testimony by Jones that Plaintiff was  associated with the NAACP; and he claimed for the first time that she had NAACP  protesters present in the Court, and was attempting to incite them to riot.  As argued herein, Jones aforesaid claim is false and constitutes perjury. Moreover, even the tainted record, to include Jones Complaint, the Formal Charges, the transcript and the Contempt Order, make no reference to such conduct.

215.   Also, during the *ex parte* Hearing, Lusk presented false hearsay testimony by Jones that he had learned from another Attorney after the 2000 trial that Plaintiff had threatened to file a complaint against him and the Judge with the NAACP and with the Justice Department; and the Hearing Panel considered and used said false and otherwise illegal testimony in its findings and rulings against her.

216.   Plaintiff hereby asserts that  she has the Constitutionally protected right to associate with members of the NAACP, a long-standing, well-respected and honored civil rights organization.

217.   Plaintiff further asserts that she has the Constitutional right to pursue any act of injustice, to include civil rights violations, against herself or her client with the NAACP, or any other non-subversive organization.

218.   Plaintiff further asserts that the Defendants violated her Constitutional rights to freedom of association and to seek legal redress with the United States Department of Justice.

219.   Plaintiff further asserts  that the Defendants' aforesaid illegal conduct constitutes an unlawful deprivation of her Constitutional rights to Freedom of Association and to petition the government for redress of a grievance, as guaranteed by the First Amendment to the United States Constitution, and the Alabama Constitution of 1901, as amended.

220.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

221.   Plaintiff further asserts that the Defendants' joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

## COUNT 4
## DEPRIVATION/RETALIATION FOR FREEDOM OF PRESS
### *in violation of the First Amendment to the Constitution of the United States*

222.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-221, and all subsequent averments, as if fully stated herein,  and further states:

223.   Plaintiff asserts that Lusk presented Jones' false and perjured testimony that Plaintiff was responsible for the presence of eight (8) newspapers; and Lusk, the Hearing Panel members, and ASB considered and used the aforesaid allegation, in the absence of any evidentiary foundation therefor, in its decisions and rulings against Plaintiff.

224.   Plaintiff further asserts, that in committing the aforesaid acts, the Defendants violated the  Constitutional right to freedom of the press, as guaranteed by the First Amendment to the United States Constitution, and by the Constitution of Alabama of 1901, and retaliated against Plaintiff for the Press exercising its Constitutional right to report on the court matters.

225.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

226.   Plaintiff further asserts that the Defendants' joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

## COUNT 5
## DOUBLE JEOPARDY
### *in violation of the Fifth Amendment to the Constitution of the United States*

227.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-226, and all subsequent averments, as if fully stated herein, and further states:

228.   Although the 4.4 and 8.2 charges were previously dismissed by ASB, Lusk and the Hearing Panel in 2003, ASB, Lusk and the Hearing Panel considered the aforesaid dismissed charges against Plaintiff in its November 18, 2009 Hearing and Rulings, and knowingly and intentionally convicted her of one of the aforesaid previously dismissed charges, to wit: 8.2.

229.   Lusk, ASB and the Hearing Panel knew that the 8.2 charge against

Plaintiff had been dismissed.  In fact, Lusk made the motion to dismiss, and the

Hearing Panel granted it.  Moreover, the fact that the TV VHS Tape concerned the

aforesaid dismissed 8.2 charge was discussed during the *ex parte* Hearing, to wit:

> **THE HEARING OFFICER:   Let me ask you this:**
> **Which of your factual allegations which is what we**
> **have to - - that we're here on pertains to the video**
> **of her in her jail outfit?**
>
> **MR. LUSK:  There's an allegation of a violation of 8.2.**
> **There's probably not any specific factual allegation but**
> **just an allegation that she violated that.  And I believe - -**
> **I apologize.  I believe that's Count V.  C 276-277**

230.   Accordingly, Defendants' use of the TV VHS Tape as aggravating

circumstances while knowing that any allegations regarding said tape were imbedded

in the 8.2 Count V charge, which had previously been dismissed, constitutes a

flagrant violation of Plaintiff's Constitutional protection against double jeopardy,

and a wanton, reckless and malicious disregard for Plaintiff's Constitutional

protection against double jeopardy and egregious prejudice to Plaintiff in that a

previously **DISMISSED CHARGE** was used to purportedly disbar her.

231.   Additionally, in its 2006 Remand Order, the Alabama Supreme

Court ruled that the contempt order could not be re-litigated, and  reversed and

remanded ASB's prior conviction of Plaintiff solely because of the Contempt Order.

**EXHIBIT 13**

232.   Nonetheless, ASB re-litigated the Contempt Order as evident in

the following:  The Contempt Order was admitted during the Hearing as ASB's

Exhibit 3, C 136; and the Hearing Panel's Report and Order is based upon the

Contempt Order. C 93-97  In fact, the Hearing Panel's consideration of the Contempt

Order is readily apparent in its Report and Order, to wit: "After a full hearing of the

testimony ore tenus and receipt and consideration of exhibits [which includes the

Contempt Order at C 136 and testimony thereon] the panel unanimously finds the

following charges have been proved by clear and convincing evidence ...." C –97

233.   Said re-litigation is also apparent in the fact that the contempt charged

is incorporated in all of the charges, and therefore inextricably intertwined in each

charge; and in the fact that after Remand, the Complaint against Caffey was never

amended.  Paras. 11, C 26; paras 1, C 27, C 28-31

234.   Moreover, ASB published various notices of Plaintiff's Disbarment,

to include notices in the Huntsville Times Newspaper and its monthly magazine, The

Alabama Lawyer; and said notices identified the 2000 Contempt finding as the sole

ground for Plaintiff's purported disbarment on August 21, 2009.  **EXHIBIT 32**

235.   Lusk, the Hearing Panel and ASB's aforesaid actions violate

Plaintiff's Constitutionally protected right against double jeopardy, as guaranteed by

the Fifth Amendment to the United States Constitution, and by the Alabama Constitution of 1901.

236.   The Defendants' aforesaid actions also violate  the 2006 Alabama Supreme Court Order, and  the well-settled doctrines of *res judicata*, collateral estoppel, the law of the case and issue preclusion.

237.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.  The record further shows that the Alabama Supreme Court acknowledged the dismissal of the aforesaid 8.2 charge in Footnote 3, p. 5 of its 2006 Order at C 6 and **EXHIBIT** 13.

238.   Plaintiff further asserts that the Defendants' joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

# COUNT 6
# DENIAL OF DUE PROCESS
### *in violation of the Fifth & Fourteenth Amendments to the U.S. Constitution*

## 1.  Suppression of Records and Evidence

239.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-238, and all subsequent averments, as if fully stated herein, and further states:

240.   The record clearly shows that **Judge Woodrof** suppressed the following critical evidence from Plaintiff and the appellate courts and ASB:  the Court record, which included his illegal rulings that necessitated Plaintiff's complained of motions, objections and argument:  three (3) unsigned purported indictments on which her client was being illegally tried by Judge Woodrof; traffic citations on her client and a different person, which the police officers claimed to be her client, and further claimed to constitute probable cause for their second stop and arrest, while the first stop was still ongoing; the forensics report which stated that the cocaine received by its department was dark brown, versus white or off-white, as testified to by two arresting police officers; her Demand for Discovery, which the Judge claimed she had not filed to support his  refusal to let her see the Rule 16 discoverable evidence she had requested therein, to include the forensic report, which the forensic expert was using on the witness stand during his testimony, and

which Jones claimed, and Judge Woodrof ruled that Plaintiff could not see because the State had a proprietary interest therein.

241. **Lusk and ASB suppressed** the following critical evidence  from Plaintiff prior to and during the *ex parte* Hearing:  the TV VHS Tape used to disbar her; other TV and newspaper interviews of Plaintiff; the audio tapes of the trial, and the Affidavits of Zeletta Wright, Plaintiff, and Rev. Doris Baker, which would have shown that Plaintiff was not screaming nor yelling at witnesses or the Judge, nor inciting protesters to riot, and that she was competently and zealously representing her client as required by law, and as found by the Investigator; the Huntsville-Madison County Investigative Report finding that Plaintiff was not guilty of  Jones complained of conduct, that Jones was just angry because he was not winning the trial; that the Bar Complaint against Plaintiff was being treated differently, and Plaintiff was being denied equal protection, that the investigation had uncovered the fact that Lusk and Jones are friends which created a conflict of interest for ASB, and that Jones' Complaint against Plaintiff should be dismissed.

242. **Lusk and ASB suppressed** the following critical evidence: from the Hearing Panel:   Jones Bar Complaint against Plaintiff underlying the Formal Charges the Hearing Panel was deciding; the Huntsville-Madison County Investigative Report; the audio tapes of the trial; the record evidence from the trial as

stated in para. 240 hereinabove; and six (6) years of the ASB record from April of 2000 to March of 2006 (which included the information stated in para. 241 hereinabove), with the exception of its Formal Charges and Plaintiff's Response thereto, as evident in a comparison of **EXHIBITS 14 & 15.**

243.   Additionally, **Lusk and ASB suppressed** from the Hearing Panel its prior summary judgment against Plaintiff and recommended punishment of 45 days suspension to be reduced to 7 days suspension if Plaintiff wrote an unconditional letter of apology to Judge Woodrof and took an ethics course; Plaintiff's  appeal thereof to the Disciplinary Board of Commissioners; the Disciplinary Board of Commissioners' reversal and remand of the summary judgment ruling and punishment; Lusk's appeal thereof to the Alabama Supreme Court; and Plaintiff's Cross Appeal thereto; and Plaintiff's favorable rulings from the Appellate Board of Commissioners, and from the [9]Alabama Supreme Court.

244.   Additionally at the November 2009 Hearing, **Lusk suppressed** the tainted Trial Transcript by  presenting his "Designer Evidence" to the Hearing Panel by carving out the excerpts at C iv, 801-902 from the Transcript which did not include testimony before, between, nor after said excerpts which were favorable to

---

[9]  Although the 2008 Appellate record contains a copy of the Alabama Supreme Court 2006 Remand Order, said Order is not included in the Exhibits considered by the Hearing Panel. **EXHIBIT 15**

Plaintiff.   Lusk admitted the aforesaid excerpts as EXHIBIT "2" and made an

assumption that **"the panel will consider all of the Transcript."** R 36  However,

the record at C 84 shows that the Hearing Panel only considered Lusk's excerpts, to

wit: **"The Panel had the benefit of a significant portion of the transcript of the**

**trial which was admitted as Bar Exhibit "2."**   According to the record at C iv,

Exhibit "2" consists solely of Jones' **"Excerpts from Hughes Transcript...."**  R

801-902.

245.   The tone and loudness of Plaintiff's voice were raised by Jones, Lusk

and Judge Woodrof  before the Hearing Panel.  In fact, Lusk, the witnesses and the

Hearing Panel spent a great deal of time discussing the tone and volume of her voice;

whether she was shouting and yelling at witnesses and the Judge; whether she was

rude and hostile; her demeanor, etc.

246.   However, rather than present the trial audio tapes to the Hearing

Panel, Lusk presented his unsworn testimony by using Jones and Judge Woodrof's

responses to his grossly leading questions throughout their testimony, as evident in

the examples hereinbelow:

> **LUSK:**       **How could you determine she was**
> **hostile, acrimonious?**
> **From the tone of her voice?**
> **JONES:**      **Yes.**
> **LUSK:**       **Was it from her body language?**
> **JONES:**      **Yes, sir.**       R 53

***************************

| | |
|---|---|
| **JONES:** | **There's been testimony that she was screaming and yelling in a volume that was more than reasonably[10]? necessary to be heard in your courtroom.** |
| **JUDGE WOODROF:** | **I agree with that, yes.** |
| **LUSK:** | **Also, testimony that she argued with you when you would make rulings in matters of evidence[11]?** |
| **JUDGE WOODROF:** | **Yes sir. That's correct.**   R 296 |

247.   Incredulously, Lusk also asked Jones if he could scream like Caffey; Jones replied that he could; Lusk directed him to "scream like Caffey for the Panel" and **JONES SCREAMED**..  R 66  This ludicrous "**scream testimony**" solicited by Lusk, provided by Jones, and accepted by the Hearing Panel and ASB clearly violated the Best Evidence Rule, which would have been the suppressed Trial audio tapes., but was nonetheless used by the Hearing Panel in its findings and rulings against Plaintiff.

248.   Plaintiff asserts that the missing trial tapes contain exculpatory evidence, which clearly showed that Jones' testimony was false and constituted perjury, and that Lusk suborned perjury in that he possessed the suppressed tapes.

---

[10] Although the Court Reporter used a ? mark, it is obvious that Jones' statement should have ended with a period.

[11] Although the Court Reporter used a ? mark, it is obvious that Jones' statement should have ended with a period.

249.   In fact, the Huntsville-Madison County Bar Investigator listen to a copy of the trial audio tapes provided by ASB, and specifically noted in her Report and Affidavit, which were previously filed as part of Plaintiff's Response In Opposition to Summary Judgment, that Plaintiff was <u>not</u> screaming and yelling.

250.   **Lusk suppressed** the fact from the Hearing Panel that Plaintiff had made additional contact with the Bar on the Hearing date by phoning and speaking to Cheryl Rankin and Bonnie Mainor and advising them of her medical evaluations; and **he suppressed** the fact that Plaintiff asked to speak to him and he refused to take her call.  Said acts of suppression  resulted in a erroneous finding by the Hearing Panel that: **"The Panel also finds it significant that no effort was made by Ms. Caffey to follow up or determine the status of her request of for that matter whether it was even received."  C 83**

251.   On April 30, 2009, **Bonnie Mainor**, certified the ASB Disciplinary Record on appeal as consisting of the five volumes identified in the 2008 Appellate Record Index at **Exhibit 15**, and "all of the pleadings, the decisions of the Disciplinary Board, Disciplinary Commission, and the Supreme Court of Alabama, all of the documentary exhibits introduced, and the court reporter's transcript." However, the 2008 Appellate Record  only consisted of the documents identified in the 2008 Appellate Record Index.  **EXHIBIT 15**   It did not include the TV VHS

Tape (**EXHIBIT 6**) which was used by Lusk and the Hearing Panel to recommend that Plaintiff be disbarred; and it did not include any of the documents identified in the 2004 Appellate Record (**EXHIBIT 14**), other than the Formal Charges and Plaintiff's Response thereto.  Further, it did not include the trial audio tapes, the other TV interviews referred to during the Hearing, nor Plaintiff's previously presented  evidence.  Accordingly, Mainor's Certification of the Appellate Record was false and fraudulent.

