FILED
2011 May-25  PM 01:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **SHERRYL SNODGRASS CAFFEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.:  2:10-CV-3050-VEH** |
| ) | |
| **ALABAMA SUPREME COURT** ) | |
| **(ASC) and its Justices, individually,** ) | |
| **and in their official capacities, to wit:** ) | |
| **SUSAN BELL COBB, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

---

## MEMORANDUM OPINION

## I.      INTRODUCTION

Plaintiff Sherryl Snodgrass Caffey, an attorney proceeding *pro se*, initiated this

action on November 10, 2010, against a number of defendants.  (Doc. 1).  Pending

before the Court is Defendant Brian Jones's Motion to Dismiss.[1]  (Doc. 12).  Also

pending before the Court is Defendants Alabama Supreme Court ("ASC"), Sue Bell

Cobb, Champ Lyons, Jr., Thomas A. Woodall, Lyn Stuart, Patricia M. Smith, Michael

F. Bolin, Tom Parker, Glenn Murdock, Greg Shaw, Robert G. Esdale, Sr., Ann

Wilson, and James Woodroof's (hereinafter collectively referred to as "Judicial

---

[1]  Jones is sued individually and in his official capacity.  (Doc. 1 at ¶ 11).

Defendants") Motion to Dismiss.[2]  (Doc. 18).  Also pending before the Court is

Defendants Alabama State Bar ("ASB"), F. Michael Haney, Robert Lusk, Cheryl

Rankin, Bonnie Mainor, James Ward, Robert L. Davis, Richard J. R. Raleigh, Jr.,

Robert Moorer, and Joseph Falwal's (hereinafter collectively referred to as "State Bar

Defendants") Motion to Dismiss.[3, 4]  (Doc. 20).  These motions are now under

submission.

---

[2]  Defendants Cobb, Lyons, Woodall, Stuart, Smith, Bolin, Parker, Murdock, and Shaw were all Justices of the ASC during the relevant time periods and shall hereinafter be referred to as "Justices of the ASC".  Judge Woodroof, the Justices of the ASC, Esdale, and Wilson are sued individually and in their official capacities.  (Doc. 1 at ¶ 11).

[3]  Haney, Ward, Davis, Raleigh, Moorer, and Fawal were all ASB Disciplinary Board Members during the relevant time periods and shall hereinafter be referred to as "Disciplinary Board Members."  The Disciplinary Board Members, Lusk, Rankin, and Mainor are sued individually and in their official capacities.  (Doc. 1 at ¶ 11).

[4]  Also before the Court is Defendant Moorer's Motion to Adopt the State Bar Defendants' Motion to Dismiss.  (Doc. 36).  Caffey has not filed a response to the motion and it is now under submission.  Moorer, a member of the Disciplinary Board, argued in the State Bar Defendants' Motion to Dismiss that the Complaint should be dismissed against him for insufficient service of process.  (Doc. 21 at 16). Moorer was later served with process on March 9, 2011.  (Doc. 37 at ¶ 3). Caffey's claims against Moorer arise from his status as a member of the Disciplinary Board and are identical to those against the other members of the Disciplinary Board.  The Court finds that Caffey will suffer no prejudice by granting the Motion to Adopt.  Likewise, the Court finds that Caffey will suffer no prejudice in granting Moorer's request to accept the Motion to Adopt as Timely Filed.  (Doc. 37).

## II.     STANDARD ON MOTION TO DISMISS

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action where the court finds that it does not have subject matter jurisdiction.  Rule 12(b)(6) provides for dismissal for failure of a party to state a claim for which relief can be granted.  When dismissal can be based both for lack of subject matter jurisdiction and for failure to state a claim, the court should dismiss on only the jurisdictional grounds.  *Boda v. United States*, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983).

"Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases."  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000).  "Subject matter jurisdiction is conferred and defined by statute.  It cannot be created by the consent of the parties, nor supplanted by considerations of convenience and efficiency."  *Id.*  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."   *Smith v. GTE Corp.,* 236 F.3d 11292, 1299 (11th Cir. 2001).

Because the burden of proof on a motion to dismiss for lack of subject matter

jurisdiction is on the party asserting jurisdiction, the plaintiff constantly "bears the burden of proof that jurisdiction does in fact exist." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).[5]  Attacks on subject matter jurisdiction come in two forms: (1) facial attacks, and (2) factual attacks. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999).

Facial attacks on a complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca*, 613 F.2d at 511).  Factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*  (quoting *Menchaca*, 613 F.2d at 511).  Here, the Judicial Defendants make a facial attack on the Complaint.

"[A] plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Morrison*, 228 F.3d at 1273 (quoting *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)).  "Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the

---

[5]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered before the close of business on September 30, 1981.

opportunity to discover facts that would support his allegations of jurisdiction." *Id.* (quoting *Majd-Pour v. Georgiana Comty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)).