252.   Plaintiff was severely prejudiced at the November 18, 2000 *ex parte* Hearing, and in all of the Bar and court appellate proceedings by the suppressed documents and evidence, and by the altered record, as evident in the total record; and in the Transcript of the Hearing by the Hearing Panel at C 124-340.

## 2.  Denial of a Continuance of the Hearing

253.   In order to get the Hearing Panel to deny Plaintiff's request for a continuance,  Lusk falsely told the panel that her Hearing should <u>not</u> be continued because she had engaged in a pattern and practice of avoiding the Hearing by filing motions for continuance in order to avoid the Hearing.

254.   In support his aforesaid contention, Lusk presented the documents at C 39-81 (**EXHIBIT 16-C**), which, to the contrary, show that while Plaintiff obtained

only one (1) continuance, Lusk and the Hearing Panel continued and reset the Hearing ten (10) times (excluding the one re-setting caused by the granting of Plaintiff's motion.  Said record documents clearly show that ASB engaged in the pattern and practice of continuing and/or re-setting the Hearing, and that most of the Hearings were re-set by ASB  *ex parte.*

255.   Lusk's aforesaid misrepresentation of the truth, and the Hearing Panel's failure to read the documents,  proximately caused the Hearing Panel to deny Plaintiff's request for a continuance and to hold her hearing *ex parte*, thereby depriving Plaintiff of her fundamental due process rights to confront and cross-examine witnesses, and to testify and present witnesses and evidence on her behalf.

### 3.  Dismissal of Plaintiff's Appeal

256.   Plaintiff timely filed an appeal to the Alabama Supreme Court; and she timely filed her Appellant Brief by certified mail on June 15, 2009, three (3) days prior to its June 18, 2009 due date.

257.   However, on August 4, 2009,  Esdale, Clerk of the Alabama Supreme Court, entered an Order (**EXHIBIT 28**) dismissing Plaintiff's Appeal based upon "Failure to Prosecute" in violation of  Rule 2(a)(2) of Ala. Rules of App. Proc., which mandates:

> **When an appellate court, on motion of a party, or on its own motion, shall determine that a party is obviously failing to prosecute the appeal ©, or has substantially failed to comply with these rules (D), the appellate court shall cause notice to be sent to the party in default, notifying the party, in general terms, of the deficiency.  If the party in default fails to correct the deficiency prior to submission, or within such time as the appellate court shall direct, the appellate court may dismiss the appeal. The attorney for the party in default has the burden to  correct promptly any deficiency or to see that the default is corrected by the appropriate official.**

258.   Plaintiff was not sent the aforesaid statutorily mandated notice of the Alabama Supreme Court's  non-receipt of her  brief; and when she responded to the notice of dismissal of her appeal by filing a Motion for Reinstatement and her June 15, 2009 Certified Mailing Receipt, which clearly showed that she timely filed her brief on June 15, 2009, three (3)  days prior to her June 18, 2009 filing deadline, said motion was purportedly denied by the Alabama Supreme Court on August 25, 2009.

**EXHIBIT 35**

259.   Further, Plaintiff  subsequently re-mailed copies  of her brief with a  Motion to Accept the Out of Time  Filing thereof, which remands pending, although the brief in support thereof was stricken.  **EXHIBIT 35**

260.   However, the Alabama Supreme Court purportedly denied her Request for Reconsideration on  September 3, 2009 by treating it as an Application for Rehearing, and striking it from the record, although Rule 27 of the Alabama Rules of Appellate Procedure authorizes such motions.  **EXHIBIT 35**

### 4.  Denial of STAY Pending Final Disposition of Appeal

261.   Additionally, Lusk, Haney, ASB, Wilson, the Alabama Supreme Court, and its Justices, denied Plaintiff the automatic STAY of the purported Disbarment pending the final disposition of her appeals, and either implemented or ratified the immediate implementation thereof, while Plaintiff's appeal was still pending in the Alabama Supreme Court, in violation of the Alabama Rules of Disciplinary Procedure.

262.   Plaintiff further asserts that in committing the aforesaid acts, the Defendants violated Alabama statutory and case law and her Constitutional right to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution of Alabama of 1901, as amended.

263.   The record further shows that Wilson, the Alabama Supreme Court and its Justices participated in and/or acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and

Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

264.   Additionally, the Alabama Supreme Court and its Justices deprived Plaintiff of her due process rights by failing and/or refusing to enforce its own Remand Order; and by failing and/or refusing to correct Lusk, the Hearing Panel and ASB's illegal actions against her, to include the August 20, 2009 *ex parte* Suspension Order and the August 21, 2009 fraudulent disbarment order.

265.   Moreover, the Alabama Supreme Court previously deferred ruling upon Plaintiff's due process claims in its March 6, 2006 Remand Order, opting instead to remand Plaintiff's case for a Hearing on the tainted record, thereby, additionally, violating Plaintiff's Constitutional right to due process.  Accordingly, Plaintiff's due process issues are "ripe" for review by this Honorable Court.

266.   Plaintiff further asserts that the Defendants' aforesaid joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

## COUNT 7
## DENIAL OF FAIR and IMPARTIAL HEARING
### *in violation of the Sixth Amendment to the United States Constitution*

267.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-266, and all subsequent averments, as if fully stated herein, and further states that the illegal *ex parte* Hearing and suppressed/sabotaged/destroyed record evidence completely deprived Plaintiff of a fair and impartial hearing, as previously alleged.

268.   Additionally, upon information and belief, the Hearing Panel did not include a criminal defense attorney, which was severely prejudicial against Plaintiff in that knowledge of criminal proceedings is necessary in order to determine the legality of the actions complained of, and being deliberated by the Hearing Panel.

269.   For example, a criminal defense attorney would have known that Judge Woodrof's denial of Plaintiff's Motion to Dismiss the three purported indictments which were unsigned by the Grand Jury Foreperson, and contained no signatures from the court showing a return, violated Alabama Statutory law which mandates that each indictment be signed by a Grand Jury Foreperson and returned to the court; and a criminal defense attorney would have known that unsigned indictments forms means that an indictment was <u>not</u> returned against the defendant; and that Plaintiff's failure to motion the court to dismiss the unindicted charges

would have constituted a clear violation of the Bar Rules and legal malpractice.

270.   A criminal defense would have know that a dismissal of the only remaining potential African American juror due to a claim that she "rolled her eyes at him" is challengeable; and that Plaintiff had a legal duty to make such challenge on behalf of her African American client.

271.   A criminal defense attorney would have known that "Demand for Discovery" is the proper caption, and not Plaintiff just "demanding to get her way."

272.   A criminal defense attorney would have known that Defendant and his counsel had the right to see and to use the State's evidence in his case; and that the State had no proprietary interest in the State Forensics Report, which is discoverable to Defendant pursuant to *Rule 16 of the Alabama Rules of Criminal Procedure*; and he/she would have known that Jones claim that the State had such proprietary interest, and Judge Woodrof's ruling endorsing such claim, flatly violated Alabama law, and the Defendant's Constitutional right to due process, as guaranteed by the Fifth Amendment; and that accordingly, Plaintiff had a legal duty to make the objections and preserve the record for appellate review.

273.   Somewhere in the midst of the numerous illegal objections and illegal rulings on basic criminal law, and attempts to thwart the  preservation of the record, a criminal defense attorney would have realized that his/her client's Constitutional

rights to due process, to equal protection, and to a fair and impartial trial by a jury of his peers were being "trampled" in the courtroom; and that he/she had a legal duty to object to, and to preserve the record for appellate review.

274.   Lusk presented Jones' testimony to the Hearing Panel in which he complained about Plaintiff's aforesaid legal objections, and other legal objections; and called them delays; and the Hearing Panel considered said complaints and ruled against Plaintiff.  In his testimony before the Hearing Panel, Judge Woodrof told the Hearing Panel that Plaintiff did not know the law; when in fact, the record before, between, and after Lusk's excerpts plus the excerpts in their proper place, and the trial court record suppressed by Judge Woodrof, clearly show that Plaintiff's knowledge of the law and her attempts to obtain the Court's enforcement thereof, angered Jones and Judge Woodrof because they either did not know the law, or were unwilling to enforce it, opting instead to argue for, and enter rulings contrary to the law, which additionally violated her client's Constitutional rights.

275.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to ensure Plaintiff's Constitutional rights to due process, equal protection, protection against double jeopardy, the fair and impartial Hearing she had won in the Alabama

Supreme Court's March 2006 Reversal & Remand Order (**EXHIBIT 13)**, the statutory right to a review and ruling by the Alabama Supreme Court on the issues of suspension and disbarment, and the right to a stay of any proceedings pending final disposition of her appeal.

276.   Accordingly, Plaintiff hereby asserts that Defendants [12]complained of actions, and inactions, throughout this lawsuit, jointly and severally deprived Plaintiff of her Constitutional rights to a fair and impartial hearing, as guaranteed by the Sixth Amendment to the United States Constitution, and the Alabama Constitution, thereby causing, or contributing to Plaintiff's injuries and damages.

277.   Plaintiff f asserts that the Defendants joint and several actions, and/or inactions, proximately caused her to suffer the complained of injuries and  damages.

## COUNT 8
## DEPRIVATION OF PRIVILEGES and IMMUNITIES to wit:
### Property & Liberty Rights in License to Practice Law in the State of Alabama
### *in violation of the Fifth and Fourteenth Amendments to the U. S. Constitution*

278.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-277, and all subsequent averment as if fully stated herein, and further states:

---

[12]  Plaintiff has not re-stated all of her claims to avoid   repetition, as all of the facts and claims are inextricably intertwined with, and imbedded in this Count.

279.   Plaintiff further asserts that the false and perjured testimony of Jones and Woodrof; the suppression, destruction, and tampering with the record by Defendants Jones, Woodrof and Lusk; the negligent acceptance and review of an incomplete record by the Hearing Panel members; the Hearing Panel's consideration and use of the Contempt Order which the Alabama Supreme Court previously ruled could not be re-litigated; the Hearing Panel member's use of a VHS taped interview of Plaintiff, which was never admitted into evidence and which contained protective speech, and in the absence of any notice of a charge emanating therefrom; the Hearing Panel's violations of the Alabama Rules of Disciplinary Procedure, the Alabama Standards for Imposing Lawyer Discipline and the Alabama Rules of Evidence; the Hearing Panel's violations of Plaintiff's Constitutional rights; the Hearing Panel's decision to hold its *ex parte* Hearing although Plaintiff had debilitating and contagious illnesses, to wit: flu and strep throat, and pleurisy;  the Hearing Panel's decision to deny Plaintiff's Motion to Vacate which contained documented evidence of the aforesaid illnesses; the Hearing Panel's failure to review and consider the entire record in the case; the Hearing Panel's acceptance of an altered, suppressed, partially destroyed and excerpted record designed by Lusk; the Hearing Panel's consideration of charges which are not included in the formal charges against Plaintiff and charges which had previously been dismissed by them;

and the Hearing Panel's illegal actions delineated in other sections of this complaint and not specifically listed herein, to include other Constitutional Claims, proximately caused and/or contributed to their Order of Disbarment.

280.   Accordingly, the Hearing Panel's and ASB's arbitrary, capricious and illegal rulings, and the fraudulent disbarment order, and the fraudulently obtained unnoticed Suspension Order jointly and severally deprived Plaintiff of her privileges and immunities and liberty and property rights to her license to practice law in Alabama, as guaranteed by the Fifth and Fourteenth Amendment to the United States Constitution, and by the Alabama Constitution of 1901, as amended.

281.   The record further shows that Haney, Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

282.   Accordingly, Plaintiff hereby asserts that the Defendants' joint and several actions, and/or inactions, proximately caused her to suffer the injuries and damages complained of herein.

## COUNT 9
# DEPRIVATION OF EQUAL PROTECTION
*in violation of the Fourteenth Amendment to the United States Constitution*
### and
## COUNT 10
# DEPRIVATION OF EQUAL RIGHTS UNDER THE LAW
*in violation of 42 U.S.C. § 1983*
### and
## COUNT 11
# INTERSECTIONALITY
*in violation of the Fourteenth Amendment to the United States Constitution,*
*42 U.S.C. § 1981 and 42 U.S.C. § 1983*

283.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-282,  as if fully stated herein, and further states:

284.   Upon information and belief, the Alabama State Bar has engaged in a pattern and practice of discriminating against minority and female attorneys, and against sole practitioners in the complaint process, in disciplinary actions, in client referrals, and in award recognitions; and further evidence of ASB's disparate treatment of minority and female attorneys and sole practitioners is stated hereinbelow, and will be provided upon the completion of discovery.

285.   Plaintiff, who is a <u>minority, female and sole practitioner</u>, is known to be an avid and outspoken civil rights advocate inside and outside the courtroom.

286.   The Defendant Hearing Panel consisted of one minority, Robert L. Davis, the one [13]layperson on the Hearing Panel.

287.   Additionally, the female attorney initially assigned to the Hearing Panel has never participated, nor been included in any proceeding; and she previously advised Plaintiff that she had not been informed of previous proceedings.

288.   Plaintiff was prosecuted by the Bar because of her race, and because of the racial stance she took when she made a statement to the media which acknowledged that some white judges discriminate against minority/African American Attorneys, as evident in the fact that "racial issues" have been raised by ASB throughout its proceedings, as evident hereinbelow:

289.   In 2000, the Chair of the Huntsville-Madison County Bar Grievance Committee told Plaintiff that the Bar's main concern was whether she had called Judge Woodrof a racist.