"[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005) (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)).  Because the requirement of subject matter jurisdiction involves the court's competency to consider a given type of case, it "cannot be waived or otherwise conferred upon the court by the parties." *Id.* at 975 (quoting *Univ. of S. Ala.*, 168 F.3d at 410).

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47).  However, at the same

5

time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (emphasis added). The court therefore "accept[s] as true the facts set forth in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . across the line from conceivable to plausible." *Iqbal*, 129 S. Ct. at 1950-51 (internal citation omitted).

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a

6

'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Thus,

> [a] district court considering a motion to dismiss shall begin by
> identifying conclusory allegations that are not entitled to an assumption
> of truth --- legal conclusions must be supported by factual allegations.
> The district court should assume, on a case-by-case basis, that well
> pleaded factual allegations are true, and then determine whether they
> plausibly give rise to an entitlement to relief.

*Randall*, 610 F.3d at 709-710.

## III.   BACKGROUND[6]

On March 24, 2000, the Limestone Circuit Court declared a mistrial in a

criminal case in which Caffey represented the defendant. *Ala. State Bar v. Caffey*,

938 So. 2d 942, 943-44 (Ala. 2006) (Attachments 2 and 3 to the Complaint); (Doc.

1 at ¶ 24).[7]   After the court declared a mistrial, presiding Judge Woodroof found

Caffey to be in contempt of court and sentenced her to serve 5 days in jail.  (Doc. 1

at ¶¶ 17, 21-22, 24).

---

[6] The allegations in Caffey's Complaint are taken as true for the purposes of
this motion.  *Lawrence*, 919 F.2d at 1529.

[7] Appropriate documents for a court to consider when ruling on a Rule
12(b)(6) motion include the complaint, any attachments, and any additional
documents referenced therein that "are central to the plaintiff's claim."  *Brooks v.
Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).

Caffey filed an appeal of the contempt order to the Alabama Court of Criminal Appeals. *Caffey*, 938 So. 2d at 943. Caffey states that Judge Woodroof knowingly and intentionally suppressed trial exhibits, documents filed by Caffey before and during the trial, and the reverse side of three purported indictments from the record for review. (Doc. 1 at ¶ 29). Caffey also states that the trial transcript was altered by deleting and adding statements in an attempt to cast Judge Woodroof in a more favorable light. (Doc. 1 at ¶ 33). The Alabama Court of Criminal Appeals affirmed the trial court's order without an opinion. *Caffey*, 938 So.2d at 944. Caffey petitioned the ASC for a writ of certiorari to review the decision, but that petition was denied. *Id.*

On April 7, 2000, Defendant Brian Jones, the prosecuting attorney in the criminal case resulting in Caffey's contempt charge, filed a grievance against Caffey with the Alabama State Bar reporting her alleged professional misconduct during the trial. *Id.*; (Doc. 1 at ¶ 47). The grievance was assigned to the Huntsville-Madison County Bar Association local grievance committee for investigation. (Doc. 1 at ¶ 50). Caffey states that the Huntsville-Madison County Investigator of Jones's grievance found that Caffey was not guilty of the charges against her; that Jones and Lusk, the Alabama State Bar Prosecutor, were friends, which created a conflict of interest for the Bar; that Caffey's case was being treated differently from other cases, which

denied her equal protection; and that the complaint against her was due to be dismissed.  (Doc. 1 at ¶ 52).  In June 2002, after more than two years had passed without the investigation being completed, the State Bar asked the local grievance committee to return Caffey's file to the State Bar.  *Caffey*, 938 So. 2d at 944.  On June 30, 2002, the local grievance committee returned Caffey's file to the State Bar.  *Id.*

On May 1, 2003, the State Bar filed formal charges against Caffey with Panel III of the Disciplinary Board of the State Bar ("Disciplinary Board") alleging that Caffey had violated Rules 3.1(a), 3.2, 3.5(c), 8.4(a), 8.4(d), and 8.4(g) of the Alabama Rules of Professional Conduct.  *Caffey*, 938 So. 2d at 944.  The State Bar moved for summary judgment against Caffey, contending that she was guilty of the charged offenses because of the contempt finding.  *Id.* at 944-45.  On December 3, 2003, the disciplinary hearing officer issued an order finding Caffey guilty of all charges and granting the State Bar's summary judgment motion.  *Id.* at 945.  The Disciplinary Board suspended Caffey's Alabama law license for 45 days, with the 45-day suspension to convert to a 2-year period of probation after Caffey had served a 7-day suspension.  (Doc. 1 at ¶ 58).  Caffey appealed the Disciplinary Board's Decision to the Board of Disciplinary Appeals of the Alabama State Bar ("Board of Appeals").  (Doc. 1 at ¶ 59).  The Board of Appeals reversed the Disciplinary Board's summary judgment in favor of the State Bar and remanded the case for the Disciplinary Board

to conduct a hearing to adjudicate the formal charges against Caffey. *Caffey*, 938 So. 2d at 945.  On March 10, 2006, the ASC affirmed the Board of Appeals' decision in *Alabama State Bar v. Caffey*, 938 So. 2d 942 (Ala. 2006).  *Id.* at 950.