290.   During the 2003 sentencing Hearing on the summary judgment ruling (which was subsequently overturned by the Alabama Supreme Court),  Lusk asked Plaintiff if she had called Judge Woodrof a racist.

---

[13]   The non-attorney layperson is not legally trained, and therefore lacks the legal knowledge to provide objective input on technical issues concerning disciplinary rules, code of conduct, and the technical legal issues and questions presented to the Hearing Panel.  In fact, he slept through much of the previous Hearing.

291.   In 2004, during the Hearing on Plaintiff's Appeal to the Board of Appeal, one of the Commissioners asked Lusk if Plaintiff were the only attorney to be prosecuted by the Bar because of a contempt proceeding.  Lusk replied that she was.

292.   The Bar Commissioners thereafter reversed ASB's summary judgment against Plaintiff and remanded her case for a Hearing on the merits.

293.   During the sentencing phase of ASB's November 18, 2008 *ex parte* Hearing, Lusk stated that Plaintiff had no prior disciplinary history with the Bar, and asked to use the VHS Taped TV interview of Plaintiff as aggravating grounds to support an order of disbarment because according to him, <u>Plaintiff showed no remorse in that she stated during the interview that</u> **"there was an intolerance by white judges to show respect to black attorneys."  EXHIBIT 17**   However, Plaintiff's  aforesaid purported statement merely paraphrased ASB's commissioned survey results on minority attorneys at **EXHIBIT 20**

294.   Further, ASB had previously and officially recognized and documented the veracity of said statement in its commissioned survey of minority attorneys, the results of which were published in the November 1999 edition of ASB's monthly magazine, *The Alabama Lawyer*.  **EXHIBIT 20**

295.   In fact, according to ASB's survey, **58 % of the minority attorneys have experience condescending treatment by white judges and attorneys ....and "26% of minority attorneys have experienced verbal abuse or harassment" from white judges and attorneys**.   **EXHIBIT 20**

296.   Ward granted Lusk's request; and the Hearing Panel used Plaintiff's aforesaid  purported statement to support its Order and Recommendation of disbarment,  albeit, said VHS Tape was never admitted into evidence; there is no finding that any statement she purportedly made violated any law; her statement was based upon, and paraphrased  the documented and published results of an ASB commissioned survey of minority attorneys;  although the facts show, and the Hearing Panel previously ruled at R 167 that she was not charged with an offense related to the VHS, Tape and therefore given no notice of any offense concerning the VHS Tape; and although the record shows that the 8.2 charge, which involved the VHS Tape had been dismissed five (5) years earlier.

297.   Lusk, ASB and the Hearing Panel considered and used Jones' hearsay  and false and perjured testimony that Plaintiff had filed complaints with the NAACP and the Justice Department against him  in their prosecution of Plaintiff, and in their rulings against Plaintiff.

298.   Lusk, ASB and the Hearing Panel considered and used Jones' testimony finding fault with Plaintiff because she made a "_Batson_" objection to him striking a potential African American female juror (who incidentally was a Warrant Magistrate) because, according to Jones,  she "rolled her eyes" at him in their prosecution of Plaintiff, and in their rulings against her.

299.   Lusk solicited, and Jones gave false and perjured testimony that Plaintiff had accused him and  Judge WOODROF of "racially conspiring to get [her] client" and that she had filed complaints against Judge WOODROF with the [14]NAACP, wherein she accused him of misconduct; and Lusk,  ASB, and the Hearing Panel considered and used said testimony in their prosecution of Plaintiff, and in their rulings against her.

300.   Lusk solicited, and Jones gave false and perjured testimony that **"In another county  [Plaintiff] stood out in front of the courthouse screaming racism."  EXHIBIT 24**

301.   Also, during his testimony, Jones complained that Plaintiff  had discussed with him that her client was the victim of a "Driving While Black" incident; and the Hearing Panel considered and used said testimony in its rulings against her; although the Trial Transcript showed the following:  Plaintiff objected to

---

[14]  Plaintiff has not filed a complaint against Jones, nor Judge Woodrof with the NAACP.

the actions by the two white officers, who performed what was tantamount to a "second stop" of her African American client which occurred during the first stop by a white police officer as he was in the process of issuing citations to him on minor traffic offenses; the two subsequent police officers claimed that they saw her client hide crack cocaine in the console  between the two front seats, however, the vehicle being driven by him had only one high long bench seat, and the first officer had already searched it and testified that he did not see, nor smell drugs, and that as soon as the defendant  signed the traffic citations, he was going to let him go; the two officers charged her client with the felony offense of possession of a controlled substance and arrested him; the cocaine allegedly possessed by him magically changed from white and/or off-white (according to the arresting officers) to dark brown (according to the Alabama Department of Forensics Report) during the trial; her client had not been indicted on the alleged possession charge, but Judge Woodrof refused to dismiss it; and Judge Woodrof would not let her use the Forensics Report, nor the brown cocaine, to impeach the credibility of the two arresting police officers.

302.   Further, Jones, Judge Woodrof, Lusk, ASB and the Hearing Panel's bias against Plaintiff is readily discernible from the fact that they classified her objections as "delays" and they used her references to Demand for Discovery and Argument as evidence that she was being rude, hostile, argumentative, and

contentious, when in fact, an objection is designed to be a delay wherein the trial Judge considers and rules upon it, thereby preserving the record for appellate review; and a <u>Request</u> for Discovery in a civil case is properly captioned a <u>Demand</u> for Discovery in a criminal case; and argument is the proper term for the statements made by an attorney in support of a motion or an objection..

303.   Further, the Trial Transcript shows that Judge Woodrof rebuked Plaintiff's legal objections and arguments with condescending and harassing claims that she was "**<u>fussing</u>**" and "**picking at the evidence"** while he solicited argument and/or made argument for Jones; and ASB and the Hearing Panel used Plaintiff's legal objections and arguments in support thereof in the prosecution of Plaintiff, and as grounds for the rulings against her.

304.   Moreover, the Defendants knowingly, intentionally, wantonly and maliciously prosecuted Plaintiff because of her outspoken stance against racial discrimination, as evident in the fact that although the record clearly shows that the Defendants recommended, and fraudulently effected her disbarment because of her purported statement on the TV VHS Tape concerning some white judges being intolerant of Black Attorneys, said Defendants chose to violate the Alabama Supreme Court March 2006 Reversal and Remand Order and use the Contempt Order as a "smoke screen" to hide their recorded ground for her purported

disbarment from the media, rather than publicize their discriminatory animus and disparate treatment against Plaintiff.

305.   Plaintiff previously pursued an appeal of a summary judgment which was supported  by ASB's finding of <u>no misconduct</u> by a white male attorney, who left a message on his African American female client's home telephone that was first heard by her minor daughter, which stated:  **"<u>Fucking Nigger, can't  trust a damn one of them.</u>"**  While this attorney has been elevated to the position of a Circuit Judge, Plaintiff has been purportedly, and effectively disbarred.  Further, the Alabama Supreme Court affirmed the trial court decision, and initiated no disciplinary action against him.  *Pearsall and Pearsall v. Self & Self Law Offices and Gilbert Self,* 852 So. 2d 205 (Ala. 2002)

306.   During the same timeframe in which Plaintiff was being prosecuted by the Bar, a white female attorney, was found guilty of <u>wilful</u> contempt of court by the trial court, and by the Alabama Supreme Court, which ruled that the evidence was sufficient to establish beyond a reasonable doubt that Attorney  Crittenden was given a specific order; that she violated that order; and that her violation of the order was wilful;  however, said Attorney was not prosecuted by the Alabama State Bar, nor by the Alabama Supreme Court.  *Ex parte R. A. Ferguson,* 819 So. 2d 626 (Ala. 2001)

307.   To the contrary, there exists no finding that Plaintiff was given a specific order which she violated, and there exists no evidence, nor finding that her conduct was wilful; yet ASB prosecuted and persecuted her for ten (10) years, and purportedly, and effectively disbarred her because of Judge Woodrof's Contempt Order, which was reversed by the Alabama Supreme Court in its 2006 Order.

308.   Further, recent white male attorney candidates for Alabama Supreme Court Justice positions, who made disparaging campaign statements to the media concerning the integrity, laziness and qualifications of their opponents, currently seated Alabama Supreme Court Justices, upon information and belief, have not been prosecuted, nor disbarred by ASB, although Plaintiff was charged with, and convicted of the 8.2 offense years after it had been dismissed .

309.   Rule 8.2 of the Rules of Professional Conduct states, in pertinent part:

> **(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.**

### 3. Intersectionality

310.   Caffey, further asserts that intersectionality played a critical role in the Hearing Panel's findings and rulings against her.

311.   Intersectionality, is the confluence of race and gender that results in a
type of bias that is more than race or sex bias alone, and more than race plus sex.
Moreover, intersectionality is a compound bias with geometrically damaging results
for women of color who are attorneys.  In fact, the American Bar Association and the
ABA Multicultural Women Attorneys Network have defined and acknowledged
intersectionality.

312.   Such intersectionality is readily apparent in the facts and claims
stated herein, and in the record, to wit:

313.   The Trial Transcript and the Hearing Panel Transcript throughout
clearly show that Judge Woodrof (a white male) made clearly erroneous rulings on
Plaintiff's objections; that he rejected her legal arguments and assigned some
unlawful purpose thereto; and that he assigned sinister motives to her, after testifying
that he did not know her motives, or that she was acting out of emotions, while
entertaining and favorably ruling upon Jones'(a white male) illegal motions and
indeed, arguing for him; and he maligned her character and her competence.  R 181,
185, 190-192, although her objections and arguments were based upon the law, and
Jones' objections and arguments, and his rulings thereon were illegal.

314.   The Hearing Panel, which consisted of white male attorneys and one
African American male layperson readily embraced and adopted Jones' and Judge

Woodrof's erroneous and biased interpretations of Plaintiff's actions, speech and demeanor, even though such adoption faulted her for Jones numerous delays and illegal objections and arguments, and for her vigorous pursuit of justice for her client against the overwhelming odds of a prosecutor, who clearly did not know the law; and a trial judge, who either did not know the law, or was unwilling to enforce it.

315.   The aforesaid biased behavior is consistent with the "condescending treatment and verbal abuse by non-minority attorneys and judges" experienced by 58% of the minority attorneys, as documented in ASB's Survey of Alabama's Minority Attorneys, in which Plaintiff was a participant. **EXHIBIT 20**

316.   There exists no policy, nor  procedure, which  protects minority  attorneys, nor their clients, from disparate and otherwise illegal treatment in the courtroom, by the Alabama State Bar; or by the appellate courts.

317.   Moreover, there exists no CLE to teach minority attorneys how to handle such disparate treatment by their colleagues and judges, emotionless and in silence; and in fact, as this case aptly demonstrates, according to ASB,  **JUST RAISING THE ISSUE OF A JUDGE'S DISPARATE TREATMENT CONSTITUTES AN UNWRITTEN DISBARMENT OFFENSE**.

318.   Plaintiff further asserts that, in committing the aforesaid acts, Jones, Lusk, the Hearing Panel and ASB violated her Constitutional rights to equal

protection, and to equal rights, as guaranteed by the Fourteenth Amendment to the United States Constitution, and by the Constitution of Alabama of 1901.

319.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified the violation of Plaintiff's Constitutional right to equal protection and equal rights under the law by failing to perform their statutory duty to review/rule upon ASB's disbarment action, and to enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

320.   Plaintiff further asserts that Defendants' joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

## COUNT 12
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### in violation of 42 U.S.C. § 1985

321.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-320, and all subsequent averments, as if fully stated herein, and further states:

322**.**   Plaintiff avers that [15]ASB agents and/or employees conspired, federated, and agreed with agents and/or employees of the Alabama Supreme Court, and possibly others, in order to make, issue and effect the fraudulent August 21, 2009 Alabama Supreme Court Order, which contains the forged stamped signatures of the Alabama Supreme Court Justices, and which purports to disbar her and to strike her name from the attorney rolls of said court at **EXHIBIT 30**, and possibly other purported Alabama Supreme Court Orders in her case.

323.   Plaintiff further asserts that the purpose of said conspiracy was to deprive her of her equal protection of the laws, and/or to deprive her of equal privileges and immunities of the laws, which included her property and liberty rights in her Alabama license to practice law, as guaranteed by the Fourteenth Amendment to the United States Constitution, and the Alabama Constitution of 1901.

324.   Plaintiff further avers that said conspiracy was motivated by a racial discriminatory animus against her, because she is an African American, and therefore, a member of a protected class; and because she is an African American Attorney, who is known to be an outspoken civil rights advocate, as evident in her averments hereinabove; and in fact, said motivation is readily discernible in the

---

[15] Plaintiff will name the co-conspirators after discovery documents the identifications thereof.

racial issues raised by Jones, Lusk, and other ASB employees/agents in the

processing of the Bar Complaint against her.  Said motivation is also apparent in the

fact that Jones' chosen weapon against her was allegations premised on race issues.

325.   Plaintiff further avers that said conspiracy accommodated the creation

of the fraudulent August 21, 2009 document, which purports to be an Order from the

Alabama Supreme Court disbarring Plaintiff, and the publication thereof in _The

Huntsville Times_, , _The Alabama Lawyer_; and otherwise, with notices sent to:  her,

state and Federal courts, judges, attorneys, her clients, and to the general public,

thereby causing all of the foregoing, including Plaintiff, to believe that she had been

disbarred by the Alabama Supreme Court.  **EXHIBITS 30 & 32**

326.   Plaintiff further avers that the aforesaid actions by ASB and the

Alabama Supreme Court agents and/or employees, who are alleged herein to be "co-

conspirators" deprived her of her Constitutionally protected right to equal protection,

as guaranteed by the Fourteenth Amendment; deprived  her of her Constitutionally

protected property and liberty rights to her professional Bar License;  and deprived

her of her Constitutional rights to due process, and a fair and impartial hearing, as

guaranteed by the Fourteenth, Fifth, and Sixth Amendments to the United States

Constitution.