A hearing was held on November 18, 2008, to adjudicate the formal charges against Caffey.  (Doc. 1 at ¶ 90).  Caffey claims that Lusk made false assertions against her, causing the Disciplinary Board to hold the hearing without her.  (Doc. 1 at ¶¶ 81-86).  Caffey also alleges that Lusk suborned perjury, gave unsworn false testimony through his statements to the Disciplinary Board, and suppressed evidence. (Doc. 1 at ¶¶ 91, 97-99).  Caffey asserts that Judge Woodroof gave biased, false, and perjured testimony against her at this hearing.  (Doc. 1 at ¶ 90).  The Disciplinary Board disbarred Caffey from the practice of law in the state of Alabama on December 11, 2008.  (Doc. 1 Ex. 21).

Caffey appealed the decision to the ASC.  (Doc. 1 at ¶ 159).  On August 4, 2009, Esdale, Clerk of the ASC, entered an order dismissing Caffey's appeal for failure to prosecute pursuant to Rule 2(a)(2) of the Alabama Rules of Appellate Procedure.  (Doc. 1 at ¶ 160).  Caffey was not sent notice of the non-receipt of her brief.  (Doc. 1 at ¶ 161).  Caffey responded to the notice of the dismissal of her appeal by filing a Motion for Reinstatement on August 10, 2009.  (Doc. 1 Ex. 35).  The ASC denied this motion on August 25, 2010.  (Doc. 1 Ex. 36).  Caffey also re-filed copies

of her brief with a Motion to Accept the Out of Time Filing on August 19, 2009, and a Motion for Reconsideration on August 28, 2009. (Doc. 1 Ex. 35). The ASC denied her Request for Reconsideration by treating it as an Application for Rehearing and striking it and her response to the Board's Motions from the record on September 3, 2009. (Doc. 1 Ex. 35). On September 22, 2009, the ASC struck Caffey's brief in support of her Motion to Accept the Out of Time Filing as untimely filed but did not rule on the motion. (Doc. 1 Ex. 35).

The Disciplinary Board's Order to disbar Caffey was filed with the ASC on August 4, 2009. (Doc. 1 at Ex. 30). The ASC issued an order disbarring Caffey on August 21, 2009. (Doc. 1 at Ex. 30). Caffey claims that this order is fraudulent and forged. (Doc. 1 at ¶¶ 136-37).

On December 1, 2009, Caffey phoned the ASC and requested a final appealable order. (Doc. 1 at ¶ 165). ASC staff attorney Wilson told Caffey that she had received all the orders she was going to get. (Doc. 1 at ¶ 165). On May 27, 2010, Wilson confirmed that Caffey's appellant file was closed. (Doc. 1 at ¶ 181).

Caffey filed a petition for writ of certiorari with the United States Supreme Court. (Doc. 1 at ¶ 183). The petition was denied without opinion. *Caffey v. Ala. State Bar*, 130 S. Ct. 2373 (2010); (Doc. 1 at ¶ 187).

## IV. ANALYSIS

A.      The *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, federal district courts generally lack jurisdiction to review a final state court decision.  *Doe v. Fla. Bar.*, 630 F.3d 1336, 1340 (11th Cir. 2011).  Instead, "the authority to review final decisions from the highest court of the state is reserved to the Supreme Court of the United States." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997).  The Supreme Court has held that the doctrine should be confined only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[8]  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

---

[8]  Caffey analyzes the application of the *Rooker-Feldman* doctrine pursuant to the test stated in *Amos v. Glynn County Board of Tax Assessors*, 347 F.3d 1249 (11th Cir. 2003).  (Doc. 27 at 1-2).  Under the *Amos* test, federal jurisdiction was barred by the *Rooker-Feldman* doctrine where:

> (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

*Amos*, 347 F.3d at 1266 n.11 (citations omitted).  However, in *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009), the Eleventh Circuit declined in light of *Exxon Mobile* to apply the *Amos* test and adhered to the language instead quoted here.

(11th Cir. 2009).