327.   Plaintiff further avers that the aforesaid co-conspirators acted

knowingly, intentionally, wilfully and purposefully to deprive her of her

Constitutional rights to equal protection, due process, a fair and impartial hearing;

and to deprive her of her property and liberty rights to her professional Bar Licence.

328.   Plaintiff further avers that although the Alabama Supreme Court has

not entered an Oder disbarring her, that Wilson, the Alabama Supreme Court and its

Justices have acquiesced in, and/or ratified Defendants' aforesaid illegal and

criminal conduct by neglecting to issue a corrective Order, thereby causing and/or

contributing to her injuries and damages.

329.   Accordingly, Plaintiff hereby asserts that the Defendants' joint and

several actions, and/or inactions, proximately caused her to suffer the injuries and

damages complained of herein.


## COUNT 13
## ACTION FOR NEGLECT TO PREVENT CONSPIRACY
### *in violation of 42 U.S.C. § 1986*
### and
## COUNT 14
## COMPLAINT FOR DECLARATORY JUDGMENT

330.   Plaintiff hereby realleges, adopts and incorporates herein by reference

all of her general averments, all previous averments in paragraphs 1-329, and all

subsequent averments, as if fully stated herein, and further states:

331.   Plaintiff hereby avers that the Alabama Supreme Court and its Justices have knowledge of the fraudulent Order bearing their forged signatures and the notices purporting to disbar Plaintiff; that said court and its Justices have the power to prevent the continued fraudulent representation by said document and by ASB that Plaintiff has been disbarred by the Alabama Supreme Court; and that said court has the authority to correct this manifest injustice and to rescind all Orders and notices, and restraining orders and other adverse actions which falsely communicate that Plaintiff has been disbarred, and which prevent her from practicing law.

332.   Plaintiff further avers that Wilson, the Alabama Supreme Court, and its Justices have neglected and/or knowingly, intentionally and wantonly refused to take any corrective action whatsoever, although requested to do so; and that they have justified their inaction by telling Plaintiff that they have closed her file. However, as of this date, no final judgment has ever been entered by the Alabama Supreme Court in Plaintiff's case, as evident in its certified Docket Sheet, and the more recent Docket Sheet at **EXHIBITS 35** and **40,** respectively.

333.   Plaintiff further avers that such inaction constitutes an adoption and promulgation of the fraudulent disbarment order by the Alabama Supreme Court and its Justices.

334.   Plaintiff further avers that such inaction caused and perpetuated the continued deprivation of her Constitutional rights to freedom of speech, freedom of association, freedom of the press, freedom to seek legal redress, due process, equal protection,, a fair and a fair and impartial hearing, and against double jeopardy and the unlawful deprivation of her privileges and immunities and property and liberty rights in her professional license to practice law, as guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and the Alabama Constitution of 1901, as amended.

335.   Plaintiff further avers that the Alabama Supreme Court's neglect to correct the purported disbarment order has additionally deprived her of any realistic opportunities for employment commensurate with her education, knowledge and skills, nor any employment in the Huntsville, Alabama metropolitan statistical area wherein she resides, nor this State; thereby proximately causing her to continue to suffer catastrophic financial losses, and egregious stress, humiliation, mental anguish, and emotional distress.

336.   Plaintiff further asserts that he Alabama Supreme Court's neglect to prevent and to stop the aforesaid conspiracy is manifestly unjust, and severely prejudicial to her, in that she can be charged with a criminal offense for practicing law without a license if she reopens her law practice without its corrective action.

Further, none of the courts will permit her to appear therein as an attorney without such corrective Order.

337.   Plaintiff further asserts that the Alabama Supreme Court's acquiescence in a fraudulent document containing the forged signatures of its Justices, under any circumstances, is patently unfair and manifestly unjust to anyone who is the recipient of any injustice as the result of such acquiescence and lack of corrective action.

338.   Plaintiff further asserts that the Alabama Supreme Court's non-corrective  position violates the *Alabama Rules of Disciplinary Procedure*, which clearly show that the Alabama Supreme Court has a legal obligation to review, to rule upon, and to effectuate any disbarment order, to wit:

The *Preamble to the Alabama Rules of Disciplinary Procedure* which states:

**"The Supreme Court of Alabama has inherent responsibility to supervise the conduct of lawyers who are its officers...."**

*Rule 1(a)(1) of the Alabama Rules of Disciplinary Procedure*, which states:

**"Lawyers admitted to practice law in this state .... are subject to the exclusive disciplinary jurisdiction of the disciplinary commission and the disciplinary board of the Alabama state bar, <u>with review by the Supreme Court of Alabama.</u>"  (**emphasis added)

*Rules 12(f)(1) and (6) of the Alabama Rules of Disciplinary Procedure*, which

state:

> **12(f)(1) The parties have a right to appeal an adverse decision of the Disciplinary Board .... to the Supreme Court of Alabama....**
>
> **12(f)(6) The Alabama rules of Appellate Procedure shall govern all proceedings under this rule to the extent this rule does not provide otherwise.**

*Rule* 26© of the Alabama Rules of Disciplinary Procedure, which explicitly

contains a provision for the Supreme Court of Alabama to issue an order of

disbarment or suspension, to wit:

> **However, during the period from the entry date of the order by the Disciplinary Board or the Disciplinary Commission <u>and the effective date of the order of disbarment or suspension by the Supreme Court of Alabama......</u>** (emphasis added)

339.   Plaintiff further asserts that the Alabama Supreme Court's non-

corrective  position also violates its rulings in its 2006 reversal and remand order,

which overturned ASB's finding of criminal contempt and ASB's use of the

Contempt Order as the ground for her then suspension punishment, its ruling that the

Contempt Order could not be re-litigated.

340.   Plaintiff further asserts that the failure of the Alabama Supreme

Court to review and rule upon the Hearing Panel's disbarment action constitutes an

abdication of its statutory, constitutional and elected duties to supervise its clerk

(Esdale), its staff attorney (Wilson) and the Alabama State Bar.

341.   Plaintiff further asserts that the Alabama Supreme Court's failure

and/or refusal to issue corrective orders aids and abets the other Defendants'

fraudulent and criminal acts against her, and the perpetration of fraud upon the state

and federal courts and upon the general public.

342.   Plaintiff further asserts that the acquiescence and/or ratification of the

Alabama Supreme Court in a fraudulent document bearing the  forged signatures of

its Justices and its inaction thereon, begs the "class action" questions:   "**<u>WHO'S</u>**

**<u>MINDING THE ALABAMA SUPREME COURT</u>**?"  Why is it not concerned

about someone else's use of the forged stamped signatures of its Justices?  How

many rulings have been made in this manner?  Is there someone on death role, or

someone who has been executed, or imprisoned for life, or for a day; or is there

someone who has lost a civil case in the State of Alabama, because of  Orders from

the Alabama Supreme Court, which bear the forged stamped signatures of its

Justices?

343.   Accordingly, Plaintiff further asserts  that the Alabama Supreme

and its Justices' neglect to prevent the conspiracy and neglect to correct the

injustices to her caused by the conspiracy, constitute violations of her aforesaid

Constitutional rights and state law, and a reckless disregard for her Constitutional rights and state law; and that said neglect to prevent and/or correct the conspiracy proximately caused her to suffer the injuries and damages complained of herein; and that accordingly, a Declaratory Judgment is necessary to correct said injustices.

344.   Accordingly, Plaintiff hereby requests this Honorable Court to grant her a Declaratory Judgment, which declares that she has not been disbarred by the Alabama Supreme Court; that her interim suspension was illegal and dissolved within twenty-eight days after the entry thereof; and which rescinds all Orders and actions which restrain or prohibit her from practicing law in the state of Alabama and in the Federal courts; and which grants her the following additional relief:

A.   Retroactive reinstatement of her Bar License in all courts.

B.   Restoration of all of her Bar License privileges, to include access to her former clients and their cases, and access to the State &  Federal EFILE Systems;

C.   An Order voiding *ab initio* the Criminal Contempt Order and the Alabama Court of Criminal Appeals' Affirmation thereof, and which purges her file of any criminal contempt conviction;

D.   An Order requiring Defendants to pay all costs and attorney's fees for Court, Bar and Appellate Proceedings, and to reimburse Plaintiff for any costs and attorney's fees incurred by her and/or paid for by her;

E.     An Order requiring Defendants to post and pay for notices of their

illegal actions against Plaintiff, and the Court's corrective actions in the

newspapers and to other media,  on their Website, in their publications, to her former

clients, to Federal and Alabama Courts, Administrators of Courts, Clerks, Lawyers,

Judges, and otherwise as deemed appropriate;

F.     An Order granting Injunctive relief, which restrains and enjoins the

Defendants from continued, further and additional acts of retaliation against her, and

from their continued, further and additional deprivations of her civil rights, and

violations of Federal and state laws;

G.      An Order removing all culpable  parties from their positions of

"TRUST" with the State;

H.     An Order initiating criminal prosecution of any Defendants whose

complained  of actions establish probable cause for criminal prosecution;

I.     An Order initiating judicial and/or Bar prosecutions against any

Defendants found guilty of violating:  Judicial Canons, Alabama State Bar Rules,

Federal and/or State statutory or case law; Plaintiff's Constitutional rights; and/or

Alabama State Supreme Court or Alabama State Bar rules, policies, procedures.

J.     An Order which provides her former clients, who were unlawfully

 deprived of her representation, and who continue to need and to desire her

representation, the following relief:   An Order reinstating Plaintiff as counsel of record, retroactive to the date of unlawful deprivation thereof; an Order which **stays and/or reverses** any state or Federal adverse rulings, upon a showing that said clients were prejudiced by the lack of her representation; and Order requiring the Defendants to pay costs and attorney's fees incurred by the aforesaid clients as the result of their unlawful deprivation of her representation.

K.      An Order granting such other and different relief deemed just and proper under the circumstances.

## COUNT 15
## PROCEEDING IN VINDICATION OF DEPRIVATION OF CIVIL RIGHTS
### *pursuant to 42 U.S.C. § 1988*

345.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-344, and all subsequent averments, as if fully stated herein, and further states:

346.   Plaintiff asserts that this lawsuit constitutes a proceeding to vindicate her civil rights; and that pursuant to 42 U.S.C. § 1988, she is entitled to recover fees and costs.

# B.  FEDERAL CRIMINAL CLAIMS
*filed pursuant to Code of Alabama, § 6-5-370*

## COUNT 16
## CONSPIRACY AGAINST CIVIL RIGHTS
### *in violation of 18 U.S.C. § 241*

347.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-346, and all subsequent averments, as if fully stated herein, and further states:

348**.**   Plaintiff avers that [16]ASB agents and/or employees, and possibly others, conspired, federated and agreed with agents and/or employees of the Alabama Supreme Court, and possibly other persons, in order to make and issue, and to effect, the fraudulent August 21, 2009 Alabama Supreme Court Order, which contains the forged stamped signatures of the Alabama Supreme Court Justices; and which purports to disbar her, and to strike her name from the attorney rolls of the Alabama Supreme Court.  **EXHIBIT 30**

349.   Plaintiff further asserts that the purpose of said conspiracy was to oppress and to injure her, by depriving her of her Constitutional rights, to include her Constitutional right to privileges and immunities and her liberty and property

---

[16] Plaintiff will amend her Complaint to name the co-conspirators after discovery documents the identifications thereof.

rights to her license to practice law in the State of Alabama, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

350.   Plaintiff further avers that the Alabama Supreme Court has not entered an Oder disbarring her, as evident in its January 27 2010 certified Docket Sheet; and the subsequent April 29, 2010 Docket.  **EXHIBIT 35 & EXHIBIT 40,** respectively.

351.   Plaintiff further avers that ASB  published said fraudulent document in the Huntsville Times, the Alabama Lawyer; and otherwise; and forwarded it to: state and Federal courts, judges, attorneys, her clients, and to the general public, thereby causing all of the foregoing, <u>including Plaintiff</u>, to believe that she had been disbarred by the Alabama Supreme Court.

352.   Plaintiff further avers that the aforesaid actions by ASB and Alabama Supreme Court agents and/or employees, who are alleged herein to be "co-conspirators" deprived her of her Constitutionally protected right to equal protection, as guaranteed by the Fourteenth Amendment; deprived  her of her Constitutionally protected property and liberty rights to her professional Bar License;  and deprived her of her Constitutional rights to due process, and a fair and impartial hearing, as guaranteed by the Fourteenth, Fifth, and Sixth Amendments to the United States Constitution.

353.   Plaintiff further avers that the aforesaid co-conspirators acted knowingly, intentionally, wilfully and purposefully, and with reckless disregard for her Constitutional rights to equal protection, due process, a fair and impartial hearing; and to deprive her of her property and liberty rights to her professional Bar Licence; and that they demonstrated reckless disregard for State law and the Alabama Rules of Disciplinary procedure.

354.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights and state and Federal law, thereby causing and/or contributing to Plaintiff's injuries and damages.

355.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, proximately caused her to suffer the injuries and damages complained of herein.

## COUNT 17
## DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
### *in violation of 18 U.S.C. § 242*

356.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-355, and all subsequent averments, as if fully stated herein, and further states:

357.   Plaintiff hereby asserts that the Defendants, jointly and severally, willfully subjected her to deprivation of her rights, privileges and immunities as stated heretofore; and that the Defendants, joint and several actions subjected her to different punishments and penalties by reason of her color and race than are prescribed for the punishment of white attorneys.

358.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

359.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

## COUNT 18
## INTERFERENCE WITH FEDERALLY PROTECTED ACTIVITIES
### *in violation of 18 U.S.C. § 245*

360.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-359, and all subsequent averments, as if fully stated herein, and further states:

361.   Plaintiff hereby asserts that the Defendants, jointly and severally, and willfully interfered with Plaintiff, who had at the time had been participating in and enjoying the practice of law in Alabama since 1990.

362.   Plaintiff further asserts that Defendants, jointly and severally, and willfully interfered with her because of her race and color, and because she had been participating in and enjoying the privilege of practicing law, and the Constitutional right to freedom of speech.