For the *Rooker-Feldman* doctrine to apply, the Court must first determine whether the state court rendered judgment "before the district court proceedings commenced." *Id.* Caffey instituted this action on November 10, 2010. (Doc. 1). Caffey's action on the contempt order was finally litigated as of 2000. *See Caffey*, 938 So. 2d at 944. The Court finds that Caffey's lawyer disciplinary proceedings in which she was disbarred became final when the Alabama Supreme Court dismissed her appeal on August 4, 2009. Because Caffey exhausted her state court remedies before she filed this federal suit, the state proceedings had ended for purposes of the *Rooker-Feldman* doctrine.

Next, this Court must determine whether Caffey is a state-court loser who is complaining of injuries caused by state court judgments. *Exxon*, 544 U.S. at 284. In doing so, the Eleventh Circuit evaluates whether the plaintiff's claims are "inextricably intertwined" with the state court judgment. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). "A claim is inextricably intertwined if it would effectively nullify the state court judgment or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal quotation and citations omitted). It is clear that Caffey was the losing party in state court in both the case of the contempt order and her disbarment, *Caffey*, 938 So.2d at 944; (doc. 1 Ex. 35), thus

13

it is left to the Court to determine whether her claims against the Defendants were inextricably intertwined with the state court judgments.

Caffey alleges that Jones and Judge Woodroof violated her constitutional rights by giving perjured testimony against her before the Disciplinary Board, which resulted in her disbarment.[9]  (Doc. 1 at ¶¶ 90, 113).  Caffey asserts that the ASC and the ASC Justices violated her constitutional rights when the ASC neglected to enforce its rulings in *Alabama State Bar v. Caffey* and denied her statutory right to an appeal of her disbarment. (Doc. 1 at ¶¶ 179-80).  She asserts claims against Esdale for his alleged improper dismissal of her appeal for failure to prosecute pursuant to Alabama Rule of Appellate Procedure 2(a)(2). (Doc. 1 at ¶¶ 160-61).  Caffey claims that Wilson violated her constitutional rights by failing to ensure the proper processing of her appeal.  (Doc. 1 at ¶ 181). Caffey claims that the State Bar Defendants violated her constitutional rights when they illegally suspended and disbarred her (doc. 1 at

---

[9]  In her Complaint, Caffey also claims that Judge Woodroof improperly found her in contempt (doc 1 at ¶ 26); that he engaged in illegal *ex parte* conversations (doc. 1 at ¶ 27); and that he falsified the records and suppressed evidence in the criminal case, thereby affecting her appeal to the Alabama Court of Civil Appeals, Alabama Court of Criminal Appeals, and the ASC (doc. 1 at ¶¶ 29, 33, 38, 41).  In her response to this motion, Caffey states that her claims against Judge Woodroof derive from his role as a complaining and testifying witness and not as a Circuit Judge.  (Doc. 27 at 7).  Therefore, the Court finds that Caffey has voluntarily abandoned all potential claims against Judge Woodroof based on the contempt order and any actions he took in the related <u>criminal</u> case or in the appeal of that case.

¶ 9), suppressed evidence during the disciplinary hearing (doc. 1 at ¶ 42), and treated her differently when they prosecuted the grievance filed by Jones and declined to prosecute a complaint that Caffey filed against Jones (doc. 1 at ¶¶ 47-48).  Although not a named party to the State Bar Defendants' Motion to Dismiss, these same claims apply against the Disciplinary Board.  *See Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.").  Caffey also alleges that Lusk violated her constitutional rights when he retaliated against her by including information regarding the local grievance committee investigator's prior disciplinary history when attempting to discredit the investigator's report and conclusion that Caffey did not violate a Rule of Professional Conduct (doc. 1 at ¶ 57), when he requested the ASC increase her punishment when she appealed her contempt order (doc. 1 at ¶ 59), and when he made false representations to the Disciplinary Board concerning Caffey (doc. 1 at ¶¶ 81-86).  Caffey claims that Lusk submitted an Affidavit from Rankin, an ASB Paralegal, to the Disciplinary Board, in which Rankin falsely claimed that Caffey had engaged in a pattern and practice of not answering complaints.  (Doc. 1 at ¶ 121).  Caffey states that Mainor, the ASB Disciplinary

Clerk, provided false certification of the record of Caffey's bar proceedings to the

ASC because the appellate record did not include certain exhibits. (Doc. 1 at ¶ 251).

The result of these complained-of actions was Caffey's disbarment, which she

now asks this Court to rescind. (Doc. 1 at ¶ 568). Though in the form of a civil rights

suit, this action in fact seeks review and reversal of the state court judgments. As

such, Caffey's claims are inextricably intertwined with the state court proceedings

and this Court lacks subject matter-jurisdiction over them pursuant to the *Rooker-*

*Feldman* doctrine. *Casale*, 558 F.3d at 1260. If Caffey believed that the contempt

order or her disbarment was based on a legal error,

> the proper response was the same one open to all litigants who are
> unhappy with the judgment of the trial court: direct appeal. [The federal
> courts] are not a clearinghouse for [a party's] overstock arguments; if
> [the party] did not offer them to the state courts - - or if the state courts
> did not buy them - - [the party] cannot unload them by attempting to sell
> them [in federal court].