363.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights; thereby causing and/or contributing to Plaintiff's injuries and damages.

364.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

## COUNT 19
## FALSIFICATION/CONCEALMENT OR COVER-UP OF A MATERIAL FACT
## MAKING OF ANY MATERIALLY FALSE, STATEMENT OR REPRESENTATION, or
## MAKING/USING A FALSE WRITING/DOCUMENT KNOWING THE SAME TO CONTAIN ANY MATERIALLY FALSE, FICTITIOUS, OR FRAUDULENT STATEMENT OR ENTRY
### *in violation of 18 U.S.C. § 1001*

365.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-364, and all subsequent averments, as if fully stated herein, and further states:

## A.  FALSIFICATION/CONCEALMENT OR COVER-UP OF A MATERIAL FACT

366.   To avoid unnecessary duplication of pleadings, Plaintiff specifically realleges, adopts and incorporates herein by reference previous/

subsequent allegations in **COUNTS 6, 12, 13, 25, 26, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and in paras. 369-374** in the other two sections of this Count.

367.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by remaining silent although they had information to the contrary that they should have revealed, and had a duty to reveal to others; and that they acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

368.   Plaintiff  asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.


## B.  MAKING OF ANY MATERIALLY FALSE, STATEMENT OR REPRESENTATION

369.   To avoid unnecessary duplication of pleadings, Plaintiff specifically realleges, adopts and incorporates herein by reference previous/subsequent allegations in **COUNTS 6, 12, 13, 25, 26, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44** and further states that: Woodrof and Jones gave false testimony against

Plaintiff concerning her actions, her motives; her demeanor; her speech and manner of delivery, and other matters at the Hearing, as previously alleged; Lusk and Rankin made materially false statements to Haney during his *ex parte* Suspension Hearing; Lusk, Jones and Woodrof made materially false statements to the *ex parte* Hearing Panel; ASB made material false representations of Plaintiff's record; Jones' in his Bar Complaint; Judge Woodrof's certification of the trial court's appellate record as being complete, although it was missing the admitted EXHIBITS, all of Plaintiff's pleadings, and a complete and unedited trial transcript; Rankin in her Affidavit used by Lusk to support his Petition for Summary Suspension; Lusk in his Petition for Summary Suspension; Lusk in his designer excerpts from the trial transcript; ASB in its Suspension Notices; ASB in its Disbarment Notices; ASB in its 2008 Record of Appellate Index and Records, which is missing numerous records and evidence; the co-conspirator's disbarment.

370.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by remaining silent although they had information to the contrary that they should have revealed and had a duty to reveal to others; and that they acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's

disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

371.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

## C.  MAKING/USING A FALSE WRITING/DOCUMENT KNOWING THE SAME TO CONTAIN ANY MATERIALLY FALSE, FICTITIOUS, OR FRAUDULENT STATEMENT OR ENTRY

372.   To avoid unnecessary duplication of pleadings, Plaintiff specifically realleges, adopts and incorporates herein by reference previous/subsequent allegations in **COUNTS 6, 12, 13, 25, 26, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44** and further states that:   the following Defendants made or used a false writing/document while knowing the same to contain materially false, fictitious, or fraudulent statements or entry:  **Jones**' in his  Bar Complaint; **Judge Woodrof's** certification of the trial court's appellate record as being complete, although it was missing the admitted EXHIBITS, all of Plaintiff's pleadings, and a complete and unedited trial transcript; **Rankin** in her Affidavit used by Lusk to support his Petition for Summary Suspension; **Lusk** in his Petition for Summary Suspension;

**Lusk** in his designer excerpts from the trial transcript; **Haney and ASB** in its Suspension Notices; **ASB** in its Disbarment Notices; **Mainor and ASB** in its 2008 Record of Appellate Index and Records, which is missing numerous records and evidence.

373.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by remaining silent although they had information to the contrary that they should have, and had a duty to reveal to others, and  by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.    Moreover, based upon information and belief, employees and/or agents of the Alabama Supreme Court assisted in making the fraudulent disbarment order.

374.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

# VII.  SUPPLEMENTAL STATE CLAIMS

## A.  STATE CIVIL CLAIMS

### COUNT 20
### COMPLAINT FOR DECLARATORY JUDGMENT

375.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-374, all subsequent averments, and particularly, her averments in **COUNTS 12, 13 & 14,** as if fully stated herein, and further states:

376.   Plaintiff further avers that the Alabama Supreme Court's inaction, acquiescence in, and/or ratification of Defendants complained of illegal actions proximately caused her to suffer, and to continue to suffer the damages complained of herein.

377.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein; accordingly, Plaintiff is entitled to the Declaratory Judgment relief requested in **COUNT 14** hereinabove.

## COUNT 21
## NEGLIGENCE

378.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-377, and all subsequent averments, as if fully stated herein, and further states:

379.   Plaintiff hereby asserts that the Defendants, by virtue of their positions, had a legal duty to know, obey  and enforce Alabama and Federal law, and its own rules, policies and procedures, and to protect, and not violate, Plaintiff's clearly established Constitutional Rights, as guaranteed by the United States Constitution and the Alabama Constitution of 1901, as amended.

380.   Plaintiff further asserts that the Defendants negligently breached their aforesaid legal duty by violating Alabama and Federal law; its own rules, policies and procedures, and Plaintiff's Constitutional rights, and thereby committing the illegal acts complained of herein, and/or by negligently omitting to correct said violations and/or to enforce the law by acquiescing in, and/or ratifying the illegal actions by other Defendants, when they had a legal duty to correct said illegal actions and/or to enforce the law.

381.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct

by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights; accordingly, the Defendants joint and several actions, and/or inactions, proximately caused/contributed to Plaintiff suffering the injuries and damages complained of herein.

## COUNT 22
## WANTONNESS

382.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-381, and all subsequent averments, as if fully stated herein, and further states:

383.   Plaintiff  asserts in the alternative, that Defendants knowingly, intentionally, wantonly, and with malice and/or reckless disregard for Plaintiff's clearly established Constitutional rights and state and Federal law, committed the illegal acts complained of herein; and/or they omitted to correct said illegal acts and to enforce the law by acquiescing in, and/or ratifying the illegal acts by other Defendants, although they had a legal duty to correct said illegal actions, many of which constitute criminal offenses,  and/or to enforce her Constitutional rights and the law.

384.   Plaintiff further avers that Defendants' illegal acts complained of herein also show a reckless disregard for the consequences thereof, to include the consequential injuries and damages to Plaintiff.

385.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby additionally causing, or contributing to Plaintiff's injuries and damages.

386.   Plaintiff further asserts that the Defendants' joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

387.   Plaintiff further asserts that as the result of the aforesaid claimed wanton injury, she is entitled to recover punitive damages, in addition to compensatory and consequential damages.

## COUNT 23
## INVASION OF PRIVACY

388.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-387, and all subsequent averments, as if fully stated herein, and further states:

389.   Plaintiff further asserts that Lusk, the Hearing Panel, Haney and ASB, through its public notices of its illegal suspension and purported disbarment by the Alabama Supreme Court of Plaintiff, intruded upon Plaintiff's solitude and seclusion; generated publicity which violated the ordinary decency; and  put Plaintiff in a false position in the public eye, and in the eyes of her clients, other lawyers, judges and court officials, and her family and friends.

390.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby additionally causing, or contributing to Plaintiff's injuries and damages.

391.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, proximately caused her to suffer injuries and  damages.

## COUNT 24
## DEFAMATION

**NOTE:**      **Specific allegations regarding this claim will be addressed after the completion of:   discovery of the responsible parties, the forwarding of statutory retraction notices, and/or the expiration of the retraction statutory notice response time.**

## COUNT 25
## FRAUD/DECEIT/MISREPRESENTATION

392.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-391, and all subsequent averments, as if fully stated herein, and further states:

### Lusk, and ASB

393.   Lusk in his Petition for Plaintiff's Summary Suspension, and in his testimony in support thereof, knowingly and intentionally, and with wanton disregard for the law and the truth, falsely testified that Plaintiff had engaged in a pattern and practice of not responding to complaints; he falsely testified that Plaintiff had failed to respond to ASB's request for information in several complaints, when in fact, her responses had been provided to ASB several months earlier; and he falsely testified that Plaintiff had been given ample opportunity to respond to the pending complaint, when he knew that she had been seriously

injured in an automobile accident, and had obtained an enlargement of time to respond; and although he did not know whether Plaintiff had recovered sufficient to respond to the one pending complaint.

394.   Lusk knowingly and intentionally, and with wanton disregard for the law and the truth, falsely testified that Plaintiff's statement concerning the disparate and condescending treatment of minority attorneys by white judges indicated that she showed no remorse, when he knew that her statement merely paraphrased ASB's commissioned survey findings, which ASB documented and published in its November 1999 edition of *The Alabama Lawyer*, thereby confirming the truthfulness of her statement.

395.   Lusk knowingly and intentionally, and with wanton disregard for the law and the truth, misrepresented to the Hearing Panel that the 4.4 and 8.2 charges, which had previously been dismissed by the Hearing Panel in response to his motion therefor, were existing charges against Plaintiff; and he zealously argued for the use of the TV interview of Plaintiff, which is the basis for the previously dismissed 8.2 charge, as aggravating circumstances for her disbarment.

396.   Lusk, knowingly and intentionally, and with wanton disregard for the law and the truth, admitted the Contempt Order as grounds for the charges against her, and as grounds for disciplinary action against her, although his former use of

the Contempt Order for the same reasons was reversed and remanded by the Alabama Supreme Court's 2006 Order, which also prohibited the re-litigation of the Contempt Order.  Moreover, Lusk hid the ASB records of his Motion for Summary Judgment, which was based upon the Contempt Order; Plaintiff's response thereto; his reply; Plaintiff's Motion to Vacate; her appeal to the Commissioners; their reversal of Lusk's summary judgment and remand for a hearing; Lusk's appeal of the Commissioners' decision; Plaintiff's counter-appeal; and the Supreme Court's ruling affirming the Commissioners and ruling in Plaintiff's favor by reversing and remanding ASB's summary judgment.

397.   Lusk, knowingly and intentionally, and with wanton disregard for the law and the truth, misrepresented to the Hearing Panel that Plaintiff had engaged in a pattern and practice of continuing the Hearing to avoid  the Hearing in support of his argument against her Hearing being continued, when the records he submitted show that he and ASB engaged in the aforesaid pattern and practice, and not Plaintiff.  Lusk's aforesaid misrepresentations proximately caused the Hearing to proceed *ex parte*, although Plaintiff had contagious illnesses, and was too with Flu, Strep Throat and Pleurisy to make the 400-mile round trip, and to participate therein.  Additionally, Lusk falsely told the Hearing Panel that he could tell by Plaintiff's voice that she was not ill; however, his "voice analysis" is flatly

rebutted by Plaintiff's  medical records.

398.   Additionally, Lusk falsely told the Hearing Panel that Plaintiff did not attempt to contact ASB again, when he knew that she had phoned and spoken to members of his staff; she had given them her diagnoses; she asked to speak to him, and he refused to come to the phone.

399.   Lusk, knowingly and intentionally, and with wanton disregard for the law and the truth,  suppressed the majority of Plaintiff's ASB record from the Hearing Panel, and created a false record for review by the Hearing Panel by removing therefrom all of the documents which preceded the Hearing (other than the Formal Charges and her response thereto); by craftily carving out the portions of the transcript that appeared to support his position and admitting said excerpts as the record before the Hearing Panel, although said excerpts grossly misrepresented even the tainted trial transcript; and by re-numbering the 2000 trial transcript so that it numerically matched the 2008 Hearing record, and appeared to be a part of the record considered by the Hearing Panel.

400.   Lusk, knowingly and intentionally, and with wanton disregard for the law and the truth,  suborned perjured testimony from Jones and Woodrof that Plaintiff was screaming and yelling, and otherwise being disrespectful and insolent to Judge Woodrof, Jones and witnesses.   Further, Lusk s suppressed all of the

exculpatory evidence from the Hearing Panel, to include: The Huntsville-Madison County Bar Investigative Report, wherein the Investigator, who heard the trial tapes, found that Plaintiff was not guilty of the aforesaid actions, or other charged misconduct, and that the charges against her should be dismissed; affidavits; and the trial audio tapes.

401.   Lusk, knowingly and intentionally, and with wanton disregard for the law and the truth, gave unsworn false testimony to the Hearing Panel through his statements to the Hearing Panel, which were made throughout the Hearing, and through his grossly leading questions to Jones and Judge Woodrof, whereby he put false testimony into their mouths.

402.   Lusk, knowingly and intentionally, and with wanton disregard for the law and the truth, falsely accused Plaintiff of engaging in the unauthorized practice of law, in a case wherein she had been represented herself *pro se* for years.

403.   Lusk, knowingly and intentionally, and with wanton disregard for the law and the truth, misrepresented to the Hearing Panel that her aforesaid TV interview constituted a disbarment offense.

404.   Lusk, knowingly and intentionally, and with wanton disregard for the law and the truth distorted the record, by carving out excerpts therefrom in a

manner which made the record appear to be favorable to his prosecution of

Plaintiff; and he  committed other acts of fraud/deceit/misrepresentation, as

previously stated hereinabove.

### Rankin and ASB

405.  Rankin and ASB made materially false statements in her sworn

Affidavit and in her testimony to Haney during his *ex parte* Suspension Hearing

on Plaintiff.

### Mainor and ASB

406.  Mainor knowingly and intentionally made materially false statements

and misrepresentations in her certification of Plaintiff's Bar Appellate Records,

thereby, knowingly and intentionally suppressing the true and correct Bar records

and evidence for Appellate review; and ASB sanctioned the same.

### Jones

407.  Plaintiff hereby avers that after being sworn in as a witness, Jones

 knowingly, intentionally, and with wanton disregard for the law and the truth,

gave false testimony in his Bar Complaint, and in his testimony at the *ex parte*

November hearing, as more specifically averred in other sections herein.