*Id.* at 1261. Caffey took advantage of her right to appeal both of these decisions; she

cannot now raise these same arguments, or arguments that she could have raised, in

this Court because she is unhappy with the state court decisions.

The *Rooker-Feldman* doctrine does not necessarily dispose of Caffey's claims

for money damages. *See Sibley v. Lando*, 437 F.3d 1067, 1071, 1071 n.3 (11th Cir.

2005) (indicating that application of *Rooker-Feldman* doctrine was not appropriate

to a 42 U.S.C. § 1983 action against state court judges where the plaintiff did not ask a federal court to "fix an erroneous state court judgment" but rather demanded an award of money damages).  Therefore, the Court finds that only Caffey's claims against Jones, the Judicial Defendants, the State Bar Defendants, and the Disciplinary Board for equitable relief are due to be dismissed pursuant to the *Rooker-Feldman* doctrine.

**B.    Eleventh Amendment**

The Eleventh Amendment to the Constitution bars federal courts from entertaining suits against states.   The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., amend. XI.

Although, by its terms, the Eleventh Amendment does not bar suits against a state in federal court by its own citizens, the Supreme Court has extended its protections to apply in such cases. *Hans v. Louisiana,* 134 U.S. 1, 21 (1890); *see also Manders v. Lee,* 338 F.3d 1304, 1308 n. 8 (11th Cir.2003) (en banc).  Parties with claims against a non-consenting state must resort to the state's own courts. *Manders*, 338 F.3d at 1308.

Although the state is not named as a party of record, the amendment applies

when for all practical purposes the action is against the state and extends to state

agencies and other arms of the state. *Pennhurst State Sch. & Hosp. v. Halderman*,

465 U.S. 89, 100 (1984). Thus, "[t]he Eleventh Amendment prohibits actions against

state courts and state bars." *Kaimowitz v. Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir.

1993). As an arm of the Alabama Supreme Court, the Eleventh Amendment also

prohibits an action for damages against the Disciplinary Board.[10] *See id.*; *Worley v.

Ala. State Bar*, 572 So. 2d 1239 (Ala. 1990) ("Thus in exercising its inherent

responsibility this Court created the [Disciplinary] Board, but it retained the power

to inquire into the merits of any matters before the [Disciplinary] Board and retained

the power to take any action it sees fit to take in such matters."). Therefore, all claims

against the ASC, the ASB, and the Disciplinary Board for money damages are due to

be dismissed pursuant to the Eleventh Amendment. The claims against Jones, the

Judicial Defendants, and the State Bar Defendants in their official capacities are also

---

[10] Pursuant to Rule 4 of the Alabama Rules of Disciplinary Procedure, the ASB is to appoint three panels of five members each, each panel to be known as "The Disciplinary Board of the Alabama State Bar," to investigate any alleged ground for discipline or any alleged disability of a lawyer that comes to its attention.

due to be dismissed.[11]  *See Simmons v. Conger*, 86 F.3d 1080, 1085 (11th Cir. 1996)

("'[A] suit against a state official in his or her official capacity is not a suit against the

official but rather is a suit against the official's office,' and, 'as such, it is no different

from a suit against the State itself.'") (quoting *Will v. Mich. Dep't of State Police*, 491

U.S. 58, 71 (1989)).

## C.   **Individual Capacity Claims for Monetary Damages**

### 1.   **Jones**

Alabama Rule of Professional Conduct 8.3(a) requires that "[a] lawyer

possessing unprivileged knowledge of a violation of Rule 8.4 [] report such

knowledge to a tribunal or other authority empowered to investigate or act upon such

violation."[12]  "A lawyer is obliged to report every violation of the rules."  Ala. R.

---

[11]  Caffey argues that the Eleventh Amendment does not bar her claim for attorney's fees and costs under 42 U.S.C. § 1988.  (Doc. 27 at 13).  However, because the Court lack subject matter jurisdiction over Caffey's claims for equitable relief pursuant to the *Rooker-Feldman* doctrine, Caffey's claims for attorney's fees and costs are due to be dismissed.  *Hutto v. Finney*, 437 U.S. 678, 698 n.24 (1978) (holding that an award of attorney's fees or costs is not subject to the strictures of the Eleventh Amendment when, and only when, it is ancillary to prospective relief).