### Woodrof

408.   Plaintiff avers that Judge Woodrof  knowingly, intentionally, and with wanton disregard for the law and the truth, falsely certified Plaintiff's appellate record as being complete; gave false testimony at Plaintiff's *ex parte* November 18, 2009 Hearing after being sworn as a witness, which included the following:  that Plaintiff was yelling, screaming and/or being rude and disrespectful to him and/or witnesses; that Plaintiff's argument in opposition to his illegal rulings was improper; that Plaintiff intentionally caused the mistrial, which he and the District Attorney had planned the day prior thereto, and which he flatly contradicted when he attributed Plaintiff's actions to her emotions in his speech to the jury; that Plaintiff committed any offense which warranted him finding her in contempt and sentencing her to jail; that Plaintiff was found to be in criminal contempt of the court.

### ASB

409.   ASB employees/agents knowingly, intentionally, and with wanton disregard for the law and the truth, committed the acts of fraud, deceit and/or misrepresentation through its employees/agents, Lusk, Rankin, Mainor and the Hearing Panel Members, as previously alleged.  Further, ASB falsely publicized that Plaintiff was disbarred and suspended; failed to pay costs and reimburse

Plaintiff for the costs she paid for the 2004 Appeal; charged Plaintiff for costs for the Hearing Panel, and publications.  Additionally, upon information and belief, ASB created the fraudulent August 21, 2009 purported Alabama Supreme Court Order, which purports to disbar Plaintiff.

## **Wilson**

410    Wilson, knowingly, intentionally, and with wanton disregard for the law and the truth, committed fraud, deceit and/or misrepresentation by falsely representing that the Alabama Supreme Court entered the purported August 21, 2009 Order of Disbarment and by misrepresenting the Alabama Supreme Court appellant record on Plaintiff.

411.   Defendants aforesaid actions deprived Plaintiff of her Constitutional and statutory rights to due process, a fair and impartial hearing, equal protection and  to her privilege to practice law in this State, thereby proximately causing the damages complained of hereinbelow.

412.   The record shows that Wilson, the Alabama Supreme Court, and its Justices acquiesced/ratified the aforesaid actions, thereby causing or contributing to Plaintiff's damages.

413.   Plaintiff  asserts that the Defendants joint and several actions proximately caused her to suffer the injuries and  damages complained of herein.

# COUNT 26
## SPOILATION OF EVIDENCE

414.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, and all previous averments in paragraphs 1-413,  as if fully stated herein, and further states:

415.   To avoid unnecessary duplication, Plaintiff hereby specifically realleges, adopts and incorporates herein by reference all of her previous averments in **COUNTS 6, 7, 12, 16, 19, 25.**

416.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights; and accordingly, they also interfered with Plaintiff's aforesaid protected activities, and causing or contributing to Plaintiff's injuries and damages.  Moreover, the Alabama Supreme Court noted in its March 2006 Order that it did not reach Plaintiff's due process claims, which included the sabotage, suppression and destruction of the trial court and Bar's records.

417.   Plaintiff  asserts that the Defendants joint and several actions, and/or proximately caused her to suffer the injuries and  damages complained of herein.

## COUNT 27
## RETALIATION

418.     Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, and all previous averments in paragraphs 1-417,  as if  fully stated herein, and further states:

419.   Plaintiff avers that the record shows that Jones initially filed his Bar Complaint against her in retaliation for her telling him during the trial that she was going to file a complaint against him for pursuing illegal claims against her client and for attempting to make her stipulate to the admission of illegal evidence.  In fact, Jones acknowledges the foregoing in various statements before and during the Hearing.

420.   Plaintiff hereby avers that Lusk retaliated against her by committing the acts alleged herein, to include the following: singling her out as the only attorney to be prosecuted because of a Contempt finding; prosecuting an illegal suspension action against her; prosecuting the purported disbarment against her and charging her with the unauthorized practice of law for representing herself *pro se*; sabotaging, suppressing, and removing record evidence, much of which contained exculpatory evidence; soliciting and giving false testimony against her; using illegal evidence against her to include charges he had previously dismissed;

using her TV interview statements, which mirrored the Bar's Commissioned Survey findings to argue for, and obtain a disbarment ruling; penalizing her for the documents she filed which described and complained about his illegal actions such as the Investigator's Bar file in her file; discriminating against her; seeking increased punishment and her disbarment for a non-disbarment offense.

421.   Jones and Judge Woodrof retaliated against Plaintiff because she previously filed a lawsuit against them, and because she raised legal objections to their illegal actions during the trial, to include the fact that her client had not been indicted on the charged offenses; and said retaliation also included illegally processing a non-criminal contempt  order as a criminal act and moving her appeal from the Alabama Court of Civil Appeals to the Alabama Court of Criminal Appeals, thereby criminalizing her.

422.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

423.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, proximately caused her to suffer the injuries and  damages complained of herein.

# COUNT 28
# MALICIOUS PROSECUTION

424.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, and all previous averments in paragraphs 1-423, and particularly, **COUNTS 16, 22, 27**, as if fully stated herein, and further states:

425.   Plaintiff hereby avers that Jones, Lusk, the Hearing Panel and ASB instigated an illegal and discriminatory Bar disciplinary action against her without probable cause; and that they committed all of the other illegal acts alleged herein in support thereof.

426.   Plaintiff further avers that Lusk, the Hearing Panel and ASB re-instigated the disciplinary procedure in 2006 without probable cause, and in violation of an order previously entered by the Alabama Supreme Court on March 6, 2006, which reversed and remanded their previous summary judgment on the same grounds.

427.   Plaintiff further avers that Lusk, Rankin and ASB presented fraudulent documents and testimony in support of the Suspension of Plaintiff's Bar License, and Lusk, the Hearing Panel and ASB prosecuted Plaintiff on two charges which had previously been dismissed, and used one of these charges to argue for her disbarment.

428.   Plaintiff further avers that ASB and the Alabama Supreme Court, through its employees/agents contrived, implemented , and published a fraudulent disbarment order.

429.   Plaintiff further avers that the certified Alabama Supreme Court Docket Sheet at **EXHIBIT 35**, clearly shows that the purported August 21, 2009 disbarment order does not exist, and nor does the August 4, 2009 ASB Order purported to be grounds therefor; and such evidence is therefore favorable to Plaintiff.

430.   Moreover, Defendants' continued prosecution of Plaintiff on the contempt order, and their use of the Contempt Order in their notices as grounds for her purported disbarment (**EXHIBIT 32)**, flatly contradicts the favorable ruling for Plaintiff by the Alabama Supreme Court in its 2006 Reversal & Remand Order. **EXHIBIT 13**  Accordingly, Defendants acted with intent, knowledge, purpose, and with malice in committing the aforesaid acts, and other acts complained of

herein.

431.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

432.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, which resulted in the within claimed malicious prosecution, also proximately caused her to suffer the injuries and damages complained of herein.

## COUNT 29
## CONSPIRACY

433.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, all previous averments in paragraphs 1-432 and all subsequent averments, and particularly, her prior Federal conspiracy pleadings in **Count 12** and **COUNT 13**, hereinabove,  as if fully stated herein, and further states:

434.   Plaintiff hereby asserts that [17]ASB and Alabama Supreme Court agents and/or employees contrived, combined, federated, and conspired amongst themselves to acquire and use the stamped signatures of the Alabama Supreme Court Justices for the purpose of making, issuing and enforcing a fraudulent document disbarring Plaintiff, and for the purpose of depriving her of her Constitutionally protected rights to equal protection of the Alabama laws concerning disciplinary actions against its attorneys, and for the purpose of depriving her of equal privileges and immunities of laws, to include her property and liberty rights to her professional license to practice law in Alabama,

435.   Plaintiff further avers that pursuant to *Code of Alabama, § 13-9-22,* Defendants acts of conspiracy also constitute a criminal offense.

436.   Plaintiff further asserts that as the result of the aforesaid conspiracy, she has purportedly, and effectively been disbarred since the co-conspirators issuance of the August 21, 2009 fraudulent order of disbarment.

437.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to

---

[17]  Plaintiff will name the co-conspirators after discovery documents the identifications thereof.

review/rule upon the Bar's disciplinary action and enforce Plaintiff's

Constitutional rights; and accordingly, contributed to Plaintiff's injuries and

damages.

438.   Plaintiff hereby asserts that the Defendants' joint and several actions,

and/or inactions, proximately caused her to suffer the injuries and  damages

complained of herein.


## COUNT 30
## INTENTIONAL INTERFERENCE WITH
## BUSINESS RELATIONSHIPS

439.   Plaintiff hereby realleges, adopts and incorporates herein by reference

all of her general allegations, all previous allegations in paragraphs 1-438, as if

fully stated herein, and further states:

440.   Plaintiff has enjoyed a long term contract and business relationship

with LEXIS NEXIS, a provider of internet legal research capabilities to attorneys,

and others.

441.   ASB had knowledge of the aforesaid business relationship and

contract between Plaintiff and LEXIS NEXIS.

442.   ASB intentionally interfered with Plaintiff's LEXIS NEXIS contract

and services by contacting LEXIS NEXIS and terminating her contract and

services, as evident in the email at **EXHIBIT 33**.

443.   According to LEXIS NEXIS, ASB told them that Plaintiff was no longer authorized to receive their services in that she had been disbarred.

444.   However, ASB lacked justification for the aforesaid interference with Plaintiff's business relationship and termination of her contract, as Plaintiff has not been disbarred by the State of Alabama; and ASB knew that she was also admitted to practice law in the U.S. District Court, the Eleventh Circuit Court of Appeals and the Alabama Supreme Court.

445.   As the proximate cause of ASB's aforesaid interference, LEXIS NEXIS terminated her research services, and its contract with Plaintiff, thereby destroying Plaintiff's internet research capability.

446.   Additionally, Plaintiff incurred a current and higher price than her previous  monthly cost upon reinstatement of her internet research services.

447.   Additionally, ASB intentionally interfered with Plaintiff's business relations with the Federal and state courts, and with the Federal and state court electronic filing and notice providers.

448.   Additionally, ASB intentionally interfered with Plaintiff's business relations with her clients by terminating, or causing them, or the courts  to terminate her services; and by telling her clients and the courts, wherein their cases

were pending, that she had been suspended and disbarred, and/or by telling them that she would never practice law again in the State of Alabama.

449.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

450.   Plaintiff further asserts that the Defendants joint and several actions in interfering with her aforesaid contracts and business relationships proximately caused her to suffer the injuries and  damages complained of herein.

## COUNT 31
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## and
## COUNT 32
## TORT OF OUTRAGE

451.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general averments, and all previous averments in paragraphs 1-450, and all averments hereinbelow, as if fully stated herein, and further states:

452.   Plaintiff hereby asserts that the Statement of Facts and the Statement of Claims clearly show, that in committing the illegal acts complained of herein; and/or in acquiescing in and/or ratifying the illegal acts complained of herein, the Defendants intentionally, or recklessly inflicted emotional distress upon her, which continues to this date.

453.   Plaintiff further asserts that Defendants actions were extreme and outrageous, and are beyond all possible bounds of decency and are atrocious and utterly intolerable in a civilized society, particularly in light of the fact that they broke the laws and violated Plaintiff's Constitutional rights, which they are legally and ethically obligated to uphold and to enforce.

454.   As the result of Defendants' complained of actions and inactions herein, Plaintiff suffered severe and debilitating mental anguish, emotional distress, loss of self esteem, humiliation, fright, mental shock, and loss of enjoyment of life, as manifested by an inability to eat; inability to sleep for more than a total of two-three  hours within a twenty-four hour timeframe; a complete withdrawal from everyone, to include her family and friends; a complete withdrawal from organizations in which she was a member, a complete lack of participation in social or political events, a complete withdrawal from life and society as a whole, an inability to leave the protection of her home, and other

injuries.

455.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

456.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.

# B.  STATE CRIMINAL CLAIMS
*filed pursuant to Code of Alabama, § 6-5-370*

## COUNT 33
## SUBORNING PERJURY

457.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-456,  as if fully stated herein, and particularly her averments in the following paragraphs, and further states:

458.   During the *ex parte* Hearing, Lusk suborned perjury by repeatedly interjecting his own false testimony as predicates for questions to Jones and Woodrof and by repeatedly asking leading questions, to wit:

```
Lusk:     How could you determine she was
          hostile, acrimonious?  From the tone
          of her voice?
JONES:    Yes.
LUSK:     Was it from her body language?
JONES:    Yes, sir.
```

459.    Additionally, Jones falsely testified that Plaintiff was screaming and yelling at witnesses and at the trial Judge.

460.   Lusk asked Jones if he could scream like Caffey; Jones replied that he could; Lusk directed him to "scream like Caffey for the Panel; and **Jones screamed**..  Lusk solicited this "scream testimony" from Jones although he objectively knew that it would be impossible for Jones to mimic Plaintiff's voice pitch, intonation, volume, etc.

461.   This ludicrous "scream testimony" by Jones clearly violated the Best Evidence Rule as promulgated by the Alabama Rules of Evidence, which would have classified the best evidence as being the trial audio tapes.

462.   The record further shows that the Hearing Panel used "Jones' scream" solicited by them to mimic Caffey to conclude that Caffey screamed at witnesses in the same manner; that they used Judge Woodrof's and Judge Thompson's

"HIGH-FIVE" celebration of Caffey's imprisonment with Judge Woodrof  R 193-194 and Jones' false assertion that "In another county she [Caffey] stood out in front of the courthouse screaming racism," which is rebutted by Caffey at **EXHIBIT 10-B** and by Rev. Doris Baker, the organizer of the demonstration referred to by Jones at **EXHIBIT 24**; that they used Jones' false assertion that she was jumping  up and down wearing bright red shoes and screaming at witnesses, which was rebutted by Judge Woodrof; at R 197 and that they used Jones' false assertion for the first time that she was attempting to incite the crowd to riot to find her guilty of ethical violations. R 357

463.   As the ASB prosecutor, Lusk had access to all of the evidence, to include the trial audio tapes, which he refused to produce even after being ordered to do so by the Hearing Panel Officer.  Lusk also knew from the audio tapes that the screaming and yelling testimony that he solicited from Jones was false and constituted perjury; and he knew from other record evidence that Jones' assertion that Plaintiff had brought NAACP protesters into the courtroom and attempted to incite a riot was raised for the first time during his testimony, and the claimed action is not documented in any of the trial records, nor in any other testimony.