[12]  Pursuant to Alabama Rule of Professional Conduct 8.4, it is professional misconduct for a lawyer to:

(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

Prof. Conduct 8.3 cmt.; *see* Ala. R. Prof. Conduct pmbl. ("Every lawyer is responsible for observance of the Rules of Professional Conduct.  A lawyer should also aid in securing their observance by other lawyers.").  Pursuant to Rule 15(c) of the Alabama Rules of Disciplinary Procedure, a lawyer acting in compliance with Rule 8.3 of the Alabama Rules of Professional Conduct "shall be immune from civil suit." Additionally, "[c]omplaints and petitions submitted pursuant to these Rules or testimony with respect thereto shall be absolutely privileged, and no lawsuit predicated thereon may be instituted."  Ala. R. Disc. P. 15(a).

Because Jones filed his complaint against Caffey with the Alabama State Bar pursuant to his duties as a lawyer under Rule 8.3 of the Alabama Rules of

---

(b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) Engage in conduct that is prejudicial to the administration of justice;

(e) State or imply an ability to influence improperly a government agency or official;

(f) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable Canons of Judicial Ethics or other law; or

(g) Engage in any other conduct that adversely reflects on his fitness to practice law.

20

Professional Conduct and his testimony provided to the Disciplinary Board was related to that complaint, these actions cannot be the basis of civil liability.[13]   Ala. R. Disc. P. 15(a), (c); *see also Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("Witnesses are granted absolute immunity for their testimony during trials . . . and during grand jury proceedings[.]").   This is true regardless of whether the statements contained in the complaint or made at the hearing were false or malicious.  *Briscoe v. Lahue*, 460 U.S. 325, 331-32 (1983).   The cases cited by Caffey in her response in opposition address prosecutorial immunity and, therefore, are not relevant to this inquiry.  *See Kalina v. Fletcher*, 522 U.S. 118, 131 (1997) (holding that a prosecutor performing the functions of a complaining witness is not entitled to absolute immunity); *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993) (holding that a

---

[13]   Caffey states that Jones has provided no evidence which shows that his complaint and testimony complies with Rule 8.3 of the Alabama Rules of Professional Conduct so that the absolute immunity of Rule 15 of the Alabama Rules of Disciplinary Procedure applies.  (Doc. 23 at 3).   In *Alabama State Bar v. Caffey*, a case which Caffey attached to her Complaint, the court states that Jones's complaint with the State Bar was based on Caffey's alleged professional misconduct in a criminal trial.  *Caffey*, 938 So. 2d at 944.   Based on Jones's complaint, the State Bar eventually filed formal charges against Caffey with the Disciplinary Board of the State Bar alleging that Caffey had violated Rules 3.1(a), 3.2, 3.5(c), 8.4(a), 8.4(d), and 8.4(g) of the Alabama Rules of Professional Conduct.  *Id.*   Based on these charges, it is apparent that Jones's complaint and testimony addressed conduct violating Rule 8.4 of the Alabama Rules of Professional Conduct, which he was required to report pursuant to Rule 8.3 of the Alabama Rules of Professional Conduct.

21

prosecutor is entitled to absolute immunity only when acting as an advocate); *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (holding that a state prosecutor has absolute immunity for the initiation and pursuit of a criminal prosecution).  While Jones is a prosecutor, his claim to absolute immunity does not rely on his position as a prosecutor, but rather on Alabama Rule of Disciplinary Procedure 15.

### 2.    Judge Woodroof

In her Complaint, Caffey claims that Judge Woodroof violated her constitutional rights when he testified during the State Bar's investigation of the complaint filed against her by Jones.[14]  (Doc. 1 at ¶ 90).  "Complaints and petitions submitted pursuant to [the Alabama Rules of Disciplinary Procedure] or testimony with respect thereto shall be absolutely privileged, and no lawsuit predicated thereon may be instituted."  Ala. R. Disc. P. 15(a).  Because Judge Woodroof's testimony to the Disciplinary Board was pursuant to a complaint submitted in accordance with the Alabama Rules of Disciplinary Procedure, his testimony cannot be the basis of civil liability.   Ala. R. Disc. P. 15(a); *see also Jones*, 174 F.3d at 1281.  This is true regardless of whether the statements made at the hearing were false or malicious.  *Briscoe*, 460 U.S. at 331-32.  Therefore, the Court finds that all claims for monetary

---

[14]  As stated above, Caffey has voluntarily abandoned all potential claims against Judge Woodroof based on the contempt order and any actions he took in the criminal case or the appeal of that case.  (Doc. 27 at 7).

damages against Judge Woodroof are due to be dismissed.

### 3.     Judicial Immunity

The Defendants assert that the claims brought against the Justices of the ASC in their individual capacities are due to be dismissed because these Defendants are immune from liability under the doctrine of judicial immunity. (Doc. 19 at 12).  The Defendants also argue that the claims brought against Esdale and Wilson in their individual capacities are due to be dismissed pursuant to the doctrine of quasi-judicial immunity.  (Doc. 19 at 16).