464.   Lusk also suborned perjury from Mainor, who submitted her sworn Affidavit containing false information and deliberate misrepresentations in support

of Lusk's unsworn falsified Petition for Suspension; and said perjured testimony proximately caused Haney to issue his Order of Suspension.

465.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

466.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.

## COUNT 34
## PERJURY
### *in violation of Code of Alabama, § 13A-10-100-102*

467.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paras. 1-466,  as if fully stated, and particularly her averments in **COUNTS 19, 25**, and further states:

### Brian Jones

468.   Jones gave a sworn complaint, which contained false allegations concerning material facts, as previously alleged herein.

469.   Additionally, Jones was called by Lusk as a witness, was administered an Oath, wherein he swore to tell the truth; however, Jones gave false testimony concerning material facts, as previously alleged herein.

470.   Thereafter, he made numerous false statements under oath which were material to the proceeding in which they were made, to include the following:

471.   The record further shows that the Hearing Panel used "Jones' scream" solicited by them to mimic Caffey to conclude that Caffey screamed at witnesses in the same manner; that they used Judge Woodrof's and Judge Thompson's "HIGH-FIVE" celebration of Caffey's imprisonment R 193-194 and Jones' false assertion that "In another county she [Caffey] stood out in front of the courthouse screaming racism," which is rebutted by Caffey at A-7, Ex. B and by Rev. Doris Baker, the organizer of the demonstration referred to by Jones, at A-12; that they used Jones' false assertion that she was jumping up and down wearing bright red shoes and screaming at witnesses, which was rebutted by Judge Woodrof; at R 197 and that they used Jones' false assertion for the first time that she was attempting to incite the crowd to riot to find her guilty and order her disbarment. R 357

472.   Additionally, Jones blamed Plaintiff, because,  according to him there were eight (8) newspapers present, thereby blaming Caffey for Freedom of the Press.  R 129

## Judge Woodrof

473.   Judge Woodrof falsely certified the trial court's appellate record as being correct.

474.   During Plaintiff's *ex parte* Hearing, Judge Woodrof  was called by Lusk as a witness, was administered an Oath, and swore to tell the truth. Thereafter, he made numerous false statements under oath which were material to the proceeding in which they were made, as previously alleged in other Counts.

## Rankin

475.   Rankin, as previously alleged, gave sworn and false testimony in her Affidavit on facts material to a suspension Petition filed by Lusk.

## Mainor

476.   Mainor, as previously alleged, provided a false certification of Plaintiff's Bar Appellate Records, and a false representation of the contents thereof to the Alabama Supreme Court, thereby providing false certifications on material facts to Plaintiff's appeal.

477.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to

review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

478.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.

## COUNT 35
## FRAUD
### in violation of in violation of Code of Alabama, § 13A-9-3

479.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-478,  as if fully stated herein, and particularly her averments in **COUNTS 6, 12, 16, 19, 25, 26, 33, 34, 36,37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47**, and further states:

480.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing or contributing to Plaintiff's injuries and damages.

481.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the complained of injuries and  damages.

## COUNT 36
## FORGERY
### *in violation of in violation of Code of Alabama, § 13A-9-3*

482.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-478,  as if fully stated herein, and particularly her averments in the following paragraphs, and further states:

483.   ASB and Supreme Court employees created and published the August 21, 2009 purported Disbarment Order and falsely represented it as being an official Order from the Alabama Supreme Court by placing the Alabama Supreme Court Justices stamped signatures thereon.

484.   Accordingly, said employees or agents with the intent to defraud, falsely made and completed a written instrument which is purported and calculated to be a public record, or an instrument filed or required or authorized by law to be filed in a public office, or with a public employee; or a written instrument officially issued or created by a public office, public employees or government agency, to wit: an Order from the Alabama Supreme Court and its Justices, thereby committing a Class C felony.

485.   Notice and/or copies of the aforesaid forged document were mailed or otherwise distributed to Plaintiff; to various courts and court personnel; to the

general public, and published in various publications, to include: *The Huntsville Times* newspaper and *The Alabama Lawyer Magazine*.   **EXHIBIT 32**

486.   Plaintiff anticipates that discovery will identify and/or confirm the identification of the ASB and Alabama Supreme Court employees who committed the aforesaid criminal acts.

487.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

488.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the complained of injuries and  damages.


## COUNT 37
## UNSWORN FALSIFICATION TO AUTHORITIES
### *in violation of Code of Alabama, § 13A-10-109*

489.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-488  as if fully stated herein, and particularly her averments in the following paragraphs:

## Judge Woodrof

490.   Plaintiff filed an appeal in which she identified the entire record

for review by the appellate courts; however, Judge Woodrof suppressed the trial

exhibits; all documents filed by her in the trial court; and the reverse sides of three

purported indictments, which showed no signature thereon by the Grand Jury

Foreperson, as required by Alabama law.

491.   In response to Plaintiff's Petition for Writ of Mandamus for an

appellate Order instructing him to correct the record, and the appellate court's

instructions for him to review the record for correctness and make any necessary

corrections, Judg Woodrof falsely certified the appellate record to the Court of

Criminal Appeals as being correct, stating:

> **This Court has received a Motion to Correct and/or
> Supplement the Record and no Order from the Court
> of Criminal Appeals, and after a complete review of
> the request with the Limestone County Circuit Court
> clerk and the Court Reporter involved, this Court
> finds that the trial transcript and court record, as
> previously submitted, is a true, correct and complete
> record of the proceedings therein.  EXHIBIT 5**

492.   In fact, Plaintiff's Petition for Writ of Mandamus filed in the Alabama

Court of Criminal Appeals was denied because of  said court's receipt of Judge

Woodrof's false certification that the record was complete.  **(EXHIBIT 5**)

493.   Accordingly, Judge Woodrof's false certification to a higher authority, to wit: an Alabama Appellate Court, was intended to mislead public servants, in the performance of their duties as Alabama Appellant Judges in the performance of their duty with regards to a complete record required by law to be submitted to the Appellate Court; and his false certification did in fact mislead the Appellate Court and its Judges.

494.   Judge Woodrof's aforesaid false certification, which continues to this date, constitutes the criminal offense of Unsworn Falsification to Authorities; and his aforesaid actions constitute the criminal offense of Tampering with evidence.

495.   The Appellate Record was never corrected, and Judge Woodrof used the incorrect corrects during his testimony at the November 18, 2008 *ex parte* Hearing, thereby resulting in egregious prejudice to Plaintiff.

496.   Judge Woodrof's  aforesaid criminal act contributed to and/or proximately caused Plaintiff's damages complained of hereinbelow.

### Robert Lusk

497.   During the pendency of Plaintiff's case before ASB from 2003 until 2008 Lusk made numerous false and unsworn statements, to include the following:

498.   In response to Plaintiff's request for a continuance of her Hearing, and in order to get the Hearing Panel to deny Plaintiff's request for a continuance,

Lusk falsely told the panel that her Hearing should not be continued

because she had engaged in a pattern and practice of avoiding the Hearing by filing

motions for continuance; and in support of said assertion, he presented and

admitted the documents in **EXHIBIT 16-C**, which shows one continuance for

Plaintiff and ten continuances for ASB.

499.   Additionally, Lusk gave the Hearing Panel his "voice diagnosis" of

Plaintiff claiming that she did not sound ill to him; however, Plaintiff's medical and

independent lab diagnoses that date of Flu, Strep Throat and Pleurisy clearly

showed that Plaintiff was ill with two contagious diseases, to wit: FLU and Strep

Throat, and with Pleurisy, and that his "voice diagnosis" was false.

500.   Additionally, Lusk told the Panel that Plaintiff had not made additional

contact with the Bar that day, when he knew she had phoned him, and he had

refused to take her call.  **EXHIBIT 23-A**

501.   Additionally, throughout the Hearing, Lusk falsely testified against

Plaintiff through his leading questions to his friend, Brian Jones and to Judge

Woodrof, and through his comments.  The following excerpt clearly shows Lusk's

testimony through his leading questions:

```
Lusk:    How could you determine she was
         hostile, acrimonious?  From the tone of
         her voice?
JONES:   Yes.
```

**LUSK:    Was it from her body language?**
**JONES:   Yes, sir.**

502.   Also, during the Hearing, Lusk attempted to admit a video recording of a Channel 48 television interview of Plaintiff, which occurred after the trial; however, Ward, the Hearing Officer, denied the admission thereof, stating that Plaintiff had not been given notice of the videotape in the charges against her; the statements occurred after the mistrial; and the record is silent as to what statements are considered violations, and the reasons therefor. **EXHIBIT 17**

503.   However, Plaintiff had no prior history of any disciplinary action against her; accordingly, during the sentencing phase, Lusk requested to use the TV interview as aggravating circumstances to argue for disbarment and falsely justified said use of the TV by falsely claiming that it showed Plaintiff showed no remorse.

**EXHIBIT 18**

504.   Ward permitted such  use, although he had previously denied the admission of the video tape into evidence; and although it  was never admitted into evidence by the Hearing Officer. **EXHIBIT 18**

505.   Lusk's aforesaid unsworn false statements did in fact mislead the Hearing Panel into proceeding with Plaintiff's Hearing without her presence and participation, and into using a non-admitted, un-noticed, irrelevant and immaterial TV Video as aggravating circumstances against Plaintiff, and as support for its

disbarment order.

506.   In fact, the Hearing Panel found that Plaintiff was defiant and disrespectful because during the TV interview, "she [purportedly] claimed that there was an intolerance by white judges to show  respect to black attorneys and that the judge [18][Woodrof] was embarrassed by all the lies the State (Jones) told during the trial."  **EXHIBIT 21**

507.   Inasmuch as Lusk knew at the time that ASB had published its survey results of Minority Attorneys ASB's in its November 1999 issue of its  magazine, THE ALABAMA LAWYER,   two of which showed that :  **58% of the minority attorneys surveyed reported that they had experienced "condescending treatment by non-minority attorneys or judges because of their race; and 26% reported that they had experienced "verbal abuse or harassment" because of their race,** he also knew that his aforesaid use of Plaintiff's paraphrasing of said finding could not possibly constitute lack of remorse, nor any ethical offense.

508.   Additionally, there exists no rebuttal evidence to Plaintiff's purported statement that Judge Woodrof was embarrassed by all the lies the State told during the trial.

---

[18] It should be noted that Judge Woodrof did not rebutted either purported statement by Plaintiff.

509.   Accordingly,  Plaintiff is purportedly and effectively disbarred because she repeated or paraphrased an ASB commissioned survey finding previously documented and published by ASB in its November 1999 edition of <u>The Alabama Lawyer</u>, because of a non-rebutted statement she purportedly made; and because of Lusk's unsworn falsification to the Hearing Panel.

510.   Additionally, Lusk gave false and unsworn testimony in his Petition for Plaintiff's Suspension, and during the Hearing thereon.

511    The aforesaid actions by Lusk constitutes the criminal offense of Unsworn Falsification to Authorities**.**

512.   As the proximate consequence of Lusk's aforesaid criminal acts, Plaintiff suffered the injuries and damages complained of herein.

## COUNT 38
## FALSIFYING BUSINESS RECORDS
### *in violation of Code of Alabama, § 13A-9-45*

## COUNT 39
## TAMPERING WITH GOVERNMENTAL RECORDS
### *in violation of Code of Alabama, § 13A-10-12*

## COUNT 40
## TAMPERING WITH PHYSICAL EVIDENCE
### *in violation of Code of Alabama, § 13A-10-129*

513.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-512  as if fully stated herein, and particularly her averments in **COUNTS 6, 12, 16, 19, 25, 26, 2, 28, 29, 33, 34, 35, 36, 37, 41, 42, 43, 44, 45, 46, 47**, and further states:

514.   The averments in the prior **COUNTS** concerning Judge Woodrof, Bonnie Mainor, Robert Lusk, Cheryl Rankin, ASB, and unknown ASB and Alabama Supreme Court co-conspirators stated hereinabove clearly prove the commission of the criminal offenses in the instant **COUNTS.**

515.   Accordingly, in order to avoid unnecessary duplication, Plaintiff re-avers her allegations in the aforesaid **Counts,** as if fully stated herein.

516.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages complained of herein.

517.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the complained of injuries and  damages.

## COUNT 41
## SIMULATING LEGAL PROCESS
### *in violation of Code of Alabama, § 13A-10-131*

518.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-517  as if fully stated herein, and particularly her averments in **Counts 12, 16, 19, 25, 29, 35, 36, 37, 38, 39, 40**, and further states:

519.   ASB and Supreme Court employees created and published the August 21, 2009 purported Disbarment Order and falsely represented it as being an official Order from the Alabama Supreme Court by placing the Alabama Supreme Court Justices stamped signatures thereon.

520.   Accordingly, said employees or agents with the intent to defraud, falsely made and completed a written instrument which is purported and calculated to be a public record, or an instrument filed or required or authorized by law to be filed in a public office, or with a public employee; or a written instrument officially issued or created by a public office, public employees or government agency, to wit: an Order from the Alabama Supreme Court and its Justices, thereby committing a Class C felony.

521,   Additionally, said employees and/or agents knowingly delivered or caused to be delivered the aforesaid purported disbarment order, which in form and substance simulated legal process issued by the Alabama Supreme Court; and caused copies thereof to be mailed or otherwise distributed to Plaintiff; to various courts and court personnel; to the general public, and published in various publications, to include: *The Huntsville Times* newspaper and *The Alabama Lawyer Magazine*.  **EXHIBIT 32**

522.   Plaintiff anticipates that discovery will identify and/or confirm the identification of the ASB and Alabama Supreme Court employees who committed the aforesaid criminal acts.