Generally, a judge is immune from a suit for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991).   Judicial immunity is overcome in only two sets of circumstances: (1) where the judge's actions are nonjudicial, or (2) where the judge's actions are taken in the complete absence of all jurisdiction.  *Id*. at 11-12.

> Whether a judge's actions were made while acting in his judicial capacity depends on whether:  (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity.

*Sibley v. Lando*, 437 F.3d at 1070.  Such immunity extends to both judicial action and inaction.  *Carter v. Duggan*, 455 F.2d 1156, 1158 (5th Cir. 1972).  "Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties

23

'have an integral relationship with the judicial process.'" *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (quoting *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980)).   "Like judges, these officials must be acting within the scope of their authority." *Id.* "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson*, 508 U.S. 429, 432 (1993).

### a.   The ASC Justices

Caffey asserts that the ASC Justices violated her constitutional rights by improperly handling her appeal.  She alleges that the ASC Justices acquiesced in, or ratified, the other Defendants' illegal conduct by refusing or failing to discharge their statutory and Constitutional duties.  (Doc. 1 at ¶¶ 211, 220, 225, 237, 263, 275, 281, 319, 328, 354, 358, 363, 367, 370, 373, 381, 385, 390, 412, 416, 422, 431, 437, 449, 455, 465, 477, 480, 487, 516, 523, 530, 537, 541, 551, 555, 564).  Caffey specifically states that the ASC neglected to enforce its rulings in *Alabama State Bar v. Caffey* and denied her statutory right to an appeal of her disbarment.  (Doc. 1 at ¶¶ 179-80).

Caffey's claims against the ASC Justices are intertwined with the ruling of the ASC in *Alabama State Bar v. Caffey* and its ruling in *Caffey v. Alabama State Bar*, ASC Case Number 1080561, the unsuccessful appeal of Caffey's disbarment.  The ASC Justices were clearly dealing with Caffey in a judicial capacity when they

24

decided these cases.  Pursuant to Alabama Rule of Disciplinary Procedure 12(f)(1), the ASC has jurisdiction over appeals from an adverse decision of the Disciplinary Board.  Therefore, the ASC Justices are entitled to absolute immunity from Caffey's claims for monetary damages.

       **b.**    **Esdale**

Caffey asserts that Esdale, the ASC Clerk, violated Alabama Rule of Appellate Procedure 2(a)(2) when he issued an order dismissing her appeal for failure to prosecute.  (Doc. 1 at ¶¶ 160-61, 257-58).  Pursuant to Rule 2(a)(2):

> An appeal may be dismissed: (A) if an appellant fails to file a brief within the time provided by Rule 31, or within the time as extended; (B) when an appellant takes a frivolous appeal as provided in Rule 38; (C) when the appellate court, on motion of a party or on its own motion, determines that there is an obvious failure to prosecute an appeal; or (D) when a party fails to comply substantially with these rules.

> When an appellate court, on motion of a party, or on its own motion, shall determine that a party is obviously failing to prosecute the appeal (C), or has substantially failed to comply with these rules (D), the appellate court shall cause notice to be sent to the party in default, notifying the party, in general terms, of the deficiency.  If the party in default fails to correct the deficiency prior to submission, or within such time as the appellate court shall direct, the appellate court may dismiss the appeal.  The attorney for the party in default has the burden to correct promptly any deficiency or to see that the default is corrected by the appropriate official.

Caffey claims that Esdale failed to give her notice of her default as required by Rule 2(a)(2).  (Doc. 1 at ¶¶ 161, 258).

Esdale's issuance of an order dismissing Caffey's appeal for failure to prosecute clearly has an integral relationship with the judicial process. *See Jenkins v. Clerk of Court*, 150 Fed. Appx. 988, 990 (11th Cir. 2005) (holding that Clerk of Court for the United States District Court for the Southern District of Florida had absolute quasi-judicial immunity for entering or not entering a default judgment because "[t]he decision to enter a default judgment or not is the most judicial of actions the clerk could make."). Caffey does not allege, nor does this Court find, that Esdale was acting outside the scope of his authority in issuing such an order. Therefore, Esdale is entitled to absolute immunity from Caffey's claims for monetary damages.

### c.    Wilson

Caffey asserts that Wilson, the Alabama Supreme Court Staff Attorney who was assigned Caffey's case, had a duty to ensure the proper processing of her appeal and the statutory review and final and effective ruling on the Bar's disciplinary actions against Caffey. (Doc. 1 at ¶ 181). Caffey states that, on May 27, 2010, Wilson confirmed that Caffey's appellate file was closed. (Doc. 1 at ¶ 181). Caffey asserts that, when she protested her file being closed without a final and appealable ruling from the Alabama Supreme Court, Wilson warned Caffey against filing a complaint against her. (Doc. 1 at ¶ 181).