523.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

524.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.

## COUNT 42
## CRIMINAL IMPERSONATION
### *in violation of Code of Alabama, § 13A-9-18*

525.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-524  as if fully stated herein, and particularly her averments in **Counts 12, 16, 19, 25, 29, 35, 36, 37, 38, 39, 40, 41**, and further states:

526.   ASB and Supreme Court employees created and published the August 21, 2009 purported Disbarment Order and falsely represented it as being an official Order from the Alabama Supreme Court by placing the Alabama Supreme Court Justices stamped signatures thereon.

527.   Accordingly, said employees or agents with the intent to defraud, falsely made and completed a written instrument which is purported and calculated to be a public record, or an instrument filed or required or authorized by law to be filed in a public office, or with a public employee; or a written instrument officially issued or created by a public office, public employees or government agency, to wit: an Order from the Alabama Supreme Court and its Justices, thereby committing a Class C felony.

528.   Additionally, said employees and/or agents (co-conspirators) assumed the identity of the Alabama Supreme Court Justices and created and issued an Order purporting to disbar Plaintiff with the intent of injuring her and defrauding her, her clients, other attorneys, various courts and court personnel; and the general public.

529.   Plaintiff anticipates that discovery will identify and/or confirm the identification of the ASB and Alabama Supreme Court employees who committed the aforesaid criminal acts.

530.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

531.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.

## COUNT 43
## IMPERSONATING A PUBLIC SERVANT
### *to wit: Alabama Supreme Court Justices in violation of Code of AL, § 13A-10-10*

532.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-531,  as if fully stated herein, and particularly her averments in **Counts 12, 16, 19, 25, 29, 35, 36, 37, 38, 39, 40, 41, 42,** and further states:

533.   ASB and Supreme Court employees created and published the August 21, 2009 purported Disbarment Order and falsely represented it as being an official Order from the Alabama Supreme Court by placing the Alabama Supreme Court Justices stamped signatures thereon.

534.   Accordingly, said employees or agents with the intent to defraud, falsely made and completed a written instrument which is purported and calculated to be a public record, or an instrument filed or required or authorized by law to be filed in a public office, or with a public employee; or a written instrument officially issued or created by a public office, public employees or government agency, to wit: and Order from the Alabama Supreme Court and its Justices, thereby committing a Class C felony.

535.    Additionally, said employees and/or agents pretended to be public servants, to wit:  Alabama Supreme Court Justices, by affixing the stamped signatures of the Supreme Court Justices on a fraudulently created document which purports to disbar Plaintiff, and by disseminating said fraudulent document as an Order from the Alabama Supreme Court and its Justices.

536.    Plaintiff anticipates that discovery will identify and/or confirm the identification of the ASB and Alabama Supreme Court employees who committed the aforesaid criminal acts.

537.    The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

538.    Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the complained of injuries and  damages.

## COUNT 44
# OBSTRUCTION OF GOVERNMENTAL OPERATIONS
### *in violation of Code of Alabama, § 13A-10-2*

539.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-538,  as if fully stated herein, and further states:

540.   The Defendants' commission of  the aforesaid civil and criminal acts against Plaintiff, and their deprivation of Plaintiff's constitutionally protect rights, interfered with, and intentionally obstructed, impaired or hindered the administration of law or other governmental function,

541.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages..

542.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.

## COUNT 45
# CONSPIRACY, AGREEMENT, ETC., TO HINDER, DELAY OR PREVENT LAWFUL BUSINESS
### *in violation of Code of Alabama, § 13A-11-122*

543.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-542,  as if fully stated herein, and further states:

544.   Plaintiff avers that [19]ASB agents and/or employees conspired and agreed with agents and/or employees of the Alabama Supreme Court in order to acquire and use the stamped signatures of the Alabama Supreme Court Justices for the purpose of depriving her of her Constitutionally protected right to equal protection of the Alabama laws concerning disciplinary actions against its attorneys and for the purpose of depriving her of equal privileges and immunities of laws, to include her property and liberty rights to her professional license to practice law in Alabama.

545.   Plaintiff further avers that said conspiracy was motivated by a racial discriminatory animus against her, because she is an African American, and therefore, a member of a protected class; and because she is an African American Attorney, who is known to be an outspoken civil rights advocate, as evident in the

_____

[19]  Plaintiff will name the co-conspirators after discovery documents the identifications thereof.

following actions:   ASB (Lusk) admitted that she is the only Attorney in the State of Alabama to be prosecuted by ASB because of a contempt finding; ASB (Lusk) used a TV interview of her wherein, according to Lusk, she claimed that there was an intolerance by white judges to show respect for black attorneys to argue for her disbarment; ASB (Lusk) asked her whether she called the trial judge a racist during a sentencing hearing; the Chairman of the Huntsville-Madison County Bar Grievance Committee told her that the Bar's paramount concern was whether she called the trial judge a racist; and the Huntsville-Madison County Bar Investigator of Jones' complaint against her specifically found that Plaintiff had been denied equal protection by ASB.

546.   Plaintiff further avers that said conspiracy accommodated the creation of the fraudulent August 21, 2009 document, which purports to be an Order from the Alabama Supreme Court disbarring Plaintiff.  **EXHIBIT 20**

547.   Plaintiff further avers that ASB then mailed said fraudulent document to her; published it in *The Huntsville Times*, *The Alabama Lawyer*; and otherwise; and forwarded it to:   state and Federal courts, judges, attorneys, her clients, and to the general public.

548.   Plaintiff further avers that the aforesaid actions by ASB and Alabama Supreme Court agents and/or employees, who are alleged herein to be "co-

conspirators" deprived her of her Constitutionally protected right to equal

protection, as guaranteed by the Fourteenth Amendment; deprived  her of her

Constitutionally protected property and liberty rights to her professional Bar

License; and deprived her of her Constitutional rights to due process, and a fair and

impartial hearing, as guaranteed by the Fourteenth, Fifth, and Sixth Amendments to

the United States Constitution.

549.   Plaintiff further avers that the aforesaid co-conspirators acted

knowingly, intentionally, wilfully and purposefully to deprive her of her

Constitutional rights to equal protection, due process, a fair and impartial hearing;

and to deprive her of her property and liberty rights to her professional Bar Licence.

550.   The Defendants' commission of  the aforesaid civil and criminal acts

against Plaintiff, and their deprivation of Plaintiff's constitutionally protect rights,

interfered with, and intentionally obstructed, impaired or hindered the

administration of law or other governmental function,

551.   The record further shows that Wilson, the Alabama Supreme Court

and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct

by refusing and/or failing to discharge their statutory and Constitutional duty to

review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional

rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

552.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.

# COUNT 46
# LIBEL
### *in violation of Code of Alabama, § 13A-11-160*

553.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-552  as if fully stated herein, and further states:

554.   In order to avoid unnecessary duplication of allegations, Plaintiff hereby specifically re-alleges her allegations in **COUNTS 19, 25, 26, 33, 34, 35, 36, 37. 38, 41, 42, 43, 44, 45,** and further states:

555.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

556.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.

## COUNT 47
## BLACKLISTING
### in violation of Code of Alabama, § 13A-11-123

557.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-556,  as if fully stated herein, and further states:

558.   ASB maintains, posts and publishes various listings of the names  of suspended and disbarred attorneys, and the names of attorneys who have received any other disciplinary actions.

559.   Additionally, ASB uses said listings to notify persons and businesses, to include clients, potential clients, judges, court officials, attorneys, media and others regarding its public reprimands, suspensions and disbarments of attorneys.

560.   In the instant case, ASB and its employees placed Plaintiff's name on said listings, more commonly referred to as "Blacklists" to provide notifications of their suspension and the Alabama Supreme Court's purported disbarment of her.

561.   Additionally, ASB used said Blacklist for the notification purposes to inform clients, potential clients, and the general public that she would never practice law again in this state; and to solicit complaints and "vilifying information" against Plaintiff.

562.   ASB's aforesaid actions caused Plaintiff to suffer the injuries and damages complained of herein, and Complaints from clients, who believed ASB's misrepresentations about her.

563.   ASB's aforesaid actions constitute the criminal offense of Blacklisting.

564.   The record further shows that Wilson, the Alabama Supreme Court and its Justices acquiesced in, and/or ratified Defendants' aforesaid illegal conduct by refusing and/or failing to discharge their statutory and Constitutional duty to review/rule upon the Bar's disciplinary action and enforce Plaintiff's Constitutional rights, thereby causing and/or contributing to Plaintiff's injuries and damages.

565.   Plaintiff further asserts that the Defendants joint and several actions, and/or inactions, caused her to suffer the injuries and  damages complained of herein.

# VIII.  PRAYER FOR RELIEF

566.   Plaintiff hereby realleges, adopts and incorporates herein by reference all of her general allegations, and all previous allegations in paragraphs 1-565,  as if fully stated herein, and further states that as the result of Defendants complained of illegal acts, she has been grievously injured, to include the fact that she is now the **"Poster-Attorney for what happens to an Attorney in the State of Alabama, who dares to competently and zealously strive to protect his/her clients' Constitutional rights."**

567.   **WHEREFORE THE PREMISES CONSIDERED,** Plaintiff hereby requests this Honorable Court to assume jurisdiction and venue of this case; and to award her Compensatory, Consequential, and Punitive damages, jointly and severally from each of the Defendants in the amount of **FIFTY MILLION DOLLARS.**

568.   Plaintiff further prays this Honorable Court to award her a Declaratory Judgment, which declares that she has <u>not</u> been disbarred by the Alabama Supreme Court; which rescinds all Orders and actions that restrain or prohibit her from practicing law in the state of Alabama and in Federal Courts; which voids all pending Bar complaints against her, which are attributable to the complained of

actions by ASB; and which grants her the following additional relief:

A.      Retroactive reinstatement of her Bar Licenses in the State & Federal Courts;

B.      Restoration of all of her Bar License privileges, to include access to her former clients and their cases, and access to the State and Federal EFILE Systems;

C.      An Order voiding *ab initio* the Criminal Contempt Order and the Alabama Court of Criminal Appeals' Affirmation thereof, and which purges her file of any criminal contempt conviction;

D.      An Order requiring Defendants to pay all costs and fees for Court, Bar and Appellate Proceedings, and to reimburse Plaintiff for any costs incurred by her and/or paid for by her;

E.      An Order requiring Defendants to post and pay for notices of their illegal actions against Plaintiff, and the Court's corrective actions in the newspapers and to other media,  on their Website, in their publications, to her former clients, to Federal and Alabama Courts, Administrators of Courts, Clerks, Lawyers, Judges, and otherwise as deemed appropriate;

F.      An Order granting Injunctive relief, which restrains and enjoins the Defendants from continued, further and additional acts of retaliation against her, and from their continued, further and additional deprivations of her civil rights, and

violations of Federal and state laws;

G.    An Order removing all culpable  parties from their positions of "TRUST" with the State;

H.    An Order initiating criminal prosecution of any Defendants whose complained  of actions establish probable cause for criminal prosecution;

I.    An Order initiating judicial and/or Bar prosecutions against any Defendants found guilty of violating:  Judicial Canons, Alabama State Bar Rules, Federal and/or State statutory or case law; Plaintiff's Constitutional rights; and/or Alabama State Supreme Court or Alabama State Bar rules, policies, procedures.

J.    An Order which provides her former clients, who were unlawfully deprived of her representation, and who continue to need and to desire her representation, the following relief:   An Order reinstating Plaintiff as counsel of record, retroactive to the date of unlawful deprivation thereof; an Order which **stays and/or reverses** any state or Federal adverse rulings, upon a showing that said clients were prejudiced by the lack of her representation; and Order requiring the Defendants to pay costs and attorney's fees incurred by the aforesaid clients as the result of their unlawful deprivation of her representation.

K.    An Order granting such other and different relief deemed just and proper under the circumstances.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY STRUCK JURY.

## NOTE ON EXHIBITS

In order to avoid duplication of documents, Plaintiff has numbered and referred to EXHIBITS herein, which she expects to use in future proceedings in this Honorable Court, and otherwise.  However, due to the number of pages in this Complaint, and in all of the EXHIBITS referenced herein, the EXHIBITS which are  deemed to be most critical to the crux of this Complaint are attached as APPENDIX - A.  The remaining referenced EXHIBITS, and others, will be subsequently filed as needed, or requested.

Respectfully submitted,

_____
Sherryl Snodgrass Caffey, *Pro Se*
P.O. Box # 1276
56 Hughes Rd.
Madison, Alabama   35758
(256) 772-1712

Page -180-

# APPENDIX - A

## LISTING OF ATTACHED EXHIBITS

**EXHIBIT  1:**          **Copy of March 24, 2000 Contempt Order**

**EXHIBIT 13:**          **Alabama Supreme Court 2006 Ruling**

**EXHIBIT 20:**          **Copy of November 1999 Alabama State Bar Report on Results of its Survey of Minority Attorneys**

**EXHIBIT 21:**          **Copy of Conclusions Reached by the Alabama State Bar *Ex Parte* Hearing Panel in its Report and Order**

**EXHIBIT 25:**          **Esdale's Order Dismissing Appeal & Controlling Alabama Rule of Appellate Procedure**

**EXHIBIT 29:**          **Haney's *Ex Parte* Suspension & Restraining Orders**

**EXHIBIT 30:**          **Copy of Purported Disbarment Order**

**EXHIBIT 31:**          **ASB'S Published Notices of Suspension**

**EXHIBIT 32:**          **ASB Published Notices of Purported Disbarment**

**EXHIBIT 35:**          **Copy of Certified January 27, 2009 Alabama Supreme Court Docket Sheet in Plaintiff's Appeal**

**EXHIBIT 36:**          **Purported 08/25/09 Alabama Supreme Court Order**

**EXHIBIT 37:**          **Purported 09/22/09 Alabama Supreme Court Order**

**EXHIBIT 38:**          **Copies of Four Comparative Alabama Supreme Court Orders/Judgments**

**EXHIBIT 40:**          **Copy of April 26, 2010 Alabama Supreme Court Docket**