As an initial matter, to the extent that Caffey makes the argument that Wilson's warning constituted a threat, "mere threatening language and gestures . . . do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (quoting *Coyle v. Hughs*, 436 F. Supp. 591, 593 (W.D. Okl. 1977)).

Section 12-2-21 of the Alabama Code authorizes the ASC to hire six staff attorneys to "assist that court in legal research and analysis, including the preparation of staff memoranda, and to perform such other duties as directed by the court." This statute does not impose, nor does Caffey point to any other source that would impose a duty upon an ASC staff attorney to ensure the proper processing of appeals. If an ASC staff attorney undertakes action other than legal research or analysis, it must be at the direction of the ASC. Ala. Code § 12-2-21. An ASC staff attorney is not authorized to take binding action on behalf of the ASC except at the ASC's direction. *Id.* Any duty that Wilson might have had to ensure the proper processing of appeals would have been at the ASC's direction and, therefore, Wilson is entitled to absolute immunity from Caffey's claims for monetary damages. *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980) (holding that court clerks have absolute immunity when carrying out judge's explicit instructions).

### 4.     State Bar Defendants

27

Caffey asserts that the Disciplinary Board Members violated her constitutional rights when they illegally suspended and disbarred her (doc. 1 at ¶ 9), suppressed evidence during the disciplinary hearing (doc. 1 at ¶ 42), and treated her differently when they prosecuted the grievance filed by Jones and declined to prosecute a complaint that Caffey filed against Jones (doc. 1 at ¶¶ 47-48). Caffey also alleges that Lusk violated her constitutional rights when he retaliated against her by including information regarding the local grievance committee investigator's prior disciplinary history when attempting to discredit the investigator's report and conclusion that Caffey did not violate a Rule of Professional Conduct (doc. 1 at ¶ 57), when he requested the ASC increase her punishment when she appealed her contempt order (doc. 1 at ¶ 59), and when he made false representations to the Disciplinary Board concerning Caffey (doc. 1 at ¶¶ 81-86). Caffey claims that Lusk submitted an Affidavit from Rankin to the Disciplinary Board in which Rankin falsely claimed that Caffey had engaged in a pattern and practice of not answering complaints. (Doc. 1 at ¶ 121). Caffey states that Mainor provided false certification of the record of Caffey's bar proceedings to the ASC because the appellate record did not include certain exhibits. (Doc. 1 at ¶ 251).

Rule 15(b) of the Alabama Rules of Disciplinary Procedure provides that Disciplinary Board Members, the General Counsel and the staff of the Office of

General Counsel, and the Disciplinary Clerk are immune from suit for any conduct in the course of their official duties.  Ala. R. Disc. P. 15(b)(3), (4), (8); *see also Carroll v. Gross* 984 F.2d 392, 393 (11th Cir. 1993) (holding that members of the Florida State Bar were acting as agents of the Florida Supreme Court and thus were entitled to absolute immunity); *Slavin v. Curry*, 547 F.2d 1256, 1266 (5th Cir. 1977) (holding that members of state bar grievance committee are immune from suit because they acted as arm of state supreme court), *modified on other grounds*, 583 F.2d 779 (1978), *overruled in part on other grounds by Sparks v. Duval Cnty. Ranch Co.*, 604 F.2d 976, 978 (1979).

As addressed above, testimony to the Disciplinary Board is "absolutely privileged, and no lawsuit predicated thereon may be instituted."  Ala. R. Disc. P. 15(a).  Thus, Rankin's testimony in the form of an affidavit to the Disciplinary Board pursuant to a complaint submitted in accordance with the Alabama Rules of Disciplinary Procedure cannot be the basis of civil liability.  Ala. R. Disc. P. 15(a); *see also Jones*, 174 F.3d at 1281.  This is true regardless of whether the testimony was false or malicious.  *Briscoe*, 460 U.S. at 331-32.

Therefore, the State Bar Defendants are entitled to absolute immunity from Caffey's claims for monetary damages.

## V.   CONCLUSION

Accordingly, for the reasons stated above, Jones's Motion to Dismiss, The Judicial Defendants' Motion to Dismiss, and the State Bar Defendants' Motions to Dismiss are all due to be **GRANTED**.  Additionally, although not a party to a motion to dismiss, all claims against the Disciplinary Board are due to be dismissed. Defendant' Moorer's Motion to Adopt the State Bar Defendants' Motion to Dismiss and Motion to Adopt as Timely Filed are also due to be **GRANTED**.  A separate order will be entered.

   **DONE** and **ORDERED** this the 25th day of May, 2011.


_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

